COOLEY LLP
BEATRIZ MEJIA (190948) (mejiab@cooley.com)
MATTHEW M. BROWN (264817) (brownmm@cooley.com)
LAUREN J. POMEROY (291604) (lpomeroy@cooley.com)
101 California St., 5th Floor
San Francisco, CA  94111
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

MICHELLE C. DOOLIN (179445) (mdoolin@cooley.com)
DARCIE A. TILLY (239715) (dtilly@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:   (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ANDREA M. WILLIAMS AND JAMES STEWART, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.  19-cv-04700-LHK<br><br>**APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Judge:    The Hon. Lucy H. Koh<br>Crtrm:   8, 4th Floor<br>Date:     February 13, 2020<br>Time:     1:30 p.m. |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION & MOTION.................................................................................... III

STATEMENT OF RELIEF SOUGHT ................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.      INTRODUCTION ................................................................................................... 2

II.     BACKGROUND ..................................................................................................... 4

        A.      Summary Of Relevant Facts Alleged In The Complaint. ........................... 4

                1.      iCloud Is A Multifaceted And Integrated Cloud Storage Solution. ................. 4

                2.      Apple Did Not Promise To Use Its Own Servers To Host Subscriber Data ................................................................................ 4

        B.      Plaintiffs Allege They Would Not Have Subscribed To iCloud If Apple Had Disclosed That It Was Not The "Provider" ............................. 5

        C.      Procedural History. .................................................................................... 7

III.    LEGAL STANDARD .............................................................................................. 7

        A.      Motion To Dismiss Under Rule 12(b)(1) .................................................. 7

        B.      Motion To Dismiss Under Rule 12(b)(6) .................................................. 7

IV.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD FACTS TO SUPPORT ARTICLE III STANDING OR TO STATE A CLAIM. ............................................................... 7

        A.      Plaintiffs' Complaint Does Not Adequately Plead Article III Standing Because Its Allegations Of Injury Are Speculative At Best And Non-Existent At Worst. .................................................. 7

                1.      Plaintiffs' Complaint Does Not Satisfy Article III Because There Are No Well Pleaded Facts Indicating Plaintiffs Suffered Anything More Than A Speculative Injury. ................................. 8

                2.      Plaintiffs Lack Standing To Seek Injunctive Relief Because Plaintiffs Do Not Allege They Are Current Paid iCloud Subscribers Or That They Intend To Be In The Future. ................................. 11

        B.      Plaintiffs' Breach Of Contract Claim Fails To State A Claim Since The Complaint Lacks Facts Regarding Three Of The Four Elements For A Contract Claim. ................................................................ 11

                1.      Plaintiffs Have Not Sufficiently Pleaded The Existence Of A Contract. ...... 11

                2.      Apple Did Not Make Any Promises Regarding The Owner Of The Physical Servers And Had No Obligation To Disclose Such Details. ........... 13

                3.      Plaintiffs Fail To Allege Sufficient Damages For Breach Of Contract. ........ 15

        C.      Plaintiffs' FAL And UCL Claims Also Fail For Multiple Reasons. ...................... 16

                1.      Plaintiffs' FAL And UCL Claims (All Prongs) Sound In Fraud, But Do Not Satisfy The Heightened Pleading Requirements Under Rule 9(B). ................................................................................ 16

**TABLE OF CONTENTS**
**(continued)**

Page

2. Plaintiffs Have Not Pleaded Statutory Standing Under The FAL And UCL (All Prongs)...........................................................................18

3. Plaintiffs' Claims Under The FAL And UCL (All Prongs) Also Fail Because They Are Equitable Claims And Plaintiffs Have An Adequate Remedy At Law. ...............................................................................18

4. Plaintiffs' Claims Under The FAL And The Fraudulent UCL Prong Fail Because Plaintiffs Have Not Alleged An Actionable Misrepresentation..............................................................................20

5. Because The FAL Claim Fails, Plaintiffs Fail To State A Claim Under The Unlawful Prong Of The UCL ...................................................21

6. The Same Deficiencies That Undermine Plaintiffs' Breach Of Contract And FAL Claims Preclude Plaintiffs From Stating A Claim Under The Unfair Prong Of The UCL. ....................................................21

V. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. .......................22

VI. CONCLUSION............................................................................................23

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Bank, FSB v. Kayatta,*
190 Cal. App. 4th 563 (2010) ...................................................................................15

*In re Apple & AT & T iPad Unlimited Data Plan Litig.,*
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................................19

*In re Apple Processor Litig.,*
366 F. Supp. 3d 1103 (N.D. Cal. 2019) ....................................................................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................15

*Bates v. United Parcel Serv., Inc.,*
511 F.3d 974 (9th Cir. 2007) .....................................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................................................7

*Beyer v. Symantec Corp.,*
No. 18-CV-02006-EMC, 2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ......................10

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ...................................................................................18

*Bower v. AT&T Mobility, LLC,*
196 Cal. App .4th 1545, 1555-56 (2011) ..................................................................18

*Brown v. Grimes,*
192 Cal. App. 4th 265 (2011) ..................................................................................16

*Bush v. Mondelez International, Inc.,*
No. 16-CV-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016)........................22

*Cahen v. Toyota Motor Corp.,*
717 F. App'x 720 (9th Cir. 2017) .............................................................................11

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010) ...................................................................................7

*Chapman v. Skype Inc.,*
220 Cal. App. 4th 217 (2013) ..................................................................................18

*Choi v. Toyota Motor Sales, U.S.A., Inc.,*
No. SACV1000154CJCRNBX, 2013 WL 12248152 (C.D. Cal. Jan. 9, 2013)............11

*Drum v. San Fernando Valley Bar Ass'n,*
182 Cal. App. 4th 247 (2010) ..................................................................................22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
    No. 14–cv–04809, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015)..........................................19, 20

*In re Ford Tailgate Litig.*,
    No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..........................................19

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ....................................................................................................20

*Gautier v. Gen. Tel. Co.*,
    234 Cal. App. 2d 302 (1965) ...................................................................................................11

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................................................................................17

*Graham v. Wells Fargo Bank, N.A.*,
    No. 15-CV-04220-JD, 2017 WL 86013 (N.D. Cal. Jan. 10, 2017) .............................................17

*Habtemariam v. Vida Capital Grp., LLC*,
    No. 216-CV-01189, 2017 WL 2930846 (E.D. Cal. July 10, 2017)........................................12, 13

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)........................................10, 22

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................................14, 15, 22

*In re iPhone 4S Consumer Litig.*,
    2014 WL 589388 ....................................................................................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................................17

*Levi Strauss & Co. v. Aetna Casualty & Sur. Co.*,
    184 Cal. App. 3d 1479 (1986) ............................................................................................13, 14

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...............................................................................8, 9, 10

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
    107 Cal. App. 4th 516 (2003) ..................................................................................................13

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2010) ...................................................................................17

*Lusson v. Apple, Inc.*,
    No. 16-CV-00705-VC, 2016 WL 10932723 (N.D. Cal. June 20, 2016)......................................17

*Maldonado v. Apple, Inc.*,
    No. 3:16-CV-04067-WHO, 2017 WL 818868 (N.D. Cal. Mar. 2, 2017)................................17, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................................18

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) ....................................................................................16

