UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREA M WILLIAMS, et al., | Case No. 19-CV-04700-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS** |
| v. | |
| APPLE, INC., | Re: Dkt. No. 15 |
| Defendant. | |

Plaintiffs bring this putative class action against Defendant Apple, Inc. ("Apple") and allege breach of contract, violations of California's False Advertising Law ("FAL"), and violations of California's Unfair Competition Law ("UCL"). ECF No. 1 ("Class Action Complaint" or "CAC"). Before the Court is Apple's motion to dismiss. ECF No. 15. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Apple's motion to dismiss.

## I.      BACKGROUND

### A. Factual Background

Apple is a corporation incorporated under the laws of California and has its principal place of business in Cupertino, California. CAC ¶ 7. Apple provides cloud storage services to Apple

1

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS

device users through iCloud, Apple's cloud service. *Id.* ¶¶ 13-17. iCloud allows subscribers to "utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services." CAC, Ex. 1 at 1.

According to the CAC, "[o]wners of Apple devices are granted up to 5 GB of iCloud storage for free. If an Apple device user wishes to store more than 5 GB of data on the cloud through iCloud, then that user must subscribe to iCloud's paid service." CAC ¶ 20. The CAC alleges that "[i]n order to subscribe to iCloud, a user must agree to the iCloud Terms of Service Agreement." *Id.* ¶ 22. The relevant portion of the iCloud Terms of Service Agreement ("iCloud Agreement") provides the following:

> ***Apple is the provider of the Service***, which permits you to utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services, only under the terms and conditions set forth in this Agreement. iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud. You can disable iCloud in Settings. When iCloud is enabled, ***your content will be automatically sent to and stored by Apple***, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers. ¶

CAC, Ex. 1 at 1 (emphasis added). This language appears in a September 16, 2015 version of the iCloud Agreement and a September 17, 2018 version of the iCloud Agreement. CAC ¶ 23; CAC, Exs. 1-2.

Named Plaintiffs Andrea M. Williams and James Stewart bring the suit on behalf of a putative class of United States iCloud subscribers (excluding Apple, its employees, and its directors) who during the Class Period from August 20, 2015 to the present paid for an Apple iCloud subscription (collectively, "Plaintiffs"). CAC ¶¶ 11-12, 38. Williams is a resident and citizen of Florida who "subscribed to Apple's iCloud service, paid money to Apple for her iCloud subscription, and used iCloud to store her data on the cloud." *Id.* ¶ 11. Stewart is a resident and citizen of California who "subscribed to Apple's iCloud service, paid money to Apple for his

2

iCloud subscription, and used iCloud to store his data on the cloud." *Id.* ¶ 12.  The CAC does not allege the dates that Williams and Stewart entered into the iCloud Agreement with Apple.  *Id.* ¶¶ 11-12.  Rather, the CAC only alleges that Williams and Stewart agreed to the iCloud Agreement sometime "[d]uring the Class Period" from August 20, 2015 to the present.  *Id.*

The CAC alleges that Williams and Stewart were not informed by Apple that his or her data was being stored on "non-Apple remote servers and facilities" despite alleged assurances to the contrary.  *Id.* ¶¶ 11-12.  Specifically, Plaintiffs allege that they "bargained for, agreed, and paid to have Apple—an entity they trusted—store their data."[1]  *Id.* ¶ 32.  According to the CAC, however, Apple's representations were false and "Apple lacked the facilities needed to readily provide the cloud storage space being sold to class members through iCloud."  *Id.* ¶ 27.  "Unable to provide the cloud storage space . . . , Apple breached its iCloud agreement with its subscribers and had these users' data stored not by Apple on Apple facilities, but instead turned the users' digital files to other entities, like Amazon and Microsoft[,] for them to store on their facilities."  *Id.* ¶ 28.

The CAC alleges that "[h]ad Apple disclosed that, contrary to its contractual representation, Apple was not the provider of the cloud storage," putative class members "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service."  *Id.* ¶¶ 11-12.  The CAC claims that other companies, such as Microsoft and Google, offer cheaper cloud storage services than Apple and that Apple's "price premium" harmed putative class members who would have otherwise utilized these cheaper cloud storage alternatives.  *Id.* ¶¶ 34-37.

**B.  Procedural History**

On August 12, 2019, Plaintiffs filed a class action complaint against Apple on behalf of a

---

[1] Elsewhere, however, the CAC contradicts Plaintiffs' allegation that they "bargained for" this specific provision.  Specifically, the iCloud Agreements that Plaintiffs attached to the CAC are simple form contracts that could not be modified and merely allowed Plaintiffs to click an "AGREE" button.  CAC, Ex. 1 at 1; CAC, Ex. 2 at 1; ECF No. 19 at 23 ("Opp.").  Nowhere do the CAC or the iCloud Agreements allege or establish that the iCloud Agreements could be modified.

putative class of United States iCloud subscribers (excluding Apple, its employees, and its directors) who during the Class Period from August 20, 2015 to the present paid for an Apple iCloud subscription. CAC ¶¶ 11-12, 38. Plaintiffs attached three exhibits to their CAC: a September 16, 2015 version of the iCloud Agreement, a September 17, 2018 version of the iCloud Agreement, and a version of the iCloud Agreement for subscribers in China. CAC, Exs. 1-3.

