UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREA M WILLIAMS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No. 19-CV-04700-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 39 |

Plaintiffs bring this putative class action against Defendant Apple, Inc. ("Apple"). Plaintiffs' First Amended Complaint ("FAC") alleges breach of contract, violations of California's False Advertising Law ("FAL"), and violations of California's Unfair Competition Law ("UCL"). Before the Court is Apple's motion to dismiss Plaintiffs' prayer for injunctive relief and FAL and UCL claims ("motion to dismiss"). ECF No. 39. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Apple's motion to dismiss. Specifically, the Court GRANTS Apple's motion to dismiss Plaintiffs' FAL and UCL claims with prejudice but DENIES Apple's motion to dismiss Plaintiffs' prayer for injunctive relief.

## I. BACKGROUND

### A. Factual Background

Apple is a corporation incorporated under the laws of California and has its principal place of business in Cupertino, California. FAC ¶ 8, ECF No. 38. Apple provides cloud storage services to Apple device users through iCloud, Apple's cloud service. *See id*. ¶¶ 2, 13–17. iCloud allows subscribers to "utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services." FAC ¶ 53.

According to Plaintiffs, "[o]wners of Apple devices are granted up to 5 GB of iCloud storage for free. If an Apple device user wishes to store more than 5 GB of data on the cloud through iCloud, then that user must subscribe to iCloud's paid service." FAC ¶ 26. Plaintiffs allege that "[i]n order to subscribe to iCloud, a user must agree to the iCloud Terms of Service Agreement." *Id*. ¶ 28. The relevant portion of the iCloud Terms of Service Agreement ("iCloud Agreement") provides the following:

> ***Apple is the provider of the Service***, which permits you to utilize certain Internet services, including storing your personal content (such as contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email) and making it accessible on your compatible devices and computers, and certain location based services, only under the terms and conditions set forth in this Agreement. iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud. You can disable iCloud in Settings. When iCloud is enabled, ***your content will be automatically sent to <u>and stored by Apple</u>***, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers. ¶

*Id*. ¶ 28 (emphasis in FAC). This language appears in a September 16, 2015 version of the iCloud Agreement and a September 19, 2019 version of the iCloud Agreement. *Id*. ¶ 29; FAC, Exs. 1–2.

Named Plaintiffs Andrea M. Williams and James Stewart bring the suit on behalf of a putative class of United States iCloud subscribers (excluding Apple, its employees, and its directors) who during the Class Period from August 20, 2015 to the present paid for an Apple

iCloud subscription (collectively, "Plaintiffs"). FAC ¶ 44. Williams is a resident and citizen of Florida who, in January 2016, "subscribed to Apple's iCloud service, paid money to Apple for her iCloud subscription, and used iCloud to store her data on the cloud." *Id*. ¶ 11. Stewart is a resident and citizen of California who, in August 2015, "subscribed to Apple's iCloud service, paid money to Apple for his iCloud subscription, and used iCloud to store his data on the cloud." *Id*. ¶ 15. Both Williams and Stewart continue to subscribe to iCloud. *Id*. ¶¶ 11, 15. Moreover, Williams and Stewart "expect to continue [subscribing] for the immediate foreseeable future, given that they have concerns as to the fate of their already stored data if they were to terminate their paying subscriptions." *Id*. ¶ 50.

The FAC alleges that Williams and Stewart were not informed by Apple that their data was being stored on "non-Apple remote servers and facilities" despite alleged assurances to the contrary. *Id*. ¶¶ 12–13. Specifically, Plaintiffs allege that they "bargained for, agreed, and paid to have Apple—an entity they trusted—store their data."[1] *Id*. ¶ 38. According to the FAC, however, Apple's representations were false. "Apple lacked the facilities needed to readily provide the cloud storage space being sold to class members through iCloud." *Id*. ¶ 33. "Unable to provide the cloud storage space . . . , Apple breached its iCloud agreement with its subscribers and had these users' data stored not by Apple on Apple facilities, but instead turned the users' digital files to other entities, like Amazon and Microsoft[,] for them to store on their facilities." *Id*. ¶ 34.

The FAC alleges that "[h]ad Apple disclosed that, contrary to its contractual representation, Apple was not the provider of the cloud storage," putative class members "would not have subscribed to Apple's iCloud service or would have not agreed to pay as much as [they] did for the service." *Id*. ¶¶ 12–13. The FAC claims that other companies, such as Microsoft and Google, offer cheaper cloud storage services than Apple and that Apple's "price premium" harmed putative class

---

[1] Elsewhere, however, the FAC contradicts Plaintiffs' allegation that they "bargained for" this specific provision. Specifically, the iCloud Agreements that Plaintiffs attached to the FAC are form contracts that could not be modified and merely allowed Plaintiffs to click an "AGREE" button. FAC, Ex. 1 at 1; FAC, Ex. 2 at 1. Nowhere do the FAC or the iCloud Agreements allege or establish that the iCloud Agreements could be modified.

3
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

members who would have otherwise utilized these cheaper cloud storage alternatives. *Id.* ¶¶ 40–43.

B. **Procedural History**

On August 12, 2019, Plaintiffs filed the instant putative class action. ECF No. 1 ("original complaint"). Plaintiffs' original complaint, like the operative FAC, alleged three causes of action against Apple: (1) breach of contract, (2) violations of the FAL; and (3) violations of the UCL. *Compare* Original Compl. ¶¶ 45–66 (three causes of action), *with* FAC ¶¶ 51–75 (same). Plaintiffs allege that Apple agreed to be the "provider of the [iCloud] Service" and to store putative class members' content on Apple's servers. FAC ¶¶ 48–50. According to Plaintiffs, however, Apple breached this promise because "storage was provided by non-Apple third parties with whom neither [Named] Plaintiffs nor class members had bargained." *Id.* ¶¶ 55–57. Plaintiffs also claim that Apple violated the FAL and UCL by making the following "false and misleading" claim: "Apple was the provider of the iCloud cloud storage service and [] class members' data would be stored on the cloud by Apple." *Id.* ¶ 62.

Plaintiffs seek relief at law and equity. At law, Plaintiffs seek monetary damages for breach of contract. *See* FAC at 21 (Prayer for Relief). At equity, Plaintiffs seek restitution under the FAL and UCL and an injunction "to enjoin Apple from continuing to falsely represent that it is the provider of the iCloud cloud storage service and requiring Apple to disclose to class members all entities who store class members' data on the cloud as part of their iCloud subscription." *Id.*; *see* Section III-B, *infra* (discussing equitable nature of FAL and UCL relief).

On October 4, 2019, Apple moved to dismiss Plaintiffs' original complaint. ECF No. 15. Plaintiffs filed an opposition on October 18, 2020, and Apple filed a reply on October 25, 2019. ECF Nos. 19, 22. Apple made three arguments especially relevant here. First, Apple argued that Plaintiffs lacked Article III standing for injunctive relief. ECF No. 15 at 18. Second, Apple argued that Plaintiffs' FAL and UCL claims failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Id.* at 23–24. Third, Apple argued that "Plaintiffs' claims under the FAL and UCL (all prongs) also fail because they are equitable claims and Plaintiffs have an

adequate remedy at law." *Id.* at 25 (capitalization altered).

On March 27, 2020, the Court granted in part and denied in part Apple's motion to dismiss the original complaint. ECF No. 34. Specifically, the Court granted with leave to amend Apple's motion to dismiss (1) Plaintiffs' prayer for injunctive relief; and (2) Plaintiffs' FAL and UCL claims. *Id.* at 26. The Court denied Apple's motion to dismiss Plaintiffs' breach of contract claim. *Id.*

As to injunctive relief, the Court agreed with Apple that Plaintiffs lacked Article III standing to seek an injunction. *See* ECF No. 34 at 13–15. The Court reasoned that Plaintiffs "failed to allege 'the real and immediate threat of repeated injury.'" *Id.* at 14 (quoting *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018)). Specifically, Plaintiffs "d[id] not allege that they are currently paying for iCloud storage or that they actually intend or plan to purchase iCloud storage again in the future." *Id.* Thus, the Court held that "[w]ithout alleging that Plaintiffs are currently *paid iCloud subscribers*—as opposed to merely utilizing the free five GB of iCloud storage—Plaintiffs have not met their burden of establishing an injury that is '*certainly impending*.'" *Id.* at 15 (emphasis in original) (citation omitted) (quoting *Davidson*, 889 F.3d at 966).

As for the FAL and UCL claims, the Court agreed with Apple that the claims failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See id.* at 20–26 (analyzing Rule 9(b)). Given that Rule 9(b) was dispositive, the Court did not reach Apple's other argument for dismissing the FAL and UCL claims: that the FAL and UCL claims seek equitable relief that is duplicative of an adequate remedy at law. *Id.* at 20. Even so, the Court warned that "failure to cure deficiencies identified herein [*i.e.*, the order granting in part Apple's motion to dismiss] *or in Apple's motion to dismiss* will result in dismissal of the deficient claims with prejudice." *Id.* at 26 (emphasis added).

On April 27, 2020, Plaintiffs filed the FAC. ECF No. 38. On May 11, 2020, Apple filed the instant motion to dismiss. ECF No. 39 ("Mot."). The instant motion again argues that (1) Plaintiffs lack Article III standing to seek injunctive relief; and (2) FAL and UCL claims seek equitable

5
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

relief that is duplicative of an adequate remedy at law. *See id.* at 11–16. The instant motion does not challenge Plaintiffs' breach of contract claim. On May 26, 2020, Plaintiffs filed their opposition. ECF No. 40 ("Opp'n"). On June 2, 2020, Apple filed its reply. ECF No. 42 ("Reply").

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Although lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014))); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

"In a facial attack," on the other hand, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

6
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B. Motion to Dismiss Under Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Additionally, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**C. Leave to Amend**

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

1  pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal

2  quotation marks omitted).

3    Accordingly, leave to amend generally shall be denied only if allowing amendment would

4  unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has

5  acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the

6  same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to

7  cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*,

8  629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is

9  particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v.*

10 *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

11 **III.  DISCUSSION**

12   The FAC alleges three causes of action against Apple: (1) breach of contract, (2) violations

13 of California's False Advertising Law ("FAL"); and (3) violations of California's Unfair

14 Competition Law ("UCL"). *Id*. ¶¶ 45-66. In terms of relief, the FAC prays for relief at law and

15 equity. At law, the FAC seeks monetary damages for breach of contract. *See* FAC at 21 (Prayer for

16 Relief). At equity, the FAC seeks restitution under the FAL and UCL and an injunction. *Id.*

17   Apple moves to dismiss the FAL and UCL claims and the prayer for injunctive relief, but

18 not the breach of contract claim. Apple raises three arguments: (1) Plaintiffs lack Article III

19 standing for injunctive relief; (2) the FAL and UCL claims seek equitable relief even though the

20 breach of contract claim provides an adequate remedy at law; and (3) the FAL and UCL claims

21 also fail because Plaintiffs have inadequately plead reliance on Apple's alleged misrepresentations.

22   The Court begins its analysis with Apple's argument that Plaintiffs lack Article III standing

23 for injunctive relief. *See Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1148 (9th Cir.

24 2006) ("As standing implicates Article III limitations on our power to decide a case, we must

25 address it before proceeding to the merits."). The Court then addresses Apple's argument that the

26 FAL and UCL claims must be dismissed because Plaintiffs have an adequate remedy at law.

27 Because that argument warrants dismissal of Plaintiff's FAL and UCL claims, the Court need not

28

8
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

reach Apple's last argument.

**A. Plaintiffs have Article III standing for injunctive relief under *Davidson*.**

Apple first argues that Plaintiffs lack Article III standing because they cannot show a likelihood of future injury. *See* Mot. at 6–8. "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "[T]he irreducible constitutional minimum of [Article III] standing contains three elements:" (1) an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing" Article III standing. *Id.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quotation marks and internal alterations omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted).

Apple's argument is best construed as a facial attack whereby "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

Specifically, Apple argues that Plaintiffs lack standing to seek injunctive relief because they "cannot establish with sufficient likelihood that they will again be harmed in a similar way." Mot. at 7. The Court previously agreed with a similar argument and so dismissed Plaintiffs' prayer for injunctive relief with leave to amend. *See* ECF No. 34 at 13–15. The Court held that "[w]ithout alleging that Plaintiffs are currently *paid iCloud subscribers*—as opposed to merely utilizing the

9

free five GB of iCloud storage—Plaintiffs have not met their burden of establishing an injury that is '*certainly impending.*'" *Id.* at 15 (emphasis in original) (citation omitted) (quoting *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018)). However, unlike the original complaint, the FAC unambiguously alleges that "[b]oth Plaintiffs continue to be paying subscribers to iCloud and expect to continue being so for the immediate foreseeable future." FAC ¶ 50. Plaintiffs thus have cured the standing defect identified in the Court's prior order. Accordingly, Apple's standing argument is now on shakier ground.

Apple's argument proceeds in two steps. To start, Apple asserts that the foundational Ninth Circuit precedent *Davidson v. Kimberly-Clark Corporation* establishes only two categories of future harm that "provide previously-deceived plaintiffs with standing to seek injunctive relief." Mot. at 8 (quoting at length 889 F.3d at 969–70). Apple then claims that Plaintiffs' allegations fail to "fit[] into either category of future harm" because "Plaintiffs allege they will continue to be paid iCloud subscribers whether or not the allegedly misleading statements are corrected or the product is changed." *Id.*

Apple's argument rests on a false premise. *Davidson* did not limit Article III standing to two categories of future harm. Rather, the language from *Davidson* that Apple quotes "simply offer[s] two illustrations of how a plaintiff who has learned the hard way that a company's statements were deceptive can have standing under Article III to enjoin the deceptive practice." *Milan v. Clif Bar & Co.*, No. 18-CV-02354-JD, 2020 WL 5760450, at *2 (N.D. Cal. Sept. 28, 2020). The language Apple quotes from *Davidson* is the following:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. [*Illustration #1*] In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. [*Illustration #2*] In other cases, the threat of future harm may be

the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Davidson*, 889 F.3d at 969–70 (footnote and citations omitted); *accord* Mot. at 7 (quoting same); Reply at 2 (quoting same). "This is not the teaching of a two-test method, as [Apple] would have it." *Milan*, 2020 WL 5760450, at *2. *Davidson* "did not set out any definitive tests"—only illustrative examples of standing. *Id*. Thus, Apple's reliance on the quoted language above is misplaced.

Other language in *Davidson* controls here. Specifically, *Davidson* analyzed several district court decisions with approval to "resolve [a] district court split in favor of plaintiffs seeking injunctive relief." *Davidson*, 889 F.3d at 969. Two of those decisions foreclose Apple's standing argument.

The first decision is *Weidenhamer v. Expedia, Inc.*, No. 14-CV-01239-RAJ, 2015 WL 1292978 (W.D. Wash. Mar. 23, 2015). *Davidson* approvingly explained *Weidenhamer*'s holding as follows: "plaintiff 'is entitled to rely on the statements made in [defendant's] ad, even if he previously learned that some of those statements were false or deceptive,'" so long as "the plaintiff had adequately alleged that he likely would continue to be [defendant's] customer." *Davidson*, 889 F.3d at 968–69 (quoting *Weidenhamer*, 2015 WL 1292978, at *5). As *Weidenhamer* explained, it was immaterial that plaintiff had "no plausible allegation that he will be fooled if he encounters" the same allegedly deceptive statements in the future. *Weidenhamer*, 2015 WL 1292978, at *5.

So too here. For purposes of Article III standing, Plaintiffs are entitled to rely on Apple's "continue[d] [] represent[ation] that Apple is the provider of the iCloud cloud storage service," even though Plaintiffs allege that "the cloud storage of iCloud subscribers' data actually is provided by non-Apple third parties." Opp'n at 2 (quoting FAC ¶ 50). Similarly, like the *Weidenhamer* plaintiff, Plaintiffs here allege that they likely will continue to be defendant's customers. *See* FAC ¶ 50 ("Both Plaintiffs continue to be paying subscribers to iCloud and expect to continue being so for the immediate foreseeable future, given that they have concerns as to the fate of their already stored data if they were to terminate their paying subscriptions."); *accord id.*

¶ 67 (alleging same). Thus, Plaintiffs have standing under *Weidenhamer* and *Davidson*'s interpretation of it.

The other decision that forecloses Apple's standing argument is *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013). *Davidson* summarized *Richardson*'s holding as similar to *Weidenhamer*'s: "'named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction,' because they will be unable 'to rely on the misleading label with any confidence' and 'will have no way of knowing' whether defendants 'boosted the label's veracity.'" *Davidson*, 889 F.3d at 969 (quoting *Richardson*, 991 F. Supp. 2d at 194–95). *Richardson* explained that the likelihood of future harm arises where "a consumer might rationally continue to purchase the product for any number of reasons—cost, effectiveness, convenience, brand loyalty, and so on." *Richardson*, 991 F. Supp. 2d at 194.

Here too, Plaintiffs allege they will continue to purchase defendant's product. *See* FAC ¶ 50 ("Both Plaintiffs continue to be paying subscribers to iCloud and expect to continue being so for the immediate foreseeable future . . . ."). Plaintiffs' rational reason for doing so is that "they have concerns as to the fate of their already stored data if they were to terminate their paying subscriptions." *Id.* Plaintiffs thus "pray for an injunction to, *inter alia*, prevent Apple from continuing to disseminate these false and misleading statements [about Apple providing iCloud] and to unambiguously and accurately detail where Plaintiffs' and class members' iCloud content and data is stored and which entity is providing any part of the iCloud storage service." FAC ¶ 67.

Apple fails to cite—let alone distinguish—*Davidson*'s approval of *Weidenhamer* and *Richardson*. Instead, Apple relies on two pre-*Davidson* cases to argue that Plaintiffs' data storage concerns cannot support Plaintiffs' standing for injunctive relief. *See* Opp'n at 8 (discussing cases). Apple argues that the cases show that Plaintiffs' alleged injury is "not directly related to the injunctive relief [Plaintiffs] seek." *Id.* (quoting *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 968 (N.D. Cal. 2017)). Both cases are inapposite.

Apple first relies on *Krommenhock v. Post Foods*. There, unlike here, plaintiffs did not allege that they would continue to purchase defendant's products (Post's cereals). Rather, the

*Krommenhock* plaintiffs alleged "they would be willing to purchase Post's cereals in the future" *on two conditions*: (1) if the cereals were "accurately described"; and (2) "the cereals were either (i) reformulated to reduce added sugar, or (ii) priced lower so they could be purchased as a treat." *Krommenhock*, 255 F. Supp. 3d at 968. Given these conditions on future purchases, the *Krommenhock* plaintiffs were relatively unlikely to buy allegedly mislabeled products again—and thus relatively unlikely to suffer future injuries that would support injunctive relief.

Moreover, the *Krommenhock* plaintiffs sought injunctive relief that met only the first condition for plaintiffs to resume purchases. That relief was "to force defendant to stop using the health and wellness claims on products with excessive added sugar." *Id.* Thus, the desired relief (relabeling) would have completely failed to redress the *Krommenhock* plaintiffs' concern with the cereal's formulation or price.

Here, by contrast, Plaintiffs seek injunctive relief that redresses—at least in part—Plaintiffs' "concerns as to the fate of their already stored data if they were to terminate their paying subscriptions." FAC ¶ 50. An injunction would "unambiguously and accurately detail where Plaintiffs' and class members' iCloud content and data is stored and which entity is providing any part of the iCloud storage service." FAC ¶ 67. Under *Davidson*, this injunction is sufficiently related to Plaintiffs' alleged harms. The injunction would allow Plaintiffs to understand whether they can rely on Apple's iCloud contract "with any confidence." *Davidson*, 889 F.3d at 969 (quoting *Richardson*, 991 F. Supp. 2d at 194–95). In other words, Plaintiffs would *no longer* "'have no way of knowing' whether defendant[] 'boosted the [iCloud contract's] veracity.'" *Id.* (quoting same).

Apple next relies on this Court's decision in *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1108 (N.D. Cal. 2017). In *Hadley*, this Court held that plaintiff lacked standing for injunctive relief because "[p]laintiff solely alleges that [p]laintiff would *consider* making such a purchase if the price were to decrease to a level that is 'appropriate.'" *Id.* (emphasis in original). This Court reasoned that "the Court has no control over whether the price of a product will be changed to an 'appropriate' level. Indeed, [p]laintiff fails to even allege what price for

13
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

[d]efendant's products would be 'appropriate.'" *Id.*

Here, Plaintiffs do not merely "consider" making future purchases. Rather, "Plaintiffs continue to be paying subscribers to iCloud and expect to continue being so for the immediate foreseeable future." FAC ¶ 50. Accordingly, *Davidson* again controls. Plaintiffs who have "adequately alleged that [they] likely would continue to be [Apple's] customer[s]" are "entitled to rely on the statements made in the [iCloud contract], even if [they] previously learned that some of those statements were false or deceptive." *Davidson*, 889 F.3d at 968–69 (quoting *Weidenhamer*, 2015 WL 1292978, at *5).

In sum, Plaintiffs have Article III standing to seek injunctive relief. Accordingly, the Court DENIES Apple's motion to dismiss Plaintiffs' prayer for injunctive relief.

### B. The Court must dismiss Plaintiffs' FAL and UCL claims because Plaintiffs have an adequate remedy at law.

The Court turns next to Apple's argument that the FAL and UCL claims fail because the claims seek equitable relief while Plaintiffs have an adequate remedy at law. The Court agrees.

As the California Supreme Court recently confirmed, "civil causes of action authorized by the UCL and FAL must properly be considered equitable, rather than legal, in nature." *Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 462 P.3d 461, 488 (Cal. 2020). "[A] federal court's equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020). One limit on a federal court's equitable powers is that "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). This holds true even "in a diversity action where state law allow[s] equitable relief." *Sonner*, 971 F.3d at 842 (citing *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1129 (9th Cir. 2020)). Accordingly, a federal court cannot grant relief under the UCL or FAL if Plaintiffs have an adequate remedy at law.

Monetary damages are a remedy at law. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also, e.g.*, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1396 (9th Cir. 1984)

1  (reversing injunction because breach of contract damages provided an adequate remedy at law).
2  Moreover, Plaintiffs concede that the FAL and UCL claims are "'duplicative' of Plaintiffs' breach
3  of contract claim for money damages." Opp'n at 9. Plaintiffs also concede that the "UCL and FAL
4  claims for equitable relief [are] based on the same factual predicate." *Id.* at 11. Plaintiffs' only
5  argument, then, is that the Ninth Circuit has supposedly held that "the mere fact that an equitable
6  claim arises from the same facts as a claim at law, thereby rendering it 'duplicative,' does not
7  provide a basis for dismissal." *Id.* For support, Plaintiffs cite the Ninth Circuit's decisions in
8  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015), and *Davidson*. *See* Opp'n at 9–
9  11.

   Plaintiffs are incorrect. Neither *Astiana* nor *Davidson* repudiated the "basic doctrine of
11  equity jurisprudence that courts of equity should not act when the moving party has an adequate
12  remedy at law." *Schroeder*, 569 F.3d at 963 (quoting *Mort v. United States*, 86 F.3d 890, 892 (9th
13  Cir. 1996)). *Astiana* held that "unjust enrichment claims may be pleaded in the alternative in
14  quasi-contract." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th Cir. 2016)
15  (citing *Astiana*, 783 F.3d at 762–63). That holding is irrelevant to whether Plaintiffs can seek relief
16  under the FAL and UCL, *see* FAC ¶¶ 69 & 75, despite having an adequate remedy at law.

17  *Davidson*, for its part, had nothing to do with the viability of equitable claims despite the
18  availability of adequate remedies at law. *See* Reply at 7 n.8 (correctly noting same). *Davidson* was
19  simply about Article III standing. *Davidson* "h[e]ld that a previously deceived consumer may have
20  standing to seek an injunction against false advertising or labeling, even though the consumer now
21  knows or suspects that the advertising was false at the time of the original purchase, because the
22  consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future
23  harm." *Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493
24  (2009)). Thus, with *Astiana* and *Davidson* offering no support, Plaintiffs' only argument against
25  dismissal of the FAL and UCL claims fails.

26  Indeed, a recent Ninth Circuit ruling confirms that this Court must dismiss Plaintiffs' FAL
27  and UCL claims. In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit "h[e]ld that the

15
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and [California's Consumers Legal Remedies Act] in a diversity action." 971 F.3d at 844. The Ninth Circuit reasoned that "[i]t has been a fundamental principle for well over a century that state law cannot expand or limit a federal court's equitable authority." *Id.* at 841. The Ninth Circuit thus affirmed the dismissal of plaintiff's UCL claim because plaintiff "fail[ed] to demonstrate that she lacks an adequate legal remedy." *Id.* at 845.

Similarly here, Plaintiffs seek relief under the FAL and UCL, which "must properly be considered equitable, rather than legal, in nature." *Nationwide Biweekly Admin., Inc.*, 462 P.3d at 488. Plaintiffs also fail to demonstrate that they lack an adequate legal remedy. To the contrary, Plaintiffs concede that their FAL and UCL claims are "duplicative" of their "breach of contract claim for money damages." Opp'n at 9; *accord* Reply at 6 (noting concession).

Underscoring this concession is the FAC itself. The FAC fails to allege that legal remedies are inadequate or that Plaintiffs suffered irreparable injury. This failure also requires dismissal of Plaintiffs' FAL and UCL claims. "A complaint seeking equitable relief fail[s]" where "it d[oes] not plead 'the basic requisites of the issuance of equitable relief'" including "the inadequacy of remedies at law." *Sonner*, 971 F.3d at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Accordingly, the Court must dismiss Plaintiffs' FAL and UCL claims, which necessarily seek equitable relief, because Plaintiffs' breach of contract claim provides an adequate remedy at law.

Moreover, the Court dismisses Plaintiffs' FAL and UCL claims with prejudice. A district court may exercise "its 'particularly broad' discretion [to] deny[] leave to amend" where amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id.* at 845 (quoting *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)) (affirming dismissal with prejudice of equitable claims because plaintiff had adequate remedy at law). Here, amendment would be futile. Plaintiffs have been warned that they have adequate remedies at law that preclude FAL and UCL claims. Specifically, Apple's prior motion to dismiss also argued at length that "Plaintiffs' claims under the

16

FAL and UCL (all prongs) [] fail because they are equitable claims and plaintiffs have an adequate remedy at law." ECF No. 15 at 25–26 (capitalization altered); *accord id.* at 10 (highlighting argument in introduction to motion to dismiss). Thus, in dismissing Plaintiff's FAL and UCL claims the first time, the Court warned that "failure to cure deficiencies identified herein *or in Apple's motion to dismiss* will result in dismissal of the deficient claims with prejudice." ECF No. 34 at 26 (emphasis added).

Even so, Plaintiffs have failed to cure the deficiency identified in Apple's prior motion to dismiss. Plaintiffs have instead insisted "that the mere fact that an equitable claim arises from the same facts as a claim at law, thereby rendering it 'duplicative,' does not provide a basis for dismissal." Opp'n at 9; *see also Mariscal v. Graco, Inc.*, 52 F. Supp. 3d at 984 ("Plaintiff failed to address [] arguments in his opposition brief, and therefore conceded these claims."). Plaintiffs are incorrect. Accordingly, like other courts evaluating FAL and UCL claims where plaintiffs have an adequate remedy at law, this Court dismisses Plaintiffs' FAL and UCL claims with prejudice. *See, e.g.*, *Rhynes v. Stryker Corp.*, No. 10-CV-05619, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (dismissing UCL claim with prejudice on first motion to dismiss because plaintiffs have an adequate remedy at law); *Gomez v. Jelly Belly Candy Co.*, No. 17-CV-00575, 2017 WL 8941167, at *1 (C.D. Cal. Aug. 18, 2017) (same for FAL and UCL claims on second motion to dismiss).[2]

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Apple's motion to dismiss. Specifically, the Court GRANTS Apple's motion to dismiss Plaintiffs' FAL and UCL claims with prejudice. The Court DENIES Apple's motion to dismiss Plaintiffs' prayer for injunctive relief.

**IT IS SO ORDERED.**

---

[2] Plaintiffs' Opposition unfairly attacks Apple and Apple's counsel. Among other things, the Opposition suggests that Plaintiffs may move for sanctions, *see* Opp'n at 11–12, and baselessly asserts that "Apple has failed to cite binding or current caselaw, misdirected the Court and Plaintiffs to outdated authorities, and filed a motion that has no basis." Opp'n at 1. The instant Order explains why the Court disagrees.

Dated: November 17, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge