UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREA M WILLIAMS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 19-CV-04700-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL**<br><br>Re: Dkt. Nos. 76, 78, 81, 91, 94, 95, 98, 100, 103 |

Before the Court are the parties' motions to file under seal documents related to the parties' class certification briefing. ECF Nos. 76, 78, 81, 91, 95, 98, 100, 103. For the following reasons, the Court GRANTS IN PART and DENIES IN PART the parties' administrative motions to file class certification documents under seal.

## I. LEGAL STANDARD

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when considering a sealing request, a "strong presumption in

1

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

favor of access is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In the Ninth Circuit, documents that are more than "tangentially related . . . to the underlying cause of action" are not sealable unless the Court agrees that "compelling reasons" exist to overcome the presumption of access. *See id.* at 1179.

Here, the documents that the parties seek to seal are related to a motion for class certification. "A class certification motion 'generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action,' which require a district court to engage in a 'rigorous analysis' that 'entail[s] some overlap with the merits of the plaintiff's underlying claims.'" *McCurley v. Royal Seas Cruises, Inc.*, 2018 WL 3629945, at *2 (S.D. Cal. July 31, 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 352 (2011)). Indeed, most district courts to consider the question have found that motions for class certification are "more than tangentially related to the underlying cause of action" and therefore apply the "compelling reasons" standard. *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *2 (N.D. Cal. Dec. 20, 2016) (collecting cases). Accordingly, the compelling reasons standard applies to the parties' sealing motions. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2018 WL 7814785, at *2 (N.D. Cal. Sept. 5, 2018) (applying compelling reasons standard).

Compelling reasons justifying the sealing of court records generally exist "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (quoting *Nixon*, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

In addition, parties moving to seal documents must comply with the procedures established by Civil Local Rule 79-5. Pursuant to that rule, a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b). "The request must be narrowly

2

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." *Id.* Civil Local Rule 79-5(d), in turn, requires the submitting party to attach a "declaration establishing that the document sought to be filed under seal, or portions thereof, are sealable," a "proposed order that is narrowly tailored to seal only the sealable material," and a proposed order that "lists in table format each document or portion thereof that is sought to be sealed," as well as an "unredacted version of the document" that "indicate[s], by highlighting or other clear method, the portions of the document that have been omitted from the redacted version." *Id.*

## II. DISCUSSION

The parties move to file under seal documents related to the parties' class certification briefing. Specifically, the parties move to seal documents designated confidential by Apple, which relate to (1) Plaintiffs' motion for class certification; (2) Apple's opposition; (3) Plaintiffs' reply; (4) Apple's sur-reply; and (5) Plaintiffs' response to Apple's sur-reply. Where the brief and supporting exhibits at issue are Plaintiffs', both parties filed a sealing motion. That is, Plaintiffs first filed a broad sealing motion accompanying their brief, and then Apple (as designating party) filed its own motion narrowing the request for sealing. By contrast, where the brief and supporting exhibits at issue is Apple's, only Apple filed a motion to seal. Below, the Court analyzes the five categories of sealing requests in turn.

### A. Sealing Plaintiffs' Motion for Class Certification and Supporting Exhibits, ECF Nos. 76 and 78

For their motion for class certification, Plaintiffs seek to seal five documents that Apple has designated confidential. ECF No. 76. Apple narrows the sealing request by (1) proposing more tailored redactions for two documents Plaintiffs identified; and (2) acquiescing to the public filing of the fifth document, Exhibit 19 to Roy A. Katriel's Declaration in Support of Plaintiffs' Motion for Class Certification ("Katriel Decl.," ECF No. 77-1). ECF No. 78 at 2. Thus, the Court considers only Apple's four sealing requests.

Apple seeks to seal (1) portions of Plaintiffs' class certification briefing; (2) Exhibit 7 to the Katriel Declaration; (3) Exhibit 12 to the Katriel Declaration; and (4) portions of the expert

3

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS
CERTIFICATION DOCUMENTS UNDER SEAL

report of Russell W. Mangum III, Ph.D. (Exhibit 20 to the Katriel Declaration). Each request is supported by Apple's declarant Ahmed Bashir, who is Apple's Director of Engineering and "oversee[s] iCloud operations." Bashir Decl. for Class Cert. Mot. ¶ 1, ECF No. 78-1 ("Bashir Decl. for Mot."). Bashir avers, with varying levels of specificity, how each sealing request would prevent the disclosure of confidential business information. First, the portions of briefing at issue relate to "the number of Apple's iCloud paying users, associated revenue, and data storage practices." *Id.* ¶ 6. Second, Exhibit 7 contains "confidential commercial information related to the number of U.S. iCloud paying subscribers." *Id.* ¶ 9. Third, Exhibit 12 contains internal communications regarding Apple's "privacy and security approach for health records." *Id.* ¶ 10. Lastly, portions of Mangum's report (Exhibit 20) contain "the U.S. iCloud userbase, including the number of paying subscribers, [] associated revenue . . . iCloud data storage practices" and iCloud pricing. *Id.* ¶ 13.

As the Ninth Circuit has explained, "business information that might harm a litigant's competitive standing [if disclosed]" meets the compelling reasons standard for sealing. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (quoting *Nixon*, 435 U.S. at 598); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2017 WL 9614789, at \*2 (N.D. Cal. Aug. 25, 2017) (sealing information on same grounds). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Moreover, the Court's interest in ensuring the "public's understanding of the judicial process" supports unsealing information that underpins a merits ruling. *Id.* (quoting *Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986)). This interest "is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'" *Id.* at 1178 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

Here, most of Apple's sealing requests are appropriate. Specifically, Bashir explains

4

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

persuasively and with specificity that public disclosure of key metrics—such as "iCloud userbase, costs, revenues, gross margins, and market research data" over time—would harm Apple's competitive standing. *E.g.*, Bashir Decl. for Mot. ¶ 3. Disclosure of information that "might harm a litigant's competitive standing" generally meet the compelling reasons standard for sealing. *In re. Elec. Arts*, 298 F. App'x at 569.

However, some of Apple's sealing requests lack merit. These requests appear calculated merely to avoid "embarrassment, incrimination, or exposure to further litigation." *Kamakana*, 447 F.3d at 1179. For instance, Apple asks to seal a January 2019 email from an Apple executive—and Plaintiffs' analysis of that email—on the ground that disclosure would "incompletely and inaccurately reveal[] Apple's corporate decision-making strategy." Bashir. Decl. for Mot. ¶ 7; *see* Pls' Mot. for Class Certification ("Mot.") at 16–18, ECF No. 76-4 (quoting email). Yet the email largely discusses information about Amazon servers that has already been publicly filed in an expert report and reported in the press. *See, e.g.*, Mangum Report ¶ 27 (discussing how "user's data is broken into chunks" and stored on Amazon S3, Windows Azure, and Google Cloud); Jordan Novet, *Apple spends more than $30 million on Amazon's cloud every month*, CNBC (Apr. 22, 2019), https://www.cnbc.com/2019/04/22/apple-spends-more-than-30-million-on-amazon-web-services-a-month.html (discussing iCloud's use of Amazon servers).

In sum, as set forth in the table below, the Court GRANTS IN PART AND DENIES IN PART Apple's administrative motion to file documents under seal, ECF No. 78, and DENIES AS MOOT Plaintiffs' administrative motion to file documents under seal, ECF No. 76.

| Document | Paragraph, Page/Line, or Footnote | Ruling |
|---|---|---|
| Portions of Plaintiffs' Notice of Motion, Motion, and Memorandum in Support of Plaintiffs' Motion for Class | Section II.D.1.c. heading in the Table of Contents 3:20-23; 4:3-4; 4:24-25; 15:18; | GRANTED as to the following: 4:3–4; 4:24–25; 15:18; 25:9. DENIED WITH PREJUDICE as to the remainder. |

5

| | | |
|---|---|---|
| Certification | 16:6; 16:10-13; 16:18-27; 17:1-11; 17:25-26; 18:1-2; 18:7-10; 18:17-26; 25:9 | |
| Exhibit 7 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Motion for Class Certification ("Katriel Declaration") | Entire Document | GRANTED. |
| Exhibit 12 to the Katriel Declaration | Entire Document | GRANTED as to pages 2–5 and all email addresses, which may be redacted as personal identifiable information. DENIED WITH PREJUDICE as to page 1 (APL-ICSTORAGE_00021698), excluding email addresses. |
| Portions of the Expert Report of Russell W. Mangum III, Ph.D. in Support of Plaintiffs' Motion for Class Certification (Exhibit 20 to the Katriel Declaration) | ¶¶ 24, 25, 27, 55 Footnotes 35, 66 Exhibits 2, 3, 8, 8.1, 8.2, 9, 9.1, 9.2, 10, 11 to Appendix C | GRANTED. |

**B. Sealing Apple's Opposition and Supporting Exhibits, ECF No. 81**

For its opposition brief to class certification, Apple seeks to seal six sets of documents. Specifically, Apple asks to seal (1) portions of its Opposition brief; (2) portions of the expert report of Professor Lorin Hitt; (3) the declaration of Dane Aconfora, Apple's Director of Service Forecasting and Efficiency; (4) portions of the declaration of Evan Krasts, a Product Marketing Manager for iCloud; (5) portions of the declaration of Monica Sarkar, a Writer/Editor with AppleCare Digital Content Services; and (6) exhibits that comprise internal Apple documents on iCloud's development and technical metrics. Apple again supports each request with a declaration by Ahmed Bashir, Apple's Director of Engineering. Bashir Decl. for Apple's Class Cert. Opp'n,

ECF No. 81-8 ("Bashir Decl. for Opp'n").

Similarly, as with the sealing requests analyzed above in Section II-A, Apple's sealing requests are somewhat overbroad. Two examples illustrate this overbreadth. First, Apple asks to seal the fact that an algorithm determines where iCloud data is stored. Apple's Opp'n to Class Cert. at 4, ECF No. 81-2 ("Opp'n"). Yet Apple's only reason for sealing this statement is the vague assertion that the statistics "regard[s] Apple's iCloud data storage practices." Bashir Decl. for Opp'n ¶ 9. The press has already reported on "iCloud data storage practices" in greater depth, including iCloud's use of third-party servers to store data in several data centers. *See, e.g.*, Glenn Fleishman, *How to find out where Apple stores your iCloud data*, Macworld (May 21, 2018), https://www.macworld.com/article/231380/where-does-apple-stores-your-icloud-data.html (detailing data centers and third-party servers); Samuel Axon, *Your Apple iCloud data is now stored on Google servers*, Ars Technica (Feb. 26, 2018), https://arstechnica.com/gadgets/2018/02/your-apple-icloud-data-is-now-stored-on-google-servers-surprised/ (quoting Apple's disclosures of third-party storage).

Second, Apple asks to seal the entirety of Aconfora's declaration. The declaration cites four discrete statistics from 2016 through 2018, which the Court relied on in denying class certification for some of the class period. *See Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, --- F.R.D. ----, 2021 WL 2186223, at *8–9 (N.D. Cal. May 28, 2021) (denying certification for the period spanning February 1, 2016 to October 31, 2018). The statistics show that "during much of the class period, the majority of U.S. iCloud data (between 57% and 99%) was being uploaded to Apple servers." Opp'n at 7 (citing Aconfora Decl. ¶¶ 4–10). Citing these statistics, the Court held that Plaintiffs failed to present common proof that class members' iCloud data was stored on third-party servers from February 1, 2016 to October 31, 2018. *Williams*, 2021 WL 2186223, at *8.

Apple's request to seal all of Aconfora's declaration is not only insufficiently supported, but also is especially damaging to the "public's understanding of the judicial process and of significant public events." *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co.*, 798 F.2d at

1294). As to insufficient support, Apple's only reason for sealing storage statistics is Bashir's vague assertion that the statistics "regard Apple's iCloud data storage practices." Bashir Decl. for Opp'n ¶ 9. Yet Bashir does not explain why statistics from 2018 or before would harm Apple's competitive standing today. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 163779, at *3 (N.D. Cal. Jan. 15, 2013) (declining to seal documents on similar ground); *Delashaw v. Seattle Times Co.*, No. 18-CV-00537-JLR, 2020 WL 6818720, at *3 (W.D. Wash. May 28, 2020) (same). As for the "public's understanding of the judicial process," *Kamakana*, 447 F.3d at 1179, the storage statistics explain why Plaintiffs fail to show predominance for a subset of their proposed Damages Class. *See Williams*, 2021 WL 2186223, at *5–11 (analyzing predominance). Thus, sealing the storage statistics would prevent the public from understanding why the Court did not grant Plaintiffs' motion for class certification in its entirety.

Even so, most of Apple's sealing requests satisfy the "compelling reasons" standard. *Kamakana*, 447 F.3d at 1178. For instance, Apple seeks to seal exhibits that comprise internal Apple documents on iCloud's development and technical metrics. Bashir explains that these documents contain "data storage practices, business plans and projects, and trade secrets" that "would provide competitors with insight that they could use to unfairly compete with Apple." Bashir Decl. for Opp'n ¶ 18. The Court's review of these documents shows that they contain "business information that might harm a litigant's competitive standing" if disclosed. *In re Elec. Arts, Inc.*, 298 F. App'x at 569. In sum, as set forth in the table below, the Court GRANTS IN PART AND DENIES IN PART Apple's administrative motion to file documents under seal, ECF No. 81.

| Document | Paragraph or Page/Line | Ruling |
| --- | --- | --- |
| Apple's Opposition to Plaintiffs' Motion for Class Certification ("Apple's Opposition") | 1:3; 1:11-16; 4:7-8; 4:14-21; 4:24-5:16; 5:25; 7:14-21; 7:24-28; 9:3; 13:19-20; 14:1–6; 24:22; | GRANTED as to the following: 1:3; 4:14–21; 7:14–16 (*i.e.*, first two bullet points), 7:24–28; 9:3, 13:19–20; 14:1–6; 24:22; and footnote 6. DENIED |

8

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

| | and footnote 6 | WITH PREJUDICE as to the remainder. |
|---|---|---|
| Expert Report of Dr. Lorin Hitt in Support of Apple's Opposition | ¶¶ 15, 46, 71, 74, 81, 83, 90-91, 97, and 99; Figures 3 and 5; and footnotes 67-68, 101, 122, 136, and 147 | GRANTED. |
| Declaration of Dane Aconfora in Support of Apple's Opposition | Entire Document | GRANTED as to the following: ¶¶ 4, 7–10; and Exhibits A through D. DENIED WITH PREJUDICE as to the remainder. |
| Declaration of Ahmed Bashir in Support of Apple's Opposition | Entire Document | GRANTED.[1] |
| Declaration of Evan Krasts in Support of Apple's Opposition | ¶¶ 9-10 | GRANTED. |
| Declaration of Monica Sarkar in Support of Apple's Opposition | ¶¶ 4-6, 10 | GRANTED. |
| Exhibit A to the Declaration of Kyle C. Wong in Support of Apple's Opposition ("Wong Declaration") | Entire Document | GRANTED. |
| Exhibit B to the Wong Declaration | Entire Document | GRANTED. |
| Exhibit C to the Wong Declaration | Entire Document | GRANTED. |
| Exhibit D to the Wong Declaration | Entire Document | GRANTED. |
| Exhibit E to the Wong Declaration | Entire Document | GRANTED. |
| Exhibit V to the Wong | 175:6; 175:8; 176:19; | GRANTED. |

---

[1] By accident, Apple first filed publicly Bashir's Declaration in Support of Apple's Opposition as ECF No. 82-1. Yet Apple then promptly moved to remove ECF No. 82-1 and to file Bashir declaration entirely under seal. ECF No. 94. The Court GRANTS Apple's motion to remove the incorrectly filed document.

| | | |
|---|---|---|
| Declaration | 176:24 | |
| Exhibit X to the Wong Declaration | 9:19-20 | GRANTED. |

**C. Sealing Plaintiffs' Reply and Supporting Exhibits, ECF Nos. 91 and 95**

For their reply in support of their motion for class certification, Plaintiffs seek to seal documents that Apple has designated confidential. ECF No. 91. Apple narrows the sealing request, which the Court analyzes below. ECF No. 95.

Apple seeks to seal (1) portions of Plaintiffs' reply in support of class certification; (2) internal Apple presentations on iCloud's development and technical metrics (Exhs. 1, 3, and 10 to Katriel Reply Decl.); (3) an internal email detailing Apple's spending on third-party storage and relationship with storage vendors (Exh. 2 to Katriel Reply Decl.); (4) a portion of the deposition transcript for Dane Aconfora, Apple's Director of Service Forecasting and Efficiency (Exh. 4 to Katriel Reply Decl.); and (5) a portion of the reply expert report of Plaintiffs' damages expert, Russell W. Mangum III (Exh. 7 to Katriel Reply Decl.). Apple again supports each request with a declaration by Ahmed Bashir, Apple's Director of Engineering. Bashir Decl. for Plaintiffs' Class Cert. Reply, ECF No. 95-1 ("Bashir Decl. for Reply").

As with Apple's other sealing requests, most of Apple's requests here satisfy the "compelling reasons" standard. For instance, in Mangum's reply report, Apple asks to seal Apple's gross and net margins for iCloud—margins not disclosed in Apple's public financial filings. *See* Bashir Decl. for Reply ¶¶ 9–10 (describing competitive harm from disclosing "gross and net margins"); Securities & Exchange Commission, *Form 10-K for Apple Inc.* (filed Nov. 5, 2018) (not disclosing iCloud financials). Similarly, in internal documents, Apple seeks to seal its annual spending on Amazon storage, and well as Apple's internal concerns with third party storage. *Id.* ¶ 12. Disclosure of this information would "harm [Apple's] competitive standing" if disclosed. *In re Elec. Arts, Inc.*, 298 F. App'x at 569.

However, Apple makes several overbroad requests to seal much of Plaintiffs' Reply

10

Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

supporting class certification. As with Apple's other overbroad requests, some of the requests to seal the Reply are not only insufficiently supported, but also are especially damaging to the "public's understanding of the judicial process and of significant public events." *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co.*, 798 F.2d at 1294). For instance, Apple asks to seal the fact that it launched in-house servers in February 2016 but used third-party servers before then. Reply at 7. The competitive salience of this fact diminished by two considerations. First, Apple has publicly admitted to using third-party servers. *See* Apple, *iCloud Security Overview* (Apr. 9, 2020), https://support.apple.com/en-us/HT202303 (disclosing third-party storage). Second, the increasing scale of Apple's in-house servers has been publicly reported. *See, e.g.*, Christian Zibreg, *Apple's new iCloud data center in Viborg is now operational*, iDB (Sept. 3, 2020), https://www.idownloadblog.com/2020/09/03/apple-data-center-viborg-operational/; *see also Delashaw*, 2020 WL 6818720, at *3 (denying sealing of five-year-old information). Yet to support sealing, Bashir conclusorily asserts that Apple's 2016 product launch is a confidential "business plan[]" and "technology." Bashir Decl. for Reply ¶ 8.

Moreover, sealing the February 2016 launch date would harm the "public's understanding of the judicial process" because the Court relies on the February 2016 date to split Plaintiffs' proposed class period. *See Williams*, 2021 WL 2186223, at *5–11 (analyzing predominance). Before the launch of Apple servers in February 2016, Plaintiffs have common proof that class members' data was stored on third-party servers. However, after the launch of Apple's servers in February 2016, Plaintiffs lack such common proof. *Id.* at *9–11. Thus, the February 2016 launch date is key to understanding why the Court grants in part and denies in part Plaintiffs' motion for class certification.

In sum, as set forth in the table below, the Court GRANTS IN PART AND DENIES IN PART Apple's administrative motion to file documents under seal, ECF No. 95, and DENIES AS MOOT Plaintiffs' administrative motion to file documents under seal, ECF No. 91.

| Document | Paragraph or Page/Line | Ruling |
|---|---|---|
| Plaintiffs' Reply in Support of Their Motion for Class Certification ("Plaintiffs' Class Cert Reply") | 7:1-15; 8:5-11; 8:13-20; 8:22–9:27; 10:1–11:11; 14:4-6; 14:16-20; 15:17-18 | GRANTED as to the following: 8:13-20; and 8:22–9:27. DENIED WITH PREJUDICE as to the remainder. |
| Exhibit 1 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Class Cert Reply ("Katriel Reply Declaration") | Entire Document | GRANTED. |
| Exhibit 2 to the Katriel Reply Declaration | Entire Document | GRANTED. |
| Exhibit 3 to the Katriel Reply Declaration | Entire Document | GRANTED. |
| Exhibit 4 to the Katriel Reply Declaration | Entire Document | GRANTED. |
| Exhibit 7 to the Katriel Reply Declaration ("Mangum Reply Expert Report") | ¶¶ 27, 29, 30 | GRANTED. |
| Exhibit 10 to the Katriel Reply Declaration | Entire Document | GRANTED. |

### D. Sealing Apple's Sur-Reply and Supporting Exhibits, ECF No. 98

For its sur-reply opposing class certification, Apple seeks to seal the following: (1) portions of Apple's motion for leave to file a sur-reply; (2) portions of Apple's sur-reply; (3) a portion of the deposition transcript for Aconfora; and (4) an internal email containing technical statistics on iCloud storage. Apple again supports each request with a declaration by Bashir. Bashir Decl. for Plaintiffs' Class Cert. Reply, ECF No. 98-1 ("Bashir Decl. for Sur-Reply").

Most of Apple's sealing requests here are warranted. For instance, Aconfora's deposition details the workings of iCloud's storage algorithm. Public disclosure of these workings would harm Apple by revealing, for example, the algorithmic parameters that determine the upload priority and regional location of data. *Cf.* Bashir Decl. for Sur-Reply ¶ 8 (averring that Aconfora's

12
Case No. 19-CV-04700-LHK
ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTIONS TO FILE CLASS CERTIFICATION DOCUMENTS UNDER SEAL

deposition contains trade secrets). Similarly, technical statistics on iCloud storage—such as the rate of data transfer—relate to iCloud's competitive capabilities. *Cf. id.* ¶ 9 (averring that internal email contains trade secrets).

However, Apple's sealing requests as to the sur-reply briefing are overbroad. Apple attempts to seal briefing on two facts. The first fact is that iCloud launched in 2015 and scaled-out in February 2016. The second fact is that the iCloud storage algorithm is in fact an algorithm, not a random allocator of data. Apple fails to explain how either fact satisfies the "compelling reasons" standard for sealing. Instead, Bashir's declaration offers a vague, blanket statement that Apple seeks to seal "information related to Apple's iCloud data storage practices; business plans and projects; and technology and trade secrets, among other things." Bashir Decl. for Sur-Reply ¶¶ 6–7.

This statement is insufficient. As discussed above, the fact that iCloud scaled-out in February 2016 is not only of potentially limited competitive significance today, but also is key to understanding the Court's class certification ruling. *See* Section II-C, *supra* (analyzing sealing requests for Plaintiffs' Reply). Similarly, the fact that iCloud's algorithm does not allocate data randomly explains why some of Plaintiffs' arguments for class certification are meritless. *Id.*; *see Williams*, 2021 WL 2186223, at *9 (disagreeing with Plaintiffs' theory of common proof and explaining that the "disproportionate allocation of storage to Apple servers would itself be improbable under Plaintiffs' incorrect theory of iCloud storage").

In sum, as set forth in the table below, the Court GRANTS IN PART AND DENIES IN PART Apple's administrative motion to file documents under seal, ECF No. 98.

| Document | Page/Line or Footnote | Ruling |
|---|---|---|
| Apple's Administrative Motion for Leave to File a Sur-Reply to Plaintiffs' Reply in Support of Their Motion for Class Certification ("Apple's Motion for Leave to File Sur-Reply") | 2:11-13; 2:15-18; 2:26–3:1 | DENIED WITH PREJUDICE. |

13

| Exhibit A ("Apple's Sur-Reply") to the Declaration of Lauren Pomeroy in Support of Apple's Motion for Leave to File Sur-Reply ("Pomeroy Declaration") | 2:3-4; 2:6-13; 2:15-16; 2:23–3:2; 3:4; 3:8-9; 3:11–4:6; 4:8-16; 4:18-21; 5:2-4; 5:8<br>Footnotes 2 and 4 | GRANTED as to 2:11–13, 3:1–2, 3:17–4:6, 4:12–15, 4:18–20, footnote 2. DENIED WITH PREJUDICE as to the remainder. |
|---|---|---|
| Exhibit B to the Pomeroy Declaration | Entire Document | GRANTED. |
| Exhibit C to the Pomeroy Declaration | Entire Document | GRANTED. |

### E. Sealing Plaintiffs' Response to the Sur-Reply and Supporting Exhibits, ECF Nos. 100 and 103

For their response to Apple's sur-reply, Plaintiffs seek to seal documents that Apple has designated confidential. ECF No. 100. Apple narrows the sealing request, which the Court analyzes below. ECF No. 103.

Apple asks to seal (1) portions of Plaintiffs' response to Apple's sur-reply ("Plaintiffs' Sur-Reply"); (2) an internal presentation detailing financial metrics and business forecasts; (3) an internal presentation detailing storage requirements and overhead; (4) an internal presentation detailing iCloud usage, capital expenditures, and forecasts; (5) a draft internal presentation on testing iCloud infrastructure; and (6) an internal email on the pricing of Amazon servers; (7) and an excerpt from Aconfora's deposition that discusses iCloud's processes for uploading data and internal reporting. Apple again supports each request with a declaration by Bashir. Bashir Decl. for Plaintiffs' Class Cert. Reply, ECF No. 98-1 ("Bashir Decl. for Pls. Sur-Reply").

As with Apple's other sealing requests, most of the sealing requests here meet the "compelling reasons" standard. *Kamakana*, 447 F.3d at 1178. For instance, the internal presentations at issue discuss "iCloud data storage demand and costs" that, if disclosed, could allow Apple's competitors to "undercut Apple's pricing" and "improv[e] their own cloud services at Apple's expense." Bashir Decl. for Pls. Sur-Reply ¶ 8. Similarly, the internal email at issue includes Apple's internal deliberations on a storage vendor and its prices. Disclosure of this confidential information could "harm [Apple]'s competitive standing" if disclosed. *In re Elec.*

*Arts, Inc.*, 298 F. App'x at 569 (quoting *Nixon*, 435 U.S. at 598).

However, Apple's requests to seal Plaintiffs' Sur-Reply are overbroad. Apple asks to seal four relatively non-sensitive facts that inform the Court's Class Certification Order. Unsealing these facts ensures the "public's understanding of the judicial process"—a key interest underpinning the "compelling reasons" standard for sealing judicial records. *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co*, 798 F.2d at 1294).

The first fact is that iCloud launched in 2015 and scaled-out in February 2016. As discussed above, the fact that iCloud scaled-out in February 2016 is not only of potentially limited competitive significance today, but also is key to understanding the Court's class certification ruling. *See* Section II-C, *supra*.

The second fact is that, on several days across the class period, most iCloud data was stored in Apple servers rather than third-party servers. This fact explains why the Court denied in part certification of the Damages Class. Specifically, the high percentage of fully in-house storage defeated predominance because it suggested that "a non-*de minimis* number of class members had their data stored exclusively on Apple servers." *Williams*, 2021 WL 2186223, at *8 (applying *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 792 (9th Cir. 2021)).

The third fact Apple asks to seal is that the fact that iCloud's storage algorithm is not random. Yet this fact is necessary to understanding why the Court denied in part certification of the Damages Class. Specifically, the non-random nature of iCloud algorithm rebuts Plaintiffs' argument that "it is probability-defying for there to have been any U.S. paying iCloud subscribers who never had iCloud content stored on non-Apple servers." *Id.* at *9 (quoting Pls. Sur-Reply at 5).

Lastly, Apple asks to seal portions of Plaintiffs' Sur-Reply which suggest that Apple's iCloud records from during the class period are somewhat incomplete. Specifically, Apple asks the Court to seal that (1) Aconfora relied on data that could have been snapshots from four particular

1 days, rather than a "multiple time series"; and (2) Apple cannot precisely identify iCloud subscribers that had all their iCloud data stored on Apple servers. Pls. Sur-Reply at 4–5. Again, these facts are necessary to the "public's understanding of the judicial process and of significant public events." *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broad. Co.*, 798 F.2d at 1294). Specifically, these facts explain that Apple's imperfect records do not allow Apple to "'winnow out' putative class members whose data was never stored on third-party servers." *Williams*, 2021 WL 2186223, at *11 (distinguishing *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016)). Given Apple's inability to "winnow out" those class members, the Court denied in part class certification. *Id.*

In sum, as set forth in the table below, the Court GRANTS IN PART AND DENIES IN PART Apple's administrative motion to file documents under seal, ECF No. 103, and DENIES AS MOOT Plaintiffs' administrative motion to file documents under seal, ECF No. 100.

| Document | Page/Line or Footnote | Ruling |
|---|---|---|
| Plaintiffs' Response to Apple's Administrative Motion for Leave to File a Sur-Reply ("Plaintiffs' Sur-Surreply") | 1:17-24; 2:1-6; 2:8-13; 2:15-26; 3:1-17; 3:19; 3:25–4:24; 4:27–5:6; 5:12-13; 5:15-19 Footnote 2 | GRANTED as to 1:23–24; 2:1–5; 3:1–12, 3:16–17; 4:1–4:24; and 5:12–13. DENIED WITH PREJUDICE as to the remainder. |
| Exhibit 1 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Sur-Surreply ("Katriel Sur-Surreply Declaration") | Entire Document | GRANTED. |
| Exhibit 2 to the Katriel Sur-Surreply Declaration | Entire Document | GRANTED. |
| Exhibit 3 to the Katriel Sur-Surreply Declaration | Entire Document | GRANTED. |
| Exhibit 4 to the Katriel Sur-Surreply Declaration | Entire Document | GRANTED. |
| Exhibit 5 to the Katriel Sur-Surreply Declaration | Entire Document | GRANTED. |
| Exhibit 6 to the Katriel Sur-Surreply Declaration | Entire Document | GRANTED. |

**IT IS SO ORDERED.**

Dated: June 17, 2021

_Lucy H. Koh_
LUCY H. KOH
United States District Judge