*McKinniss v. Sunny Delight Bevs. Co.*,
   No. CV 07-02034-RGK, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .......................20

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ......................................................................................7

*Orshan v. Apple Inc.*,
   No. 5:14-CV-05659-EJD, 2018 WL 5858643, at *4 (N.D. Cal. Nov. 6, 2018) ............20

*Philips v. Ford Motor Co.*,
   No. 14-cv-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ...........................19

*Phillips v. Apple Inc.*,
   No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ...................7, 11

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ......................................................................8, 9

*PlayMedia Systems, Inc. v. America Online, Inc.*,
   171 F. Supp. 2d 1094 (C.D. Cal. 2001) .......................................................................13

*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................13, 23

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................................21

*Ruiz v. Gap, Inc.*,
   622 F. Supp. 2d 908 (N.D. Cal. 2009) ........................................................................15

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) ......................................................................................19

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ........................................................................11

*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*,
   No. C 0500917CW, 2005 WL 1712008 (N.D. Cal. July 21, 2005) ..............................12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ....................................................................................21

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011) ........................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................................15, 16

*Tomek v. Apple, Inc.*,
    No. 2:11-CV-02700-MCE, 2013 WL 3872774 (E.D. Cal. July 25, 2013), *aff'd*,
    636 F. App'x 712 (9th Cir. 2016) ....................................................................................20

*Vitt v. Apple Computer, Inc.*,
    No. CV 06-7152-GHK (RCX), 2007 WL 9662403 (C.D. Cal. Mar. 12, 2007) ...........................18

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ........................................................................................7

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................................................20

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ......................................................................................21

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)......................................19

**Statutes**

Cal. Civ. Code § 1641.................................................................................................13, 14

Cal. False Advertising Law, Bus. and Prof. Code § 17500 et seq............................................. *passim*

Cal. Unfair Competition Law, Bus. and Prof. Code § 17200 et seq......................................... *passim*

**Other Authorities**

Fed. R. Civ. P.
    8(a).........................................................................................................1, 12, 13
    9(b)..........................................................................................................1, 3, 17, 18
    12(b)(1)......................................................................................................1, 7
    12(b)(6)......................................................................................................1, 7

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/provide .............................14

U.S. Const. Art. III............................................................................................... *passim*

## NOTICE OF MOTION & MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that at 1:30 P.M. on February 13, 2020, or as soon thereafter as the matter may be heard, before the Honorable Lucy H. Koh, United States District Judge for the Northern District of California, Defendant Apple Inc. ("Apple") will and hereby does move for dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers on file in this matter, the arguments of counsel, and other matters the Court wishes to consider.

## STATEMENT OF RELIEF SOUGHT

Apple seeks dismissal of the above-entitled action under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

**1.** **No Article III Standing.** Whether Plaintiffs have Article III standing to assert claims for breach of contract or under California's False Advertising Law, Business and Professions Code § 17500 et seq. ("FAL") and California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL"). Also, whether Plaintiffs have Article III standing to obtain injunctive relief.

**2.** **Inadequate Pleading of Contract.** Whether Plaintiffs have sufficiently identified the contract at-issue under Rule 8(a).

**3.** **No Breach of Contract.** Whether Plaintiffs identified an actionable breach of contract.

**4.** **No Resulting Contract Damages.** Whether Plaintiffs have alleged damages sufficient to support their breach of contract claim.

**5.** **Inadequate Pleading of FAL and UCL claims under Rule 9(b).** Whether Plaintiffs have pleaded their FAL and UCL claims with sufficient particularity.

**6.** **No Standing under FAL or UCL.** Whether Plaintiffs have pleaded FAL or UCL standing.

**7.** **Duplicative Equitable Claims Under FAL and UCL.** Whether Plaintiffs' equitable claims under the FAL and the UCL should be dismissed as duplicative of the contract claim.

**8.**      **No Actionable Misrepresentation or Conduct.**  Whether Plaintiffs identified any violation of the FAL or UCL.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiffs have manufactured a claim where none exists by attempting to twist the meaning of contractual plain language to the point of absurdity, even while they have suffered no harm and cannot articulate a theory of damages.

Specifically, Plaintiffs allege that they purchased a subscription to Apple iCloud, an Internet-based cloud storage solution for personal data, such as photos, app data, and messages, that is integrated with subscribers' Apple devices.  Plaintiffs further allege that Apple has breached the iCloud Terms and Conditions (the "Agreement") and violated statutory duties under the FAL and UCL by failing to "provide" iCloud and to "store" subscribers' data as required under the Agreement, because Apple has some encrypted data stored on third-party servers.

But Plaintiffs do not claim that they did not have access to iCloud or that their data was lost or stolen, and they plead no facts suggesting that there was even a non-hypothetical risk of losing access to their data or of it being stolen or lost.  Instead, they merely claim that Apple did something wrong by outsourcing the physical servers needed to maintain their encrypted data to third parties like Microsoft, Amazon, or Google.

The fundamental problem with Plaintiffs' case is that Apple never made any representation to them or any other iCloud user regarding ownership of the servers used to store subscribers' data.  To sidestep this fatal fact, Plaintiffs attempt to recast Apple's statements in the Agreement to "provide" iCloud and "store" subscriber data into a requirement that Apple own the physical servers.  In addition, Plaintiffs incorrectly equate iCloud, which is a multifaceted service that does more than simply store files, with basic data storage.  These critical mischaracterizations of iCloud and the Agreement render Plaintiffs' claims fatally flawed.

*First*, Plaintiffs lack Article III standing to bring their breach of contract, FAL, and UCL claims.  They do not allege any non-speculative facts supporting their claims of injury-in-fact. Critically, they do not allege that they read or relied on any of the representations that supposedly

caused their harm, or that iCloud functioned deficiently in any way.  Additionally, Plaintiffs lack Article III standing to pursue injunctive relief because they do not plead that they are current iCloud subscribers or intend to become subscribers in the future.

*Second*, Plaintiffs fail to state a claim under California law for breach of contract because they have not actually identified which contract they entered into.  This is a simple but important requirement and Plaintiffs have failed to meet it. Additionally, the breach of contract claim fails because Plaintiffs do not have any viable theory of contract damages under California law and Plaintiffs do not allege that Apple made any specific statement in the Agreement regarding ownership of the physical servers.

*Third*, Plaintiffs' claims under the FAL and UCL fail because they have not pleaded with particularity which alleged misrepresentations they actually read and relied on.  Their claims therefore cannot satisfy Rule 9(b).

*Fourth,* for reasons similar to why Plaintiffs failed to plead Article III standing, Plaintiffs lack standing under the FAL and UCL—their alleged injuries are improperly speculative and Plaintiffs failed to plead reliance on any statement by Apple.

*Fifth*, the entirety of Plaintiffs' FAL and UCL claims fail because those claims are equitable in nature.  Because Plaintiffs have an adequate remedy at law in the form of their breach of contract claim (which fails for other reasons), their FAL and UCL claims must fail.

*Sixth*, and finally, Plaintiffs' FAL and UCL claims fail since Apple made no representation that it owned the servers that stored iCloud data.  Nor could any statement Apple made reasonably be construed as suggesting Apple owned the servers.

For each of these reasons and more, Plaintiffs lack standing and have failed to state a claim, and no amount of re-pleading can change the fact that Apple was allowed to use third party servers to maintain subscribers' encrypted data.  Plaintiffs' Complaint should therefore be dismissed with prejudice.

## II.   BACKGROUND

### A.   Summary Of Relevant Facts Alleged In The Complaint.

#### 1.   iCloud Is A Multifaceted And Integrated Cloud Storage Solution.

Apple designs and manufactures mobile phones, personal computers, and other media devices, and offers related features, products and services.  One of those is iCloud, a multifaceted and integrated cloud storage solution that expressly includes "the iCloud product, software, services, and websites." (iCloud Terms and Conditions, Compl. Ex. 1 ("Agreement") at p.1.)  iCloud allows subscribers to "utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services…." *Id.*  For example, iCloud includes iCloud Photos, which allows "your photos . . . and any edits that you make . . . [to] be automatically uploaded and stored in iCloud, and then pushed to all of your other iCloud Photos-enabled devices and computers." (*Id.* at II.D.1.)  iCloud includes "Family Sharing," which  allows multiple individuals to register as a family and share "[s]tore purchases and Apple subscriptions . . . [as well as] photos, calendars, location, and screen time information…." (*Id.* at II.E.)  iCloud includes Mail Drop, which "facilitate[s] the[] delivery" of "emails with large attachments." (*Id.* at II.G.)  iCloud also "periodically creates automatic backups" of your "device settings, device characteristics, photos and videos, documents, your messages, ringtones, Health app data and other app data." (*Id.* at II.C.)  In short, iCloud is much more than mere remote storage.

Moreover, iCloud relies on software that is integrated with Apple's operating system and thus is "automatically enabled when you are running devices on iOS 9 or later." (Compl. ¶ 3; Agreement at p.1.)  "Owners of Apple devices are granted up to 5 GB of iCloud storage for free." (Compl. ¶ 20; Agreement at I.C.)  "Additional storage is available for purchase on a subscription basis." (Agreement at III; *see* Compl. ¶ 20.)

#### 2.   Apple Did Not Promise To Use Its Own Servers To Host Subscriber Data.

The Agreement applies to all subscribers of iCloud, including both the free and paid subscriptions.  (Agreement at I.C; *id.* at III.)  Plaintiffs allege that there have been multiple versions of the Agreement since iCloud launched in October 2011, two of which are attached to the Complaint.

(Compl. Exs. 1 and 2; *see also* Compl. ¶ 23.)  Neither version of the Agreement contains any promise or representation that Apple would use its own servers to house subscribers' encrypted data.  In fact, the Agreement does not provide any representations whatsoever regarding how subscribers' data would be maintained or managed; how Apple would go about procuring server space; or whether Apple would store encrypted subscriber data on servers owned by third parties.  (*See* Agreement.)  Moreover, the Agreement disclaimed any guarantees that encrypted subscriber data would be maintained free of loss, corruption, or security intrusion. (Agreement at V.D.; *id*. at IX.)[1]

**B.      Plaintiffs Allege They Would Not Have Subscribed To iCloud If Apple Had Disclosed That It Was Not The "Provider"**

Plaintiffs allege that they are residents of Florida and California, respectively.  (Compl. ¶¶ 11-12), that they "paid money to Apple for [their] iCloud subscription," and "used iCloud to store [their] data" at some point "[d]uring the Class Period."  (*Id*.)  Plaintiffs do not offer any additional facts regarding when they first subscribed to iCloud, which version of the Agreement they entered into, or any contractual provisions they read and relied on before entering into the Agreement.

At the core of their Complaint, Plaintiffs allege that they understood that "Apple would be the provider of this cloud storage service," and that they "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service" if Apple had disclosed that it was not the "provider" of iCloud.  (Compl. ¶¶ 11-12.)  To support that allegation, the Complaint points exclusively to the following paragraph at the beginning of the Agreement:

> ***Apple is the provider of the Service***, which permits you to utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based

---

[1] The Court should not give any credit to Plaintiffs' half-baked allegation that Apple has acted differently in China, where the iCloud contract states:  "GCBD is the provider of the Service in the Mainland of China."  (Compl. ¶ 25.)  As Plaintiffs acknowledge, the regulatory landscape in China compels different contractual arrangements. (*Id*. at ¶¶ 25-26.)  The contract Plaintiffs attach to their Complaint contradicts Plaintiffs' allegations that "Apple [] sell[s] iCloud subscriptions for cloud storage to Chinese users . . . but [does not] own the cloud servers." *Id*.  Instead, the GCBD contract indicates that GCBD sells iCloud to Chinese users, and, like the Apple Agreement, does not specify who owns the physical servers that stored iCloud subscribers' data in China.  Further, the relevance of this is far from clear, since there is no allegation Plaintiffs read any part of the GCBD contract, let alone that it could have possibly informed their views as to whether iCloud subscriber data was stored on Apple-owned servers.

services. . . . When iCloud is enabled, y*our content will be automatically sent to* *and stored by Apple*, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers.

(Compl. ¶ 3 (emphasis in original); Agreement at p.1.)

Plaintiffs then allege that Apple has breached its promise to "provide" iCloud and to "store" subscribers' data by paying third party server operators like Amazon, Microsoft, or Google, for their server space, and that the Agreement itself therefore contains false advertising.  (Compl. ¶ 56.) However, Plaintiffs do not allege that Apple has somehow failed to deliver iCloud as defined in the Agreement—i.e., the ability to "utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services." (Agreement at p.1.)  Likewise, Plaintiffs do not allege any defect in iCloud, or any loss of access to or theft of their data; nor are there any fact-based allegations that they are at risk of a defect, loss or theft.  Further, Plaintiffs do not dispute that any data that may be stored on servers owned by third parties "is first encrypted by Apple before being turned over to these entities" and that the encryption keys are not stored on the third party servers.  (Compl. ¶ 30.)

Instead of identifying any injury that is concrete and particularized, and actual or imminent, Plaintiffs instead claim hypothetical, unsubstantiated concerns about "the integrity of the data, reliability of the storage, and assurance that the data stored will remain intact and accessible by the user on demand without being damaged, lost, [or] stolen…."  (Compl. ¶ 31; *see also id.* ¶¶ 32-33.)[2] Plaintiffs also complain that iCloud is more expensive than other cloud storage solutions offered by Microsoft and Google—but they do not attempt to apportion the value of basic storage capacity versus the multifaceted and integrated aspects of iCloud.  (Compl. ¶ 35.)  Moreover, Plaintiffs do not attempt any comparison of the features that Microsoft and Google offer their subscribers to those features that Apple offers its subscribers, nor do Plaintiffs include any analysis of whether it is even possible for Microsoft or Google to store messages, app data, or other file types for an Apple device user.  (*Id.*)

---

[2] Plaintiffs' apparent position that they have contractual entitlement to a service that eliminates these concerns is undermined by explicit disclaimers in the Agreement: "APPLE DOES NOT REPRESENT OR GUARANTEE THAT THE SERVICE WILL BE FREE FROM LOSS, CORRUPTION, ATTACK, VIRUSES, INTERFERENCE, HACKING, OR OTHER SECURITY INTRUSION…." (Agreement at IX; *see also id.* at V.D.)

1

**C.      Procedural History.**

2

Plaintiffs filed their complaint on August 12, 2019 asserting claims for breach of contract

3

(Count I), violation of the FAL (Count II), and violation of the UCL (Count III). Plaintiffs seek to

4

represent a class of "subscribers within the United States who during the Class Period defined as

5

August 20, 2015 to the present paid for an Apple iCloud subscription." (Compl. ¶ 38.)

6

**III.     LEGAL STANDARD**

7

**A.      Motion To Dismiss Under Rule 12(b)(1).**

8

Plaintiffs' Article III standing is properly challenged under Rule 12(b)(1). *White v. Lee*, 227

9

F.3d 1214, 1242 (9th Cir. 2000). Once a party has moved to dismiss under Rule 12(b)(1), the opposing

10

party bears the burden of establishing the court's subject matter jurisdiction. *Chandler v. State Farm*

11

*Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A motion to dismiss for lack of subject

12

matter jurisdiction should be granted if the complaint fails to allege facts sufficient to establish that

13

jurisdiction. *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *3 (N.D. Cal. Apr.

14

19, 2016) (dismissing FAL and UCL claims for lack of standing).

15

**B.      Motion To Dismiss Under Rule 12(b)(6).**

16

The Court should dismiss a claim under Rule 12(b)(6) where "there is no cognizable legal

17

theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v.*

18

*Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion under Rule 12(b)(6), "labels and

19

conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion

20

to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court is "free to ignore legal

21

conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

22

the form of factual allegations." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d

23

1059, 1064 (E.D. Cal. 2011) (quotation marks and citation omitted).

24

**IV.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD FACTS TO SUPPORT ARTICLE III STANDING OR TO STATE A CLAIM.**

25

**A.      Plaintiffs' Complaint Does Not Adequately Plead Article III Standing Because Its Allegations Of Injury Are Speculative At Best And Non-Existent At Worst.**

26

27

To satisfy the standing requirements of Article III, a plaintiff bears the burden of alleging facts

28

sufficient to show: "(1) injury in fact—an invasion of a legally protected interest which is (a) concrete

and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) causation—there must be a causal connection between the injury and the conduct complained of; and (3) redressability—it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846 (N.D. Cal. 2012) (citation and internal quotation marks omitted).  Additionally, a party seeking injunctive relief from a federal court must allege both that "he has suffered or is threatened with a concrete and particularized legal harm" and that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation and internal quotation marks omitted).  Because Plaintiffs failed to plead any facts regarding any purported injury in fact, and the Complaint lacks any allegations regarding any future injury, the Complaint should be dismissed for failing to satisfy Article III.

1. **Plaintiffs' Complaint Does Not Satisfy Article III Because There Are No Well Pleaded Facts Indicating Plaintiffs Suffered Anything More Than A Speculative Injury.**

Plaintiffs allege that if Apple had disclosed that it was not the owner of the physical servers storing iCloud data, "they would either not have entered into the iCloud agreement with Apple or would not have agreed to pay Apple as much as they did for their iCloud subscription."  (Compl. ¶¶ 51; *see also id*. ¶¶ 11-12, 58.)  These allegations are insufficient to plead injury in fact for the same four underlined reasons this court found Article III standing to be insufficiently pled in *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013), a case involving an alleged data breach brought by subscribers to LinkedIn's paid "premium" service.  *Id.* at 1094 (holding claims for UCL, breach of contract, and others, did not sufficiently plead Article III standing).

*First*, like the service at-issue in *LinkedIn*, there are both free and paid versions of iCloud. (Compl. ¶ 20.) Also like in *LinkedIn,* Plaintiffs here do not allege they paid consideration for the contract provision allegedly breached.  The promises in the Agreement that Plaintiffs allege have been breached are made to both Apple's paid and free subscribers.  Thus, the Complaint fails to plead Article III standing because there are no facts indicating Plaintiffs paid consideration to have their data stored on servers owned by Apple, as opposed to merely paying for increased storage capacity.  *Id.* at 1093 ("The FAC does not sufficiently demonstrate that included in Plaintiffs' bargain for premium

membership was the promise of a particular (or greater) level of security that was not part of the free membership.").

*Second*, like the plaintiffs in *LinkedIn* who did "not even allege that they actually read the alleged misrepresentation," Plaintiffs here do not allege to have read the Agreement before subscribing to iCloud. *Id.* at 1093. Plaintiffs' allegations instead focus on what the Agreement states and Apple's purported failure to comply with those promises. But Plaintiffs do not allege how they were personally harmed by the alleged misleading statements. Plaintiffs' conclusory statement that they entered into a contract that "provided that Apple would be the provider of this cloud storage service" (Compl. ¶¶ 11-12) is insufficient, because they do not allege that they saw or relied on the allegedly misleading statements they point to in the Agreement. *See Pirozzi*, 913 F. Supp. 2d at 846 (holding plaintiff failed to plead facts sufficient to establish Article III standing since she "fails to allege specifically which statements she found material to her decision to purchase [the product at issue] [and therefore] has not suffered an injury-in-fact that is caused by the complained of conduct."). Here, as in *LinkedIn*, "[b]ecause a causal connection between a defendant's actions and plaintiff's alleged harm is required for standing, Plaintiffs have not established standing based on an alleged misrepresentation" in the Agreement. *LinkedIn,* 932 F. Supp. 2d at 1093.

*Third*, like the plaintiff in *LinkedIn* who claimed "LinkedIn breached the contract by not providing the level of security it allegedly promised to provide," *id.* at 1094, Plaintiffs here contend Apple breached the Agreement by not storing iCloud data on Apple-owned servers (Compl. ¶ 41). But like in *LinkedIn* "[t]he economic loss Plaintiff[s] allege[]—not receiving the full benefit of the bargain—cannot be the 'resulting damages' of this alleged breach" because "this injury could only have occurred <u>at some point before the breach</u>, at the time the parties entered into the contract." *Id.* (emphasis added). "As such, the economic damages Plaintiffs proffer cannot form the basis of standing for their breach of contract-related claims." *Id.*

*Fourth*, in cases like this one, "where the alleged wrong stems from allegations about insufficient performance or how a product functions, courts have required plaintiffs to allege 'something more' than 'overpaying for a 'defective' product'" to plead Article III standing. *Id.* at 1094 (citation omitted); *see Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW,

2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (holding the allegations plaintiffs would not have bought children's bath products if they had known the alleged truth were insufficient to plead Article III standing because plaintiffs did not plead a distinct risk of harm to them from any defect in the bath products). Plaintiffs do not even try to plead such facts. Plaintiffs do not claim they did not receive iCloud; that their data was lost or stolen; or that iCloud was defective. They do not point to any way in which their experience was diminished due to third-party ownership of the physical servers on which their encrypted data allegedly resided. Nor do Plaintiffs plead facts that would support the probability, not just possibility, that what they allegedly received (iCloud utilizing space on third-party servers) was worth less than what they purportedly bargained for (iCloud utilizing space on Apple's servers). Plaintiffs simply make conclusory statements about hypothetical risks about data integrity (Compl. ¶¶ 30-33), and as a result of those hypothetical risks they "did not receive the benefit of their bargain" (*id*. ¶ 5) and "would not have agreed to pay Apple as much as they did for their iCloud subscription" (*id*. ¶ 58).

Because Plaintiffs do not plead that they themselves suffered "a distinct risk of harm from a defect in [Apple's] products that would make such an economic injury cognizable," *Herrington*, 2010 WL 3448531, at *4, Plaintiffs cannot manufacture Article III standing through conclusory allegations of injury. *See LinkedIn*, 932 F. Supp. 2d at 1094; *see also In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1109 (N.D. Cal. 2019) (finding an allegation that Plaintiffs allegedly overpaid for goods based upon alleged misrepresentations was insufficient to plead Article III standing where the plaintiffs alleged no facts that the products they purchased were worth less: "Plaintiffs cannot manufacture standing…."); *Beyer v. Symantec Corp.*, No. 18-CV-02006-EMC, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019) (holding "a bare assertion that [plaintiffs] overpaid" insufficient to establish Article III standing when the alleged loss is predicated solely on how a product functions, and the product has not malfunctioned) (citing *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017)); *Choi v. Toyota Motor Sales, U.S.A., Inc*., No. SACV1000154CJCRNBX, 2013 WL 12248152, at *4 (C.D. Cal. Jan. 9, 2013) (allegation that consumer would have paid less for the product had he known of the defect was insufficient for Article III standing for breach of contract, UCL, and FAL claims because "[m]erely stating a creative damages theory does not establish [] actual injury").

Cooley LLP
Attorneys At Law
San Diego

10.

Apple's Mot. to Dismiss
19-CV-04700-LHK

For all these reasons, Plaintiffs' Article III standing allegations are lacking as they pertain to their contract, UCL, and FAL claims.

### 2. Plaintiffs Lack Standing To Seek Injunctive Relief Because Plaintiffs Do Not Allege They Are Current Paid iCloud Subscribers Or That They Intend To Be In The Future.

Here, Plaintiffs seek "to enjoin Apple from continuing to falsely represent that it is the provider of the iCloud cloud storage and requiring Apple to disclose to class members all entities who store class members' data on the cloud as part of their iCloud subscription." (Compl. at Prayer for Relief; *see also id.* ¶¶ 54, 60, 66.) Plaintiffs, however, do not have Article III standing to seek injunctive relief because they do not plead a likelihood of future injury.

Fatally undermining their prayer for injunctive relief, Plaintiffs do not plead that they are current subscribers to the iCloud Agreement, nor do they allege they want to subscribe in the future. As a result, Plaintiffs lack standing to seek this injunctive relief. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (holding that a consumer who did not allege he "was going to purchase the product again" did not have standing to seek prospective injunctive relief); *Phillips*, 2016 WL 1579693, at *9 (holding that consumers who were allegedly misled about iOS update disclosures did not have standing to seek injunctive relief because they did not intend to download iOS updates in the future).

### B. Plaintiffs' Breach Of Contract Claim Fails To State A Claim Since The Complaint Lacks Facts Regarding Three Of The Four Elements For A Contract Claim.

To state a claim for breach of contract, Plaintiffs must plead four elements: "[1] the contract, [2] plaintiffs' performance (or excuse for nonperformance), [3] defendant's breach, and [4] damage to plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965). Plaintiffs fail to state a claim for breach of contract because they do not identify the contract, let alone any language where Apple promised it would own the physical servers on which subscribers' encrypted data is maintained. In addition, Plaintiffs fail to plead the existence of contract damages.

### 1. Plaintiffs Have Not Sufficiently Pleaded The Existence Of A Contract.

Rule 8(a) requires that a plaintiff asserting a breach of contract either "'set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect.'"

*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, No. C 0500917CW, 2005 WL 1712008, at *2 (N.D. Cal. July 21, 2005) (quoting Fed. R. Civ. P. Official Form 3, 12).  At the very least, this requires Plaintiffs to allege sufficient information to identify the actual contract at issue, including the approximate date of the contract.  *See* Fed. R. Civ. P. Official Form 3, 12 (identifying alleged contract breached by pleading "on or about [date]"); *Habtemariam v. Vida Capital Grp., LLC*, No. 216-CV-01189, 2017 WL 2930846, at *3 (E.D. Cal. July 10, 2017) (dismissing contract claim as inadequately pleaded under Rule 8(a) where the complaint did not describe the contract sufficiently for defendant to identify it).

The iCloud Agreement is at the heart of Plaintiffs' claims, and yet they have failed to allege when they entered into the Agreement, that they read the Agreement, or even which version of the Agreement they entered into.  Notably, Plaintiffs do not represent that the version of the Agreement attached to the Complaint at Exhibit 1 is the version they entered into; instead, they merely assert that it is the "current version" of the Agreement.  (Compl. ¶ 22.)  As evidenced by the two iCloud contracts attached to Plaintiffs' Complaint, the "current version" has numerous differences from the version dated September 16, 2015, including with regard to Apple's right to modify the terms of the contract, Apple's ability to terminate the contract, and changes to the features offered through iCloud.  (*Compare* Compl. Ex. 1 with Compl. Ex. 2.)  Instead of identifying which, if any, of the attached contracts Plaintiffs actually entered into, Plaintiffs make the conclusory allegation that "[t]he legal agreement or contract that [they] and Apple entered into . . . provided that Apple would be the provider of this cloud storage service."  (Compl. ¶¶ 11-12.)  Plaintiffs' failure to show their own assent to the terms and when that assent occurred does not constitute fair notice of the claims, as it makes it impossible for Apple to identify the contract allegedly breached and to determine the facial applicability of affirmative defenses such as statute of limitations, laches, or waiver.[3]  *See Habtemariam*, 2017 WL 2930846, at *3 (holding insufficiently identified contract "fail[ed] to put

---

[3] For example, Plaintiffs allege that Apple has been in breach of the Agreement since October 2011. (Compl. ¶¶ 2, 18).  But since the Complaint was filed on August 12, 2019, Plaintiffs' claims may be time-barred as to many iCloud subscribers, including themselves, if they first purchased an iCloud subscription prior to August 12, 2016 (for their FAL claims), or August 12, 2015 (for their breach of contract and UCL claims).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

[defendant] on notice of what was alleged against it" and granting motion to dismiss).  Plaintiffs'

minimal allegations are insufficient to allege breach of contract under Rule 8(a).

### 2. Apple Did Not Make Any Promises Regarding The Owner Of The Physical Servers And Had No Obligation To Disclose Such Details.

In order to support their breach of contract claim, Plaintiffs take two partial statements in the current iCloud Agreement and claim they were breached: (1) "Apple is the provider of the Service," and (2) "your content will be automatically sent to and stored by Apple."  (Compl. ¶ 47.)  Plaintiffs allege that because Apple used third party servers, Apple did not actually "provide" iCloud, nor did Apple "store" subscribers' data.  (Compl. ¶ 49.)  Not only are these statements improperly taken out of context, but Plaintiffs' interpretation of them is absurd.

A court interpreting a contract must consider the contract as a whole.  Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").  In the absence of ambiguity, the "plain" and "ordinary" meaning of the relevant contractual language controls.  *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003) ("In interpreting an unambiguous contractual provision [the court is] bound to give effect to the plain and ordinary meaning of the language used by the parties.") (quotations and citations omitted); *PlayMedia Systems, Inc. v. America Online, Inc.*, 171 F. Supp. 2d 1094, 1114 (C.D. Cal. 2001) ("When interpreting contract language, courts start with the assumption that the parties have used the language in a way that reasonable persons ordinarily do.") (quotations and citations omitted).  To determine the plain meaning of terms, courts often consider dictionary definitions.  *See, e.g*, *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *7 (N.D. Cal. Mar. 15, 2016).  "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Levi Strauss & Co. v. Aetna Casualty & Sur. Co.*, 184 Cal. App. 3d 1479, 1485–86 (1986) (quotations and citations omitted).  "Courts will not add a term about which a contract is silent." *Id*. at 1486.  Applying this standard here, it is obvious that Apple has not promised to own the servers on which subscribers' encrypted data is stored.

First, the statement "your content will be automatically sent to and stored by Apple," when read together with the remainder of the sentence, means that Apple is taking charge of subscribers'

data "so [subscribers] can later access that content or have content wirelessly pushed to [] other iCloud-enabled devices or computers." (Compl. ¶ 22; Agreement at p.1.) It is indisputable that Apple has taken charge of subscribers' data so that it can later be accessed or pushed to subscribers' devices. Plaintiffs are attempting to impose an inappropriately limited definition of the word "store" to fit their claims, but the Agreement does not contain any statement whatsoever about the ownership of the servers housing subscribers' data. *See Herskowitz*, 940 F. Supp. 2d at 1140. Plaintiffs would have the Court believe that iCloud is nothing more than commoditized storage, when in fact the Agreement explains that iCloud is a combination of software and features that integrates subscribers' data (photos, app data, messages, etc.) with their various Apple devices. Plaintiffs do not plead that Apple failed to "provide" iCloud and "store" subscriber data, when those words are accorded their proper meaning within the context of the contract. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").[4]

Second, the statement "Apple is the provider of the Service" is consistent with Apple's alleged conduct. (Compl. ¶ 22; Agreement at p.1.) Merriam-Webster dictionary defines "provide" as "supply or make available" or "to make something available to." Merriam-Webster.com, https://www.merriam-webster.com/dictionary/provide (last visited September 26, 2019). Apple made iCloud available to Plaintiffs. They do not allege that Microsoft, Amazon, or Google made iCloud available to them. Plaintiffs again conveniently omit the remainder of the sentence, which clarifies that Apple's promise to "provide" iCloud means that it would allow Plaintiffs "to utilize certain Internet services" or make files "accessible on [Plaintiffs'] compatible devices and computers." (Agreement at p.1.) Plaintiffs do not even try to allege that Microsoft, Amazon, or Google did or could make files accessible across Plaintiffs' devices simply by owning the physical servers on which encrypted data was maintained. At base, Plaintiffs are falsely equating the phrase "provider of the Service" with "owner of the server," which is without merit. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1140 (N.D. Cal. 2013) (rejecting plaintiff's attempt to "insert ambiguity into the contract").

---

[4] *See also In re iPhone 4S Consumer Litig.*, 2014 WL 589388, at *7 (dismissing FAL claim related to claims Siri malfunctioned because "Apple made no promise that Siri would operate without fail").

Cooley LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

Finally, Plaintiffs' vague contention that Apple should have told them that their data would be physically located on servers owned by third parties (Compl. ¶¶ 30, 34, 42, 51) runs afoul of the general axiom of contract law that parties are under no broad obligations to disclose information unless specifically required under the contract.  *See Am. Exp. Bank, FSB v. Kayatta*, 190 Cal. App. 4th 563, 570 (2010) (no requirement to disclose information that was not specifically promised in the agreement).  Here, there is no allegation that Apple had any contractual obligation to disclose in the Agreement the owner of the physical servers on which subscribers' data was maintained.  Apple cannot be held liable for any alleged failure to disclose that data would be hosted on third-party servers in the Agreement, because Apple had no duty to make such a disclosure in the first place.

### 3.    Plaintiffs Fail To Allege Sufficient Damages For Breach Of Contract.

As an independent basis to dismiss Plaintiffs' breach of contract claim, Plaintiffs fail to allege contract damages under California law.  California law requires a plaintiff to allege "appreciable and actual damage."  *See Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009) ("Under California law, a breach of a contract claim requires a showing of appreciable and actual damage.").  Because Plaintiffs fail to do so, their breach of contract claim fails.  *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724 (N.D. Cal. 2014) (dismissing breach of contract claim for failure to plead damages).

As noted, Plaintiffs allege that if Apple had disclosed that it was not the owner of the physical servers storing iCloud data, "they would either not have entered into the iCloud agreement with Apple or would not have agreed to pay Apple as much as they did for their iCloud subscription." (Compl. ¶ 51; *see also id.* ¶¶ 11-12)[5]  At best, this allegation is a request for restitution.  But restitution is only available in a contract claim in two situations: (1) where the contract was procured by fraud or is otherwise unenforceable, *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) ("[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason."), or (2) where the defendant's breach was "total" and plaintiff elects to treat the contract as it if were rescinded, *Brown*

---

[5] Generic allegations that Plaintiffs did not receive the "benefit of their bargain" (Compl. ¶¶ 5, 53) are too conclusory to support Plaintiffs' claims.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

*v. Grimes*, 192 Cal. App. 4th 265, 281 (2011) ("A party is entitled to restitution when the contract has failed, such as when it is void, or has been rescinded or 'the consideration has wholly failed.'") (citations and quotations omitted).  Neither is present here.  Restitution simply is not a measure of contract damages.  *See Svenson*, 65 F. Supp. 3d at 723 ("Plaintiff's alternative allegation that she and the Class are entitled to restitution as a result of Defendants' breach of contract is simply incorrect as a matter of law.").

Because "Plaintiff[s] do[] not allege that what [they] received"— iCloud by Apple with data storage on servers owned by third-parties—"was worth less than what [they] allegedly bargained for"—iCloud by Apple with data storage on servers owned by Apple—Plaintiffs have not sufficiently pleaded contract damages.  *See Svenson*, 65 F. Supp. 3d at 724.

As Plaintiffs have not pleaded (1) the contract, (2) the breach, or (3) damages, their breach of contract claim must be dismissed.

**C.   Plaintiffs' FAL And UCL Claims Also Fail For Multiple Reasons.**

Unable to plead each element of a contract claim, Plaintiffs attempt to recast their allegations as FAL and UCL claims by claiming the two contractual provisions at issue are false advertising under the FAL or misrepresentations under the UCL.  This attempt at fashioning FAL and UCL claims out of Plaintiffs' defective reading of the Agreement must be rejected.  Indeed, allowing Plaintiffs' FAL and UCL claims to survive would permit any plaintiff to circumvent the pleading requirements for contract claims by artfully pleading contract claims as UCL and FAL claims.  This cannot be allowed because the FAL and UCL require plaintiffs to plead facts regarding their alleged reliance on the representations at-issue, facts regarding their alleged harm, and, critically, facts indicating that their reading of the representations is reasonable.  Plaintiffs have pleaded none of this.

**1.   Plaintiffs' FAL And UCL Claims (All Prongs) Sound In Fraud, But Do Not Satisfy The Heightened Pleading Requirements Under Rule 9(B).**

Plaintiffs' allegations under the FAL and each prong of the UCL are insufficient under Rule 9(b) because Plaintiffs do not allege that they read or relied on the allegedly misleading statements in the Agreement, let alone "'the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

1    Claims under the FAL and UCL that allege intentional misrepresentations are "grounded in

2    fraud" and are subject to Rule 9(b).  *Id.* at 1125.  Because Plaintiffs base their FAL and UCL claims

3    on a unified course of alleged intentional misrepresentations (*see e.g.*, Compl. ¶¶ 29, 56-59, 64-65),

4    their claims are subject to Rule 9(b).  *See Lusson v. Apple, Inc.,* No. 16-CV-00705-VC, 2016 WL

5    10932723, at *2-3 (N.D. Cal. June 20, 2016) (plaintiff's UCL and FAL claims premised on

6    misrepresentations and omissions "sound in fraud" and must be pleaded with specificity); *Graham v.*

7    *Wells Fargo Bank, N.A.*, No. 15-CV-04220-JD, 2017 WL 86013, at *4 (N.D. Cal. Jan. 10, 2017)

8    (claims under UCL's fraudulent and unfair prongs of the UCL were grounded in fraud and were subject

9    to 9(b)); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ("If the

10   unlawful conduct is part of a uniform course of fraudulent conduct, it must meet Rule 9(b)'s

11   heightened pleading standards.").

12       Plaintiffs identify two alleged misstatements by Apple, both of which reside in the iCloud

13   Agreement.  (Compl. ¶ 57 (alleging that the misrepresentations were "included in and formed a key

14   part of Apple's iCloud agreements"); *see also id.* ¶ 47 (basing complaint on contractual statements

15   that "Apple is the provider of the Service" and that "your content will be automatically sent to and

16   stored by Apple").  Plaintiffs do not allege that any advertising, or any other statement outside of the

17   iCloud Agreement, was misleading.  But Plaintiffs do not allege that they read the iCloud Agreement,

18   when they read it, or that they saw or relied on the allegedly misleading statements within the

19   Agreement.  Their FAL and UCL claims therefore fail to satisfy Rule 9(b).  *See Low v. LinkedIn Corp*.,

20   900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2010) (granting motion to dismiss FAL claim where plaintiffs

21   described defendant's privacy policy but did not allege that they were aware of the policy, read it, or

22   relied upon it); *Maldonado v. Apple, Inc*., No. 3:16-CV-04067-WHO, 2017 WL 818868, at *6 (N.D.

23   Cal. Mar. 2, 2017) (allegations that plaintiffs had read the misrepresentations "prior to purchase" did

24   not sufficiently allege the 'when' required to state UCL and FAL claims with specificity).[6]

25

26   [6] To the extent Plaintiffs argue that their claims are based on a nondisclosure or omission, this does
     not absolve them of pleading with particularity under Rule 9(b).  *Marolda v. Symantec Corp.*, 672 F.

27   Supp. 2d 992, 1002 (N.D. Cal. 2009) ("[T]o plead the circumstances of omission with specificity,
     plaintiff must describe the content of the omission and where the omitted information should or could

28   have been revealed, as well as provide representative samples of advertisements, offers, or other
     representations that plaintiff relied on to make her purchase and that failed to include the allegedly

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

2.     **Plaintiffs Have Not Pleaded Statutory Standing Under The FAL And UCL (All Prongs).**

For the same reasons that Plaintiffs have failed to allege injury in fact under Article III (*see supra*, § IV.A), they also fail to establish statutory standing for their FAL claim and all prongs of their UCL claim.  Both the FAL and UCL require Plaintiffs to "allege facts showing that he or she suffered an economic injury *caused by* the alleged violation."  *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 228 (2013) (emphasis in original).  To satisfy this causation requirement, plaintiffs asserting FAL claims and these types of UCL claims (i.e., those premised on alleged misrepresentation) are required to plead that they actually read and relied on the statement at issue.  *See Maldonado*, 2017 WL 818868, at *6 (dismissing claims under the FAL and UCL for failure to allege that plaintiff read or relied on the misleading statement allegedly contained in the parties' contract).  Additionally, as with Article III standing, to have standing under the UCL and FAL the alleged injury cannot be manufactured from a hypothetical risk.  *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 (9th Cir. 2009) (discussing UCL standing: "The requisite injury must be 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'") (citations omitted); *Bower v. AT&T Mobility, LLC*, 196 Cal. App .4th 1545, 1555-56 (2011) (affirming demurrer to UCL and FAL claim that only alleged conjectural or hypothetical injury).

Here, Plaintiffs failed to plead that they saw and relied on the Agreement, let alone saw and relied on the alleged misrepresentations they point to in the Complaint.  (*See supra*, § IV.C.1.)  Nor have they identified any non-speculative injury.  (*See supra*, § IV.A.)  For these additional reasons, Plaintiffs' FAL and UCL claims should be dismissed.

3.     **Plaintiffs' Claims Under The FAL And UCL (All Prongs) Also Fail Because They Are Equitable Claims And Plaintiffs Have An Adequate Remedy At Law.**

The FAL and UCL provide for equitable relief, which is "not appropriate where an adequate remedy exists at law."  *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14–cv–04809, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19,

omitted information."); *see also Vitt v. Apple Computer, Inc.*, No. CV 06-7152-GHK (RCX), 2007 WL 9662403, at *2 (C.D. Cal. Mar. 12, 2007) (dismissing FAL and UCL claims based on omissions for failure to identify "what should have been said").

Cooley LLP
Attorneys At Law
San Diego

18.

Apple's Mot. to Dismiss
19-CV-04700-LHK

2015) ("Apart from civil penalties, which are not at issue here, the UCL and FAL provide for only equitable relief."). Where an equitable relief claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (internal citations and quotations omitted); *see also In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). For these reasons, this Court has routinely dismissed FAL and UCL claims that relied on the same factual predicate as other actions at law. *See Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (dismissing plaintiffs' UCL claim because plaintiffs had an adequate remedy at law); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7-8 (N.D. Cal. Sept. 8, 2016) (dismissing UCL and FAL claims where they relied on the same factual predicate as breach of contract and fraud causes of action).

Here, the same breach of contract allegation underlies both Plaintiffs' FAL claim and all prongs of their UCL claim. (*See* Compl. ¶ 56 (asserting that the contract provisions at issue are false and misleading under FAL); *id* ¶¶ 64-65[7] (relying on the same statements as unfair and deceptive practices under the UCL); *id.* ¶ 64[8] (relying on breach of contract and violation of FAL to support UCL claim under the unlawful prong). Nowhere do Plaintiffs allege any additional facts suggesting that damages for breach of contract would be inadequate. *See Duttweiler*, 2015 WL 4941780, at *8 ("[I]n order to demonstrate some entitlement to equitable relief, [plaintiff] was required to allege facts suggesting that damages under the [Consumers Legal Remedies Act] alone would not provide adequate relief."). Accordingly, dismissal of these duplicative causes of action is appropriate.

---

[7] The Complaint repeats paragraphs 64 and 65. Apple's citation to ¶¶ 64-65 is on pages 16-17 of the Complaint.

[8] *See supra*, n.7. Apple's citation is to the ¶ 64 that is entirely on p.17 of the Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

1       **4.**      **Plaintiffs' Claims Under The FAL And The Fraudulent UCL Prong Fail Because Plaintiffs Have Not Alleged An Actionable Misrepresentation.**

Plaintiffs' theory supporting its claims under the FAL and UCL is that Apple has affirmatively misrepresented whether they owned the servers on which iCloud subscribers' data is stored. (*See e.g.*, Compl. ¶¶ 22, 29.)  Yet, neither of the two statements Plaintiffs have identified in the Agreement—that "Apple is the provider of the Service" and that "your content will be automatically sent to and stored by Apple" (Compl. ¶ 22)—is an actionable misstatement under the FAL or the UCL's fraudulent prong.  Neither statement is "likely to deceive a reasonable consumer" into believing that Apple would own the physical servers on which the encrypted data is stored.  *Orshan v. Apple Inc.*, No. 5:14-CV-05659-EJD, 2018 WL 5858643, at *4 (N.D. Cal. Nov. 6, 2018) (*citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).[9]

Where the court can determine from the face of the pleadings that the alleged misrepresentation would not be misleading or deceptive to a reasonable consumer, a fraud-based claim is subject to dismissal.  In considering whether a misrepresentation is likely to be misleading, courts may consider the circumstances and any other context of the alleged statement.  *See, e.g.*, *Orshan*, 2018 WL 5858643, at *3 (dismissing plaintiffs' fraud-based claims under the FAL and UCL where "no reasonable consumer could have read Apple's" contract language in the manner that plaintiffs alleged); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (dismissing claim because "[a]ny ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *Tomek v. Apple, Inc.*, No. 2:11-CV-02700-MCE, 2013 WL 3872774, at *4 (E.D. Cal. July 25, 2013) (finding no actionable misrepresentation where plaintiff's claims regarding battery performance were contradicted by Apple's disclaimers, dismissing UCL and CLRA claims), *aff'd*, 636 F. App'x 712 (9th Cir. 2016).

For the same reasons Plaintiffs do not allege a breach of contract (*see supra*, § IV.B.2), it is not likely that a reasonable subscriber of iCloud would have understood that Apple was promising to own the physical servers on which data was maintained.  First, the Agreement did not make any

---

[9] "The term 'likely' indicates that deception must be probable, not just possible." *McKinniss v. Sunny Delight Bevs. Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

representations with respect to how subscribers' encrypted data would be maintained, or on what servers. Second, the Agreement specifically disclaims guarantees against loss, corruption, or security intrusion (Agreement at V.D.; *id.* at IX; *see supra*, note 2), which forecloses Plaintiffs' assertion that a reasonable consumer would have understood the Agreement to promise data storage by Apple that was immune to data loss or damage (Compl. ¶¶ 31-33).

Plaintiffs' FAL claim and claim under the fraudulent UCL prong are unsupported and unsupportable.[10]

### 5. Because The FAL Claim Fails, Plaintiffs Fail To State A Claim Under The Unlawful Prong Of The UCL.

Plaintiffs' UCL claim under the unlawful prong is predicated on Apple's alleged contractual statements and Apple's alleged violation of the FAL, and nothing else. (Compl. ¶ 64.) As discussed, Plaintiffs' breach of contract and FAL claims are insufficiently pleaded; hence, Plaintiffs fail to state a claim under the UCL's unlawful prong. Moreover, a mere breach of contract does not suffice to state a claim under the UCL's unlawful prong. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("[A] common law violation such as breach of contract is insufficient" under the UCL's unlawful prong). Accordingly, Plaintiffs cannot state a cause of action under the UCL's unlawful prong.

### 6. The Same Deficiencies That Undermine Plaintiffs' Breach Of Contract And FAL Claims Preclude Plaintiffs From Stating A Claim Under The Unfair Prong Of The UCL.

Plaintiffs' UCL claim under the unfair prong fails both tests established by California courts to assess such claims. Although the UCL does not define the term "unfair," courts have developed two tests for "unfairness" within the meaning of the statute: the "balancing test" and the "tethering

---

[10] To the extent Plaintiffs are claiming that Apple was obligated to disclose that data was maintained on physical servers owned by third parties, this theory likewise does not succeed. In order for an omission to be actionable under the FAL and UCL, it must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1032 (N.D. Cal. 2014) (quotation omitted). Here, there is no dispute that Apple complied with its contractual obligations by providing the services as described and ensuring that subscriber data was properly stored. Moreover, Plaintiffs do not (and cannot) plead any reason why Apple would be required disclose who owns the servers on which subscriber data is maintained. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California courts have generally rejected a broad obligation to disclose….").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

1   test." *See Herskowitz*, 940 F. Supp. 2d at 1145-47.  Plaintiffs' allegations satisfy neither test.  *See*

2   *Herrington,* 2010 WL 3448531, at *10 (holding alleged conduct not "unfair" for same reasons the

3   plaintiffs failed to plead Article III standing: plaintiffs "have not alleged facts suggesting that

4   consumers have suffered an injury based on Defendants' conduct").

5          The balancing test "examines whether the challenged business practice is 'immoral, unethical,

6   oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the

7   utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"  *Herskowitz*,

8   940 F. Supp. 2d at 1145-46 (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247,

9   257 (2010)).  Plaintiffs plead that Apple's use of third-party server space permitted iCloud to be

10  provided to iOS subscribers who otherwise would not have had integrated backup services.  (Compl.

11  ¶ 27.) And since Plaintiffs have not shown any harm to themselves--i.e. no lost, stolen, or damaged

12  data, and no complaints with how the service operated--they cannot show any harm that would

13  outweigh utility.  *See Bush v. Mondelez International, Inc.*, No. 16-CV-02460-RS, 2016 WL 7324990,

14  at *4 (N.D. Cal. Dec. 16, 2016) (holding balancing test not met where the plaintiff did not allege a

15  "plausible claim of consumer deception").

16         Under the tethering test, plaintiffs must allege that defendants' purported conduct violated a

17  public policy that is "tethered" to "specific constitutional, statutory, or regulatory provisions.

18  *Herskowitz*, 940 F. Supp. 2d at 1145 (quoting *Drum*, 182 Cal. App. 4th at 257).  Plaintiffs allege

19  without support that Apple engaged in an "unfair business practice" (Compl. ¶ 65), but they do not

20  make any connection to any specific constitutional, regulatory, or statutory provision.   This is

21  insufficient.  *See Bush*, 2016 WL 7324990, at *4 ("[T]o the extent [plaintiff] intended to tether his

22  claim to the policy of protecting against consumer deception, his claim fails for the same reasons it

23  fails the balancing test.").

24         For these independent reasons, Plaintiffs' UCL claims under the unfair prong should be

25  dismissed.

26  **V.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

27         Because the portions of the Agreement identified by Plaintiffs neither constitute a promise to

28  store data on Apple-owned servers, nor could be understood by a reasonable consumer to have

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

22.

APPLE'S MOT. TO DISMISS
19-CV-04700-LHK

constituted such a promise, Plaintiffs cannot plead any set of facts entitling them to relief, and their Complaint should be dismissed with prejudice. *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (dismissing claims under the FAL and all prongs of the UCL with prejudice because "permitting Plaintiff leave to amend would be futile").

## VI. CONCLUSION

Apple respectfully requests that the Court dismiss with prejudice each of Plaintiffs' claims against Apple for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Dated: October 4, 2019

COOLEY LLP

*\s\ Michelle Doolin*
Michelle Doolin
Attorneys for Apple Inc.

Cooley LLP
Attorneys At Law
San Diego

23.

Apple's Mot. to Dismiss
19-CV-04700-LHK