The CAC alleges three causes of action against Apple: (1) breach of contract, (2) violations of California's False Advertising Law ("FAL"); and (3) violations of California's Unfair Competition Law ("UCL"). *Id*. ¶¶ 45-66. Plaintiffs allege that Apple agreed to be the "provider of the [iCloud] Service" and to store putative class members' content on Apple's servers. *Id*. ¶¶ 46-47. According to Plaintiffs, however, Apple breached this promise because "storage was provided by non-Apple third parties with whom neither [Named] Plaintiffs nor class members had bargained." *Id*. ¶¶ 47-49. Plaintiffs also ground their FAL and UCL claims on the allegation that Apple's representation that "Apple was the provider of the iCloud cloud storage service and that class members' data would be stored on the cloud by Apple were and are false and misleading." *Id*. ¶¶ 56, 63-65. In addition to monetary damages, Plaintiffs request injunctive relief. *Id*. ¶¶ 60, 66. Plaintiffs, however, do not allege whether they are currently paying for iCloud storage.

On October 4, 2019, Apple filed a motion to dismiss the CAC. ECF No. 15 ("Mot."). On October 18, 2019, Plaintiffs filed an opposition. ECF No. 19 ("Opp."). On October 25, 2019, Apple filed a reply. ECF No. 22 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Although lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction." (citing *Lexmark Int'l, Inc. v. Static Control*

United States District Court
Northern District of California

*Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

"In a facial attack," on the other hand, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## B. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Additionally, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C. Motion to Dismiss Under Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy this heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

"When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the

heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### D. Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

## III.  DISCUSSION

Plaintiff's Class Action Complaint ("CAC") alleges three causes of action against Apple: (1) breach of contract, (2) violations of California's False Advertising Law ("FAL"); and (3) violations of California's Unfair Competition Law ("UCL"). *Id.* ¶¶ 45-66. Apple moves to

7

dismiss all three of Plaintiffs' causes of action. Apple contends that the CAC must be dismissed because (1) Plaintiffs lack Article III standing; (2) Plaintiffs fail to adequately plead a breach of contract claim under California law; and (3) Plaintiffs fail to adequately plead FAL and UCL claims. Because the Court must first address jurisdictional concerns, the Court begins its analysis with Apple's argument that Plaintiffs lack Article III standing. *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1148 (9th Cir. 2006) ("As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits."). The Court then turns to Plaintiffs' breach of contract claim before concluding with the FAL and UCL claims.

### A. Article III Standing

Apple first argues that Plaintiffs lack Article III standing because they have not alleged anything beyond a merely speculative injury. *See* Mot. at 8-11. "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "[T]he irreducible constitutional minimum of [Article III] standing contains three elements:" (1) an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing. *Id.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quotation marks and internal alterations omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted).

Apple's argument is best construed as a facial attack whereby "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the

plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

In terms of substance, Apple argues that Plaintiffs have not adequately alleged an injury in fact to recover either monetary damages or to pursue injunctive relief. *See* Mot. at 8-11. The Court begins its analysis with respect to Article III standing for monetary damages before addressing Article III standing for injunctive relief.

### 1. Article III for Monetary Damages

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). Additionally, "[a]n injury in fact must also be 'concrete' . . . that is, it must actually exist." *Id.*

Apple's argument that Plaintiffs have not established an injury in fact primarily relies on *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013), where LinkedIn users brought a putative class action against LinkedIn based on allegations that LinkedIn failed to protect users' passwords and information despite promises and assurances to do so. *Id.* at 1091. The plaintiffs argued that they had standing to sue because they did not receive the full benefit of their bargain for their paid premium LinkedIn memberships. *Id.* at 1093. The district court disagreed and held that the plaintiffs had not adequately alleged facts establishing Article III standing.

First, the district court concluded that plaintiffs lacked standing because the Plaintiffs paid consideration "not for a particular level of security, but actually for the advanced networking tools and capabilities to facilitate enhanced usage of LinkedIn's services." *Id.* at 1093. Second, the district court found that the plaintiffs did not have standing because they had not read and relied on the alleged misrepresentation. *Id.* Third, the district court found that the plaintiffs had not adequately alleged standing because the plaintiffs had not pleaded that their economic loss was

United States District Court
Northern District of California

caused by LinkedIn's failure to provide a certain level of security services. *Id.* at 1093-94.

Finally, the district court determined that though the LinkedIn plaintiffs "t[ook] issue with the way in which LinkedIn performed the security services," the plaintiffs had not alleged that any of their information was actually compromised and therefore, they had not alleged an injury in fact. *Id.* at 1094.

Apple relies on these four factors to argue that Plaintiffs here also lack Article III standing. Mot. at 7-11. The Court disagrees. First, as to whether Plaintiffs paid consideration for Apple to store Plaintiffs' data on Apple's own servers, the Court notes that in the second round motion to dismiss order in the same case, the *In re LinkedIn* court held that because the named plaintiff "purchased her premium subscription in reliance on LinkedIn's [contractual] misrepresentation and would not have done so but for the misrepresentation," the amended complaint's allegations were "sufficient to confer . . . standing under Article III." *In re LinkedIn User Privacy Litig.*, 2014 WL 1323713, at *4 (N.D. Cal. Mar. 28, 2014) ("*In re LinkedIn II*"). Those allegations are similar to ones present in the instant case, and the same conclusion follows.

Specifically, the CAC alleges that Plaintiffs entered into the iCloud Agreement, paid for iCloud storage, and that the iCloud Agreement contained a contractual representation that Plaintiffs' "content w[ould] be automatically sent to and stored by Apple." CAC, Ex. 1 at 1. The CAC also pleads that Apple breached the iCloud Agreement by "turn[ing] [Plaintiffs'] digital files to other entities, like Amazon and Microsoft[,] for them to store on their facilities." CAC ¶ 28. This Court has previously recognized that such allegations are sufficient to confer standing. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *17 (N.D. Cal. Aug. 30, 2017) ("The Court finds that Neff's allegations are sufficient to allege 'benefit of the bargain' losses as a result of the Data Breaches, which courts in this district and elsewhere have found are sufficient to allege an injury in fact for purposes of Article III standing." (citing *In re LinkedIn II*, 2014 WL 1323713, at *6)). Therefore, the Court holds that the CAC sufficiently pleads that Plaintiffs paid consideration for Apple to store Plaintiff's data, and as such, Plaintiffs have Article III standing.

10

Second, Apple argues that Plaintiffs lack Article III standing because the CAC does not plead that Plaintiffs read or relied on the relevant contractual language. For FAL and UCL claims, "courts have held that actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (collecting cases). The Court addresses whether the CAC adequately pleads reliance for Plaintiffs' FAL and UCL claims later in this Order. *See infra* Part III.C.2.

Apple does not clearly allege that reliance is required for Article III standing for Plaintiffs' breach of contract claim. Unlike FAL and UCL claims, "[r]eliance is not an element of a breach of contract claim," *Rodman v. Safeway*, 125 F. Supp. 3d 922, 933 n.9 (N.D. Cal. 2015). Nonetheless, Apple's reliance argument is subsumed in the next paragraph's discussion of causation.

Third, Apple contends that Plaintiffs' "benefit of the bargain" economic loss was not caused by Apple's decision not to store Plaintiffs' data on Apple's own servers. This argument largely overlaps with Apple's other arguments regarding consideration, reliance, and damages, as these arguments involve whether Plaintiffs suffered any harm and whether that harm is fairly traceable to Apple's alleged breach of the iCloud Agreement. Here, as discussed previously, the CAC adequately alleges that Apple promised that Plaintiffs' "content w[ould] be automatically sent to and stored by Apple," CAC, Ex. 1 at 1, but that Apple breached this provision by "turn[ing] the users' digital files to other entities, like Amazon and Microsoft[,] for [Amazon and Microsoft] to store on their facilities." CAC ¶ 28. At this stage, this is enough to plead Article III standing.

Fourth, Apple argues that Plaintiffs lack standing because Plaintiffs must "allege something more than overpaying . . . to plead Article III standing." Mot. at 9 (quotation marks omitted). The Court disagrees. Generally, where plaintiffs plead that they were economically harmed because they did not receive the "benefit of the bargain," plaintiffs have adequately alleged Article III standing. *In re Yahoo! Inc.*, 2017 WL 3727318, at *17 ("The Court finds that

11

United States District Court
Northern District of California

Neff's allegations are sufficient to allege 'benefit of the bargain' losses as a result of the Data Breaches, which courts in this district and elsewhere have found are sufficient to allege an injury in fact for purposes of Article III standing." (citing *In re LinkedIn II*, 2014 WL 1323713, at *6)); *see also In re LinkedIn*, 932 F. Supp. 2d at 1093 ("Economic harm based on the 'benefit of the bargain' theory Plaintiff proffers has been recognized as a viable basis for standing."). In this way, Apple's reliance on *In re LinkedIn* is misplaced, as that decision stands for the more limited proposition that when plaintiffs do not allege that the product they received was actually of lesser value or any different than what they bargained for, plaintiffs have not adequately pleaded an injury in fact. *See id.* at 1094 ("This [current case] is not the case where consumers paid for a product, and the product they received was different from the one as advertised on the product's packaging.").

Here, Plaintiffs sufficiently allege that they overpaid for Apple iCloud. Plaintiffs allege that Apple misrepresented who owned the physical servers used to store Plaintiffs' information and that "[h]ad Apple disclosed that, contrary to its contractual representation, Apple was not the provider of the cloud storage," putative class members "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service." CAC ¶¶ 11-12. This is especially true, as the CAC asserts that other companies, such as Microsoft and Google, offered cheaper cloud storage services than Apple and that Apple's "price premium" harmed putative class members who would have otherwise utilized these cheaper cloud storage alternatives. *Id.* ¶¶ 34-37. In this way, the instant case closely mirrors *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359 (9th Cir. 2009).

In *Chavez*, the named plaintiff "brought [a] purported class action on behalf of himself and others similarly situated, contending that, in contrast with appellees' representations, Blue Sky products are not manufactured or bottled in New Mexico." *Id.* at 360. As a result, the named plaintiff contended that the defendant was liable pursuant to the FAL, the UCL, and other California consumer fraud and common law causes of action. *Id.* The named plaintiff alleged that he "purchased Blue Sky soda instead of other brands based on representations that Blue Sky was a

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS

New Mexico company," but later learned that "Blue Sky is not, in fact, bottled or produced in New Mexico, and, therefore, appellees misrepresented the origin and nature of their products." *Id.* at 361. "[M]ost importantly," the named plaintiff "lost money as a result of appellees' deception in that he did not receive what he paid for" because he would not have paid the "full value . . . had he known the truth about the geographic origin of the products." *Id.* (quotation marks and internal alterations omitted). The Ninth Circuit concluded that these allegations were enough to plead an injury in fact and reversed the district court's dismissal of the lawsuit. *Id.*

*Chavez*'s logic applies here with equal force. Just like in *Chavez*, where the defendant allegedly misrepresented the origin and nature of its products, *id.* at 361, in the instant case, Plaintiffs allege that Apple misrepresented the nature of Apple iCloud—namely that "users' data [was] stored not by Apple on Apple facilities, but instead turned the users' digital files to other entities, like Amazon and Microsoft[,] for them to store on their facilities." CAC ¶ 28. Just like the plaintiffs in *Chavez*, Plaintiffs in the instant case allege that "[h]ad Apple disclosed that, contrary to its contractual representation, Apple was not the provider of the cloud storage," putative class members "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service." *Id.* ¶¶ 11-12. Therefore, this is the case "where consumers paid for a product, and the product they received was different from the one as advertised." *In re LinkedIn*, 932 F. Supp. 2d at 1094. Thus, the Court rejects Apple's fourth Article III standing argument.

Accordingly, Plaintiffs have adequately alleged an injury in fact as to Plaintiffs' breach of contract claim. As a result, the Court DENIES Apple's motion to dismiss Plaintiffs' breach of contract claim on the basis that Plaintiffs lack Article III standing for monetary damages. In Part III.C.2 of this Order, the Court addresses Apple's motion to dismiss Plaintiffs' FAL and UCL claims on the basis that Plaintiffs lack Article III standing for monetary damages.

## 2. Article III Standing for Injunctive Relief

The Court now addresses whether Plaintiffs possess Article III standing for injunctive relief. To demonstrate constitutional standing for "injunctive relief, which is a prospective

13

remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'"
*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (quoting *Summer v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Id.* (quoting *Lyons*, 461 U.S. at 111).

The Court agrees with Apple that Plaintiffs have failed to allege the "real and immediate threat of repeated injury" necessary to demonstrate Article III standing to seek injunctive relief. *See Davidson*, 889 F.3d at 966 (quoting *Lyons*, 461 U.S. at 102). The Ninth Circuit has clearly stated that mere "allegations of *possible* future injury are not sufficient." *Id*. at 967 (quoting *Clapper* 568 U.S. at 409). Here, Plaintiffs do not allege that they are currently paying for iCloud storage or that they actually intend or plan to purchase iCloud storage again in the future.

Plaintiffs respond that one paragraph in the CAC pleads an allegation "unambiguously stated in the present tense," and Plaintiffs argue that this allegation demonstrates they have standing to pursue injunctive relief. Opp. at 5, 12 (citing CAC ¶ 60). Specifically, the CAC alleges that "Apple continues to make the same false and misleading statements with respect to its iCloud cloud storage service, such that, unless [Apple] is enjoined from doing so, Plaintiffs and class members will continue to be harmed because they will not know who is storing their data on the cloud." CAC ¶ 60.

This allegation is insufficient to meet Plaintiffs' burden to establish standing to pursue injunctive relief. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 795 (N.D. Cal. 2019) ("Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction." (citation omitted)). As the CAC

United States District Court
Northern District of California

alleges elsewhere, "[o]wners of Apple devices are granted up to 5 GB of iCloud storage for free." CAC ¶ 20. Simply pleading that Plaintiffs are storing their data on Apple's iCloud is not enough to plead an injury in fact because Plaintiffs' injury is not merely connected to storing data on the iCloud but to *overpaying* for the paid version of iCloud storage. *Id.* ¶¶ 11-12, 34-37. Without alleging that Plaintiffs are currently *paid iCloud subscribers*—as opposed to merely utilizing the free five GB of iCloud storage, *id.* ¶ 20—Plaintiffs have not met their burden of establishing an injury that is "*certainly impending.*" *Davidson*, 889 F.3d at 966.

As a result, the Court GRANTS Apple's motion to dismiss Plaintiffs' claims for injunctive relief for lack of Article III standing. Because amendment would not be futile, cause undue delay, or unduly prejudice Apple, and because Plaintiffs have not acted in bad faith, the Court GRANTS Plaintiffs leave to amend. *Leadsinger*, 512 F.3d at 532.

### B. Breach of Contract Claim

Apple's second set of arguments pertain to Plaintiffs' breach of contract claim. Mot. at 11-16. Under California law, the elements for a claim for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 985 (N.D. Cal. 2019) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, (2011) (citation omitted)). Apple contends that Plaintiffs have failed to sufficiently allege the first, third, and fourth elements for a breach of contract claim. As discussed below, the Court disagrees.

### 1. The CAC Adequately Alleges the Existence of a Contract

Apple argues that Plaintiffs have failed "to allege sufficient information to identify the actual contract at issue, including the approximate date of the contract." Mot. at 12. To be sure, the CAC does not allege when Named Plaintiffs Williams and Stewart entered into the iCloud Agreement with Apple. CAC ¶¶ 11-12. Rather, the CAC only pleads that Williams and Stewart agreed to the iCloud Agreement sometime during the nearly five-year Class Period from August 20, 2015 to the present. *Id.* Additionally, perhaps because the CAC does not allege when Williams and Stewart entered into the iCloud Agreement with Apple, the CAC does not plead

which specific version of the iCloud Agreement Williams and Stewart signed. *Id.* Instead, the CAC incorporates language from a September 16, 2015 version of the iCloud Agreement and a September 17, 2018 version of the iCloud Agreement. *Id.* ¶ 23; *Id.*, Exs. 1-2. The CAC, however, does not allege that these particular versions of the iCloud Agreement were the ones that Williams or Stewart signed. *Id.* ¶¶ 11-12, 23.

Nonetheless, though the CAC fails to identify the specific version of the iCloud Agreement to which Williams and Stewart agreed and when Williams and Stewart signed the iCloud Agreement, this is not required to plead the existence of a contract under Rule 8. "Identifying the specific provision of the contract allegedly breached by the defendant does not require the plaintiff to attach the contract or recite the contract's terms verbatim. Rather, the plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant." *Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (quotation marks omitted). Here, Plaintiffs have identified the contractual language that was allegedly breached, and the CAC pleads that this language was identical across all versions of the iCloud Agreement during the Class Period. CAC ¶ 23. These allegations are sufficient to plead the existence of a contract.

Insofar as Apple argues that Plaintiffs' failure to plead when Williams and Stewart entered into the iCloud Agreement prejudices Apple because it prevents Apple from raises a statute of limitations defense, Mot. at 12 n.3, this argument fails on the particular facts of the instant case. Specifically, Plaintiffs filed the CAC on August 12, 2019 and allege a Class Period beginning August 20, 2015. Under California law, the statute of limitations for breach of contract is four years. Cal. Civ. Proc. Code § 337(1). Therefore, any breach of contract claim that accrued on or after August 12, 2015 (and by extension, any breach of contract claim during the Class Period) is timely. Accordingly, Apple's concern about a statute of limitations defense for the breach of contract claim is unfounded.

The Court therefore DENIES Apple's motion to dismiss Plaintiffs' breach of contract claim on the basis that Plaintiffs did not allege the existence of a contract.

## 2. The CAC Adequately Alleges Apple's Breach of the iCloud Agreement

16

1    Apple next argues that Plaintiffs' breach of contract claim should be dismissed because the

2    CAC does not sufficiently plead that Apple breached the iCloud Agreement.  Apple contends that

3    the representation that "Apple is the provider of the [iCloud] Service" and that Plaintiffs' "content

4    will be automatically sent to and stored by Apple" can only be interpreted to mean that "Apple

5    made iCloud available to Plaintiffs," and Apple contends that it fulfilled these duties.  Mot. at 14.

6    As a result, according to Apple, there was no breach of the iCloud Agreement.  Plaintiffs respond

7    that the plain reading of this contractual provision compels the conclusion that Apple promised to

8    store Plaintiffs' files and data on Apple's own servers.  Opp. at 15.

9    Under California law, a contract "must be so interpreted as to give effect to the mutual

10   intention of the parties as it existed at the time of contracting, so far as the same is ascertainable

11   and lawful."  Cal. Civ. Code § 1636.  "Where contract language is clear and explicit and does not

12   lead to absurd results, we ascertain intent from the written terms and go no further." *Ticor Title*

13   *Ins. Co. v. Employer's Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995).  In such situations,

14   "[a] court may resolve contractual claims on a motion to dismiss" because "the terms of the

15   contract are unambiguous." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 878-79

16   (N.D. Cal. 2018) (citing *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)).

17   However, what the parties intended by an ambiguous contract is a factual determination,

18   *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991), and thus "[w]here the language

19   'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco v. Bear*

20   *Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul*

21   *Ltd. v. Solide Enteres., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)).  "A contract provision will be

22   considered ambiguous when it is capable of two or more reasonable interpretations." *Id.* (citation

23   omitted); *see also Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) ("A contract is

24   ambiguous if reasonable people could find its terms susceptible to more than one interpretation.");

25   *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) ("However, '[i]f a

26   contract is capable of two different reasonable interpretations, the contract is ambiguous.'"

27   (quoting *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997))).

28

Here, the Court holds that Apple and Plaintiffs have proffered reasonable interpretations of the disputed contractual provision. Again, the relevant contractual language provides as follows:

> ***Apple is the provider of the Service***, which permits you to utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services, only under the terms and conditions set forth in this Agreement. iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud. You can disable iCloud in Settings. When iCloud is enabled, ***your content will be automatically sent to and stored by Apple***, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers. ¶

CAC, Ex. 1 at 1 (emphasis added); CAC ¶ 23.

Apple reads this language to mean only that "Apple has taken charge of subscribers' data so that [subscribers' data] can later be accessed or pushed to subscribers' devices." Mot. at 14. Given this interpretation, Apple contends that it did not breach any duty to store Plaintiffs' data on Apple's own servers. The Court agrees that the contractual language is certainly susceptible to Apple's interpretation.

At the same time, Plaintiffs argue that the "plain dictionary meaning" of "stored" is "to provide storage room for: HOLD," and that therefore, Apple promised that it would be the entity providing storage room for users' data on its own servers. Opp. at 15. The Court agrees that a reasonable person could interpret this language to mean that Apple itself would be the entity storing users' data on Apple's servers. Therefore, under Plaintiffs' interpretation, Apple breached the iCloud Agreement by "turn[ing] the users' digital files to other entities, like Amazon and Microsoft[,] for [Amazon and Microsoft] to store on their facilities." CAC ¶ 28.

Given the fact that Apple and Plaintiffs both provide reasonable interpretations, the disputed contractual language is ambiguous, and "this ambiguity raises a question of fact as to the parties' intent." *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2019 WL 3859035, at *6 (N.D. Cal. Aug. 16, 2019) (citing *Tanadgusix Corp.*, 404 F.3d at 1205). "The parties may well argue at a later stage of litigation that the intent of the parties or properly admitted extrinsic evidence supports their respective interpretations of the contract," but "[s]uch factually based arguments are

appropriate . . . at a later stage of litigation, not on the pleadings." *Id.* (quotation marks omitted). At this stage of the proceedings, "[w]here the language leaves doubt as to the parties' intent, the motion to dismiss must be denied." *Monaco*, 554 F. Supp. 2d at 1040 (quotation marks omitted).

Accordingly, because Plaintiffs sufficiently plead a breach of the iCloud Agreement, the Court DENIES Apple's motion to dismiss on this ground.

### 3. The CAC Adequately Alleges Resulting Damages

In Apple's final argument regarding Plaintiffs' breach of contract claim, Apple contends that the CAC does not adequately allege resulting damages, the fourth element of a breach of contract claim. Apple's motion to dismiss focuses primarily on the argument that Plaintiffs' allegations are nothing more than "a request for restitution," which "simply is not a measure of contract damages." Mot. at 15-16.

The CAC, however, does not make a claim for restitution, but rather seeks compensatory damages for Apple's alleged breach of the iCloud Agreement. In particular, the CAC alleges that "[h]ad Apple disclosed that, contrary to its contractual representation, Apple was not the provider of the cloud storage," putative class members "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service." CAC ¶¶ 11-12. The CAC pleads that other companies, such as Microsoft and Google, offer cheaper cloud storage services than Apple and that Apple's "price premium" harmed putative class members who would have otherwise utilized these cheaper cloud storage alternatives. *Id.* ¶¶ 34-37. At the motion to dismiss stage and pursuant to Rule 8's pleading standards, these allegations are sufficient to allege resulting damages.

Accordingly, the Court DENIES Apple's motion to dismiss Plaintiffs' breach of contract claim on the basis that Plaintiffs did not sufficiently allege resulting damages.

### C. FAL and UCL Claims

Apple's final tranche of arguments concern Plaintiffs' FAL and UCL claims. Plaintiffs allege that Apple's misrepresentations make Apple liable under the FAL and under the unlawful, unfair, and fraudulent prongs of the UCL. As an initial matter, when "'plaintiffs' unfair prong

United States District Court
Northern District of California

claim[] overlap[s] entirely with their claims of fraud,' the plaintiffs' unfair prong claim cannot survive'" if the fraudulent prong claim fails. *Ahern*, 411 F. Supp. 3d at 561 (quoting *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011)). Here, Plaintiffs' UCL unfair prong claim is premised on Apple's allegedly fraudulent misrepresentations. *See* CAC ¶ 65 (alleging that "Apple's misrepresentation as to which entity is providing the cloud storage of Plaintiffs' and class members' data" "independently amounts to an unfair business practice within the meaning of the UCL"). As such, Plaintiffs' unfair prong claim overlaps entirely with Plaintiffs' fraud claim, and Plaintiffs' UCL unfair prong claim fails if Plaintiffs' UCL fraudulent prong claim fails. *Ahern*, 411 F. Supp. 3d at 561.

Apple contends that Plaintiffs' FAL and UCL claims must be dismissed because (1) the CAC fails to satisfy Rule 9(b)'s heightened pleading standards, (2) the CAC does not adequately plead reliance, (3) Plaintiffs' FAL and UCL claims are duplicative of an adequate remedy at law, and (4) the CAC does not allege an actionable misrepresentation. Mot. at 16-21. The Court agrees with Apple that the CAC does not meet Rule 9(b)'s requirements as to Plaintiffs' FAL claim and that the CAC does not adequately plead reliance as to Plaintiffs' FAL and UCL claims. Therefore, the Court does not reach Apple's remaining arguments.

### 1. The CAC Fails to Satisfy Rule 9(b)'s Heightened Pleading Standards for Plaintiffs' FAL Claim

As an initial matter, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiffs' FAL and UCL claims because these claims are based on Apple's allegedly fraudulent course of conduct—namely, Apple's alleged misrepresentations that Apple stored users' content when allegedly, Apple "instead turned the users' digital files to other entities, like Amazon and Microsoft[,] for them to store on their facilities." CAC ¶ 28; *see Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (applying Rule 9(b)'s heightened pleading standard to FAL claims for

misleading, deceptive, and untrue advertising); *see also Vess*, 317 F.3d at 1106 (stating that when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"). When FAL and UCL claims are premised on misleading representations, Rule 9(b) requires a plaintiff to allege "the particular circumstances surrounding [the] representations" at issue. *Kearns*, 567 F.3d at 1126. In other words, Rule 9(b) requires that plaintiffs plead with specificity "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at1106 (quotation marks omitted).

In the instant case, the CAC does not allege when Williams and Stewart entered into the iCloud Agreement with Apple. *Id.* ¶¶ 11-12. Rather, the CAC only pleads that Williams and Stewart agreed to the iCloud Agreement sometime during the nearly five-year Class Period from August 20, 2015 to the present. *Id.* For the reasons stated below, the CAC's failure to plead when Williams and Stewart entered into the iCloud Agreement fails to satisfy Rule 9(b)'s heightened pleading standard for Plaintiffs' FAL claim.

"[T]he 'when' of Rule 9(b) is satisfied when a plaintiff pleads that he has purchased the product at issue during a specified class period . . . as long as there is no suggestion that a label changed or varied during that time." *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013) (collecting cases). Nonetheless, courts in this district have also held that when "some or all of plaintiff's purchases may fall outside the statute of limitations," it is "appropriate at this [motion to dismiss] stage to ensure that plaintiff at minimum has pled that his claims are timely." *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 882-83 (N.D. Cal. 2019). The CAC "must plead when [Named Plaintiffs] [saw the alleged misrepresentation] with greater specificity in order that the Court may fairly evaluate the question of timeliness." *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 956 (N.D. Cal. 2019) (quoting *Beasley*, 374 F. Supp. 3d at 882)

Here, the issue of timeliness does not apply to Plaintiffs' UCL claims. Plaintiffs filed the

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS

CAC on August 12, 2019 for a Class Period beginning on August 20, 2015, and the statute of limitations for UCL claims is four years. *See* Cal. Bus & Prof. Code § 17208 (four-year statute of limitations for UCL). Therefore, UCL claims that accrued after August 12, 2015 (and by extension, throughout the Class Period beginning on August 20, 2015) are timely. Accordingly, the Court DENIES Apple's motion to dismiss Plaintiffs' UCL claims on Rule 9(b) grounds.

Timeliness, however, is problematic for Plaintiffs' FAL claim. The statute of limitations for FAL claims is three years, Cal. Code Civ Proc. § 338(a) (three-year statute of limitations for FAL claims), and therefore, any claims predicated on violations of the FAL that accrued prior to August 12, 2016 are time-barred. The CAC, however, includes no allegations as to when Williams or Stewart viewed the alleged misrepresentations; whether their claims accrued before or after August 12, 2016; or whether the statute of limitations was tolled.

Thus, because Plaintiffs' FAL claim may be time-barred as pleaded, Plaintiffs fail to satisfy Rule 9(b) as to their FAL claim. Plaintiffs must plead the FAL claim "with greater specificity in order that the Court may fairly evaluate the question of timeliness." *Beasley*, 374 F. Supp. 3d at 882. As it stands, the CAC's allegations "are insufficient to allow defendant to 'defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Semegen*, 780 F.2d at 731).

As a result, the Court GRANTS Apple's motion to dismiss Plaintiffs' FAL claim because Plaintiffs' FAL claim fails to satisfy Rule 9(b)'s heightened pleading standard. However, the Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532; *see also Ahern*, 411 F. Supp. 3d at 570 (requiring any amended complaint to state facts supporting allegations of tolling after defendant demonstrated, on a motion to dismiss, that the claim would be untimely unless the statute of limitations was tolled).

### 2. The CAC Does Not Adequately Plead Reliance for Plaintiffs' FAL and UCL Claims

The Court finally addresses Apple's argument that Plaintiffs do not sufficiently plead

reliance as necessary to establish FAL and UCL claims. "Plaintiffs alleging claims under the FAL and UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue." *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326-27 (2011)). This is true of all of Plaintiffs' UCL claims, regardless of whether they are brought under the unfair, unlawful, or fraudulent prong. Indeed, "California courts have held that when the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue." *Backhaut v. Apple*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014) (citing *In re Tobacco II*, 46 Cal. 4th 298, 326 (2009)). "California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent the predicate unlawful conduct is based on misrepresentations," and "the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct." *Id.* at 1047-48 (citations omitted).

To establish actual reliance, the plaintiff must allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). In other words, a plaintiff may show actual reliance by alleging that "had the omitted information been disclosed one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal 4th 1082, 1093 (1993); *see also Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015) (finding that plaintiffs had sufficient evidence of reliance to survive summary judgment when plaintiffs offered "a plausible method of disclosure and . . . that they would have been aware of information disclosed using that method"). Although a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his

23

conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decision-making. *Tobacco II*, 46 Cal. 4th at 326.

Indeed, "[t]o make the reliance showing, this Court has consistently held that plaintiffs in misrepresentation cases must allege that they actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (collecting cases); *see also Woods v. Google, Inc.*, 2017 WL 4310765, at *3 (N.D. Cal. Sept. 28, 2017) ("To prevail on his UCL and FAL claims, [a plaintiff] must establish that he saw and relied on [a defendant's misrepresentations . . . ." (citing *Perkins*, 53 F. Supp. 3d at 1219)). Additionally, to adequately plead reliance for alleged misrepresentations, Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard and allege facts with particularity. *See Haskins v. Symantec Corp.*, 654 Fed. App'x 338, 339 (9th Cir. 2016) ("Because Haskins's complaint did not allege that she read and relied on a specific misrepresentation by Symantec, she failed to plead her fraud claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.").

Plaintiffs acknowledge that the CAC does not allege that Plaintiffs viewed Apple's alleged misrepresentations regarding iCloud storage, but that "[r]ead in context," the CAC nonetheless pleads reliance. Opp. at 4, 22-23. Plaintiffs proffer two arguments as to why the CAC sufficiently alleges reliance even though the CAC does not plead that Plaintiffs saw or read the relevant representations.

First, Plaintiffs make much of the fact that the CAC alleges that Plaintiffs bargained for Apple to be the provider of iCloud storage and to be the entity that stored users' data. CAC ¶ 32 (alleging that Plaintiffs "bargained for, agreed, and paid to have Apple . . . store their data"). This argument fails. Elsewhere, the CAC contradicts Plaintiffs' allegation that they "bargained for" this specific provision. Specifically, the iCloud Agreements that Plaintiffs attached to the CAC are simple form contracts that could not be modified and merely allowed Plaintiffs to click an "AGREE" button. CAC, Ex. 1 at 1; CAC, Ex. 2 at 1; Opp. at 23. Nowhere do the CAC or the iCloud Agreements allege or establish that the iCloud Agreements could be modified. As a result, the Court holds that Plaintiffs' allegation that they "bargained for" the provision in the iCloud

24

agreement containing the alleged misrepresentations does not adequately plead reliance with the particularity required by Rule 9(b).

Second, Plaintiffs assert that they adequately plead reliance because they "affirmatively clicked the 'AGREE' [button] signifying their review and assent to the contract terms," including Apple's alleged misrepresentations regarding iCloud storage. This Court, however, has previously rejected this precise argument. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1025 (N.D. Cal. 2013) ("[T]he mere fact that Plaintiffs had to scroll through a screen and click on a box stating that they agreed with the Apple Privacy Policy in July 2010 does not establish, standing alone, that Plaintiffs actually read the alleged misrepresentations contained in that Privacy Policy, let alone that these misrepresentations subsequently formed the basis for Plaintiffs' 'understanding' regarding Apple's privacy practices."); *Perkins*, 53 F. Supp. 3d at 1220 ("[T]he fact that some of the alleged misrepresentations appeared on screens that all users had to click through to register do not by themselves establish that any of the Plaintiffs actually read or relied on the misrepresentations in the absence of allegations that Plaintiffs read these statements."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) ("Here, although all Plaintiffs had to click through Defendants' Terms of Service in order to create their accounts, . . . Plaintiffs do not allege that they 'actually read' Defendants' Terms of Service, let alone that Plaintiffs 'actually read' the separate Privacy Policy containing the alleged misrepresentation at issue . . . . Thus, . . . Plaintiffs have not adequately alleged a UCL fraud claim based on misrepresentations in Defendants' Privacy Policy because Plaintiffs have not adequately alleged that they 'actually relied' on Defendants' misrepresentation contained within Defendants' Privacy Policy.").

As a result, the CAC does not properly allege, in compliance with Rule 9(b), that Plaintiffs read or relied upon Apple's purported misrepresentations regarding iCloud storage. Therefore, the Court GRANTS Apple's motion to dismiss Plaintiffs' FAL and UCL claims for failure to adequately plead reliance. Furthermore, because "courts have held that actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their

25

injury is the result of deceptive misrepresentations or omissions" under the FAL and UCL, the Court also GRANTS Apple's motion to dismiss Plaintiff's FAL and UCL claims for lack of Article III standing. *See Phillips*, 2016 WL 1579693, at *6. The Court, however, GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Apple's motion to dismiss. Specifically, the Court GRANTS with leave to amend Apple's motion to dismiss Plaintiffs' claims for injunctive relief and GRANTS with leave to amend Apple's motion to dismiss Plaintiffs' FAL and UCL claims. The Court DENIES Apple's motion to dismiss Plaintiffs' breach of contract claim.

Plaintiffs shall file any amended complaint within 30 days of this Order. Failure to do so or failure to cure deficiencies identified herein or in Apple's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: March 27, 2020

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS