Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Rd., Suite 200-D
Del Mar, California 92014
Telephone: (619) 363-3333
Facsimile: (866) 832-5852
e-mail: rak@katriellaw.com

Azra Mehdi (SBN 220406)
**THE MEHDI FIRM, P.C.**
201 Mission Street, Suite 1200
San Francisco, CA 94105
Telephone: (415) 293-8039
Facsimile: (415) 432-4301
e-mail: azram@themehdifirm.com

*Plaintiffs' Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA M. WILLIAMS AND JAMES STEWART, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | No. 3:19-cv-4700-LB<br><br>**PLAINTIFF JAMES STEWART'S AND CLASS COUNSEL'S NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASSWIDE SETTLEMENT**<br><br>**Judge: Hon. Laurel Beeler**<br>**Courtroom B, 15th Floor**<br>**Hearing Date: February 17, 2022**<br>**Hearing Time: 9:30 a.m.** |

1

## <u>TABLE OF CONTENTS</u>

2

3    NOTICE OF MOTION AND MOTION……………………………………………………..1

4    STATEMENT OF RELIEF SOUGHT……………………………………......…………..1

5    STATEMENT OF ISSUES TO BE DECIDED……………………………………………1

6    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

7    PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL………………..2

8    I.      INTRODUCTION AND SUMMARY OF MOTION……………………………………2

9    II.     PRELIMINARY APPROVAL SHOULD BE GRANTED………………………………5

10          A.  The Previously Certified Class Should Remain Certified As A
              Settlement Class………………………………………………………..………5

11          B.  The Notice Plan Should Be Approved………………………………......………5

12          C.  The Substantive Terms Of The Settlement Are Fair And Merit

13              Preliminary Approval………………………………………………………………7

14              1.  The Vigorously Disputed Strength Of Plaintiff's Case Supports
                    The Reasonableness Of This Proposed Settlement……………………….…….....11

15

16              2.  The Risk, Expense, Complexity, And Likely Duration Of Further
                    Litigation All Support Preliminary Approval Of The Classwide

17                  Settlement……………………………………………………………...12

18              3.  The Risk Of Maintaining Class Action Status Throughout Trial
                    And Appeal Also Supports Preliminary Approval……………………………13

19
                4.  The Amount Offered In Settlement Is Reasonable And Supports
20                  Preliminary Approval………………………………………………..14

21              5.  The Advanced Stage Of The Proceedings Supports Preliminary
                    Approval…………………………………………………………………15

22
                6.  The Experience And Views Of Counsel Support Preliminary
23                  Approval…………………………………………………………...……15

24    CONCLUSION………………………………………………….……………...……16

25

26

27

28

*Williams et al., v. Apple Inc.*,                              Plaintiff's Unopposed Motion For Preliminary
No. 3:19-cv-4700-LB                                            Approval Of Proposed Classwide Settlement

-i-

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Cases:**

4

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007)……………………………………………………10, 11

5

6

*Alberto v. GMRI, Inc.,*
252 F.R.D. 652 (E.D. Cal. 2008)…………………………….…………10

7

8

*Castro v. Zenith Acquisition Corp.,*
2007 WL 81905 (N.D. Cal.  Jan. 9, 2007)………………….…………………..7

9

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992)………………………………………………..………7

10

11

*Evans v. Linden Research, Inc.,*
2013 WL 5781284 (N.D. Cal. Oct. 25, 2013)……………………………………..……6

12

13

*Ferrington v. McAfee, Inc.,*
2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)……………………………………8

14

15

*Forcellati v. Highland's, Inc.,*
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)……………………………………8

16

*Gattreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982)………………………………………………..………7

17

18

*Grace v. Apple, Inc.,*
No. 17-cv-00551-LHK-NC (N.D. Cal. Sept. 10, 2020)…………………………………6

19

20

*In re American Apparel, Inc. v. Shareholder Litig.,*
2014 WL 10212865 (C.D. Cal. July 28, 2014)…………………………………16

21

22

*In re Apple iPod iTunes Antitrust Litig.,*
No. 05-cv-37-YGR (N.D. Cal.)…………………………………………..……..12

23

*In re LinkedIn User Privacy Litig.,*
309 F.R.D. 573 (N.D. Cal. 2015)……………………………………………….…..6

24

25

*In re Mercury Interactive Corp. Securities Litig.,*
618 F.3d 988 (9th Cir. 2010)……………………………………………..………4

26

27

*In re NVIDIA Corp. Derivative Litig.,*
2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)…………………………………7

28

*In re Omnivision Techs., Inc.*,
559 F. Supp.2d 1036 (N.D. Cal. 2008)……………………………………………………...…9

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007)………………………………...……..10, 11

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008)…………………………...…………………2

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)…………………………………...………………8-9, 12, 15

*McMahon v. Tuesday Morning, Inc.*,
No. 14-cv-05547-EMC (N.D. Cal. Feb. 23, 2017)……………………………………………9

*McPhail v. First Command Fin. Planning, Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009)……………………………………9

*Mullane v. Central Hanover Trust*,
339 U.S. 306 (1950)…………………………………………………………………………5

*Munday v. Federal Navy Credit Union*,
2016 WL 7655807 (C.D. Cal. Sept. 15, 2016)……………………………………10, 12, 16

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 2:12-cv-03824 (E.D. Pa. Sept. 15, 2014)……………………………………………9-10

*Nichols v. SmithKline Beecham Corp.*,
2005 WL 950616 (E.D. Pa. Apr. 22, 2005)……………………………………………9

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982)……………………………………...………..……7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)……………………………………………………..…………11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)……………………………………………………10

*Roe v. Frito-Lay, Inc.*,
2016 WL 4154850 (N.D. Cal. Aug. 5, 2016)……………………………………………9

*Scott v. HSS Inc.*,
2017 WL 7049524 (C.D. Cal. Dec. 18, 2017)……………………………………………9

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)……………………………………………………14

*Tawfilis v. Allergan, Inc.*,
2018 WL 4849716 (C.D. Cal. Aug. 27, 2018)…………………………………………….………15

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993)……………………………………………………………………….7

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)………………………………………………………………….……7

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)………………………………………………………………………11

**Statutes And Rules:**

Fed. R. Civ. P. 23(e)……………………………………………………...………..1, 2, 3

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**
**PLEASE TAKE NOTICE** that, at 9:30 a.m. on February 17, 2022, or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, Plaintiff James Stewart ("Plaintiff") and his counsel ("Class Counsel") will and hereby move under Federal Rule of Civil Procedure 23(e) for preliminary approval of the parties' proposed classwide settlement.   This Motion, which is unopposed by Defendant Apple Inc. ("Apple"), is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers on file in this matter, the arguments of counsel, the Declarations of Roy A. Katriel ("Katriel Decl.") and Steven Weisbrot ("Weisbrot Decl."), and other matters the Court wishes to consider.   The parties' settlement agreement is attached as Exhibit 1 to the Katriel Declaration.

## STATEMENT OF RELIEF SOUGHT

Plaintiff seeks a Preliminary Approval Order[1] granting: preliminary approval under Federal Rule of Civil Procedure 23(e) of Plaintiff's and Apple's (collectively, the "Parties") proposed classwide settlement agreement ("Settlement" or "Agreement"); approving Angeion Group, LLC as the Settlement Administrator; approving the dissemination to Subscriber Class Members of the notice of the proposed Settlement in the manner and form provided in the Agreement; establishing deadlines by which Subscriber Class Members may opt-out of, or object to, the proposed classwide Settlement if they so choose; and fixing the date for a Final Approval Hearing.   The proposed Preliminary Approval Order accompanies this filing.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Parties' proposed classwide Settlement memorialized in the Agreement should be preliminarily approved under Federal Rule of Civil Procedure 23(e) because it is fair and reasonable and granting preliminary approval will permit notice of the proposed Settlement to be

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as defined in the Parties' Settlement Agreement.

*Williams et al., v. Apple Inc.,*
No. 3:19-cv-4700-LB

provided to Subscriber Class Members so they may review its terms and decide to partake in the Settlement, opt out, or object to it?

2.     Whether the notice plan, as detailed in the Agreement and Weisbrot Declaration should be approved because it comports with due process, Rule 23, and is the best practicable notice under the circumstances?

3.     Whether Angeion Group, LLC, an experienced settlement and claims administrator, should be approved and appointed as the Settlement Administrator for this proposed classwide Settlement?

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

### I.     INTRODUCTION AND SUMMARY OF MOTION.

Plaintiff James Stewart and Class Counsel are pleased to report that, following two mediation sessions before the Honorable Edward A. Infante (Ret.) and extensive follow-up telephonic discussions on numerous occasions over the months since those mediations, the Parties to the above-entitled action have reached a proposed classwide Settlement to resolve the claims asserted in the operative First Amended Class Action Complaint ("FAC") filed in this action.  (ECF No. 38.)  A copy of the Parties' Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiff now files this unopposed motion for preliminary approval, so that: notice of the proposed Settlement can be disseminated to the absent Subscriber Class Members; the absent Subscriber Class Members can be given an opportunity to avail themselves of the Settlement, opt out of the Subscriber Class, or file any objections to the proposed Settlement; and this action and all other proceedings involving the subject matter encompassed by this class action and Agreement can be stayed pending the Court's determination as to whether to grant final approval to the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *11 (N.D. Cal. Feb. 7, 2008) (once a court grants preliminary approval it is proper to stay

and enjoin members of settlement class from litigating matters covered by the proposed settlement before this or other courts).

This unopposed motion for preliminary approval also seeks to set a date for the Final Approval Hearing on the proposed Settlement. *See* Agreement, at Definitions ¶J. At the Final Approval Hearing, the Court will have the opportunity to determine whether to grant final approval to the class action Settlement and to evaluate any objections to the Settlement that may have been filed. *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class members may only be entered after hearing held by the court).

Preliminary approval should be granted. The Settlement reached is unquestionably fair. It provides members of the Subscriber Class—the same class that the Court already certified—compensation for the alleged overcharge that the Subscriber Class Members sustained in making their purchases of iCloud subscriptions from Apple. To accomplish this, the Agreement directs Apple to pay $14,800,000.00 in non-reversionary Settlement consideration. *See* Agreement, at ¶2.1. Notably, if the Settlement is approved, compensation to all Subscriber Class Members will occur without the need for the filing of any claim forms. That is, because Apple has records of its iCloud subscribers that include the identity and e-mail addresses of such customers, as well as their iCloud subscription plans during the Subscriber Class Period, the Agreement calls for Class Payments from the Gross Settlement Amount to be made to these Subscriber Class Members following the Settlement's Effective Date, without the need for any Subscriber Class Member to file a claim form or proof of purchase. *Id.*, at ¶¶2.2 -2.3.[2] Each Subscriber Class Member may opt to receive the Class Payment by way of check, ACH transfer, or, for Subscriber Class Members who, at the time Class Payment is distributed, are monthly iCloud subscribers to any kind of monthly paid iCloud plan and who have a U.S. mailing address associated with their plans, by receiving the Class Payment into the Apple account that pays for the Subscriber Class Member's subscription. *Id.*, at ¶2.3.

---

[2] Even though the entirety of the $14.8 million Gross Settlement Amount net of awarded Attorneys' Fees and Costs, Administrative and Notice Costs, and any Service Award will be disbursed to Subscriber Class Members without the need for claim form submission, the Agreement provides for the contingency that some number of mailed Settlement checks may remain uncashed following their expiration period. In such a circumstance, the Agreement calls for any such uncashed funds to be distributed to *cy pres* recipients. *See* Agreement, at ¶2.5.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

1   The Class Payment made to each Subscriber Class Member will depend on the total amount
2   the Subscriber Class Member paid for iCloud subscriptions during the Subscriber Class Period. *Id.*,
3   at ¶2.2 (describing plan of allocation).  In addition to the foregoing direct substantive relief, the
4   Agreement provides that the Gross Settlement Amount be used to pay the costs of implementing the
5   Settlement, as approved by the Court, including the Administrative and Notice Costs. *Id.*, at
6   Definitions ¶¶B, M.  Further, in keeping with the common benefit doctrine, the Settlement permits
7   Class Counsel to seek an award of Attorneys' Fees and Costs to be paid from the $14.8 million Gross
8   Settlement Amount of consideration, though the outcome of that request will not affect the Settlement
9   becoming effective.  Apple reserves the right to oppose or otherwise respond to any such request, and
10  no agreement has been reached by the Parties as to any motion for Attorneys' Fees and Costs that
11  Class Counsel may file.  *Id.*, at ¶7.1; Katriel Decl., at ¶5.[3]  The Agreement also provides that Class
12  Counsel may seek Court approval for a Service Award not to exceed $5,000 for the Named Plaintiff,
13  with Apple reserving the right to respond or oppose that request. *See* Agreement, at ¶7.3.

14          By any objective standard, the Settlement warrants preliminary approval.  The $14.8 million
15  amount of Settlement consideration strikes the appropriate balance between, on the one hand, fairly
16  compensating Subscriber Class Members for their claims and, on the other hand, accounting for the
17  real and uncertain risks of continued litigation that may leave Subscriber Class Members with no
18  remedy.  The particular litigation risks and uncertainties are detailed more fully below and will be
19  further briefed in any motion for final approval of the Settlement.  Class Counsel, who litigated this
20  action since its inception nearly three years ago, oversaw the review of thousands of pages  of written
21  discovery, and attended all lay and expert depositions, are of the considered view that this Settlement
22  fairly and adequately advances Subscriber Class Members' interests. *See* Katriel Decl., at ¶¶9-10.

23

24  _____

25  [3] Consistent with Ninth Circuit precedent, Class Counsel will file their motion for Attorneys' Fees
    and Costs before the deadline for filing any objections, and that motion will be publicly posted on
26  the Settlement Website. *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 994–
    95 (9th Cir. 2010) (interpreting Fed. R. Civ. P. 23(h) to require that class counsel's motion for
27  attorneys' fees be publicly filed sufficiently in advance of any objection deadline); Agreement, at
    ¶7.1 (setting deadline for filing of any motion for Attorneys' Fees and Costs and its posting on the
28  Settlement Website).

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

For all the foregoing reasons, as more fully detailed below, Plaintiff's Unopposed Motion for Preliminary Approval should be granted.

## II. PRELIMINARY APPROVAL SHOULD BE GRANTED.

### A. The Previously Certified Class Should Remain Certified As A Settlement Class.

On May 28, 2021, the Court entered its Order granting in part Plaintiffs' motion for class certification. *See* ECF No. 110.  The Order certified a damages class defined as:

> All persons in the United States who paid for a subscription to iCloud at any time during the period September 16, 2015 to January 31, 2016.  Excluded from this Class definition are all employees, officers, or agents of Defendant Apple Inc.  Also excluded from this Class definition are all judicial officers assigned to this case as well as their staff and immediate families.

*Id.*, at 43:24-27.

The Court denied Plaintiffs' motion to certify a class with a broader class period and denied certification of an injunctive relief class.  In certifying the foregoing class, the Court found that Plaintiff James Stewart met the Rule 23(a) and 23 (b)(3) criteria for class certification. *See id.*, at 8:6-41:22 (finding Rule 23(a) and 23(b)(3) requirements met).[4]  The Agreement adopts this class definition and seeks to resolve this matter on behalf of members of this certified class definition (i.e., the Subscriber Class). *See* Agreement, at p.1; *id.*, at Definitions, ¶BB.  Because no intervening event or circumstance has arisen since the Court's grant of class certification, the certified class should remain in effect as a settlement class for purposes of this motion for preliminary approval of the Parties' classwide Settlement.

### B. The Notice Plan Should Be Approved.

Rule 23 and due process require that notice be provided to absent Subscriber Class Members to inform them of the proposed Settlement and grant them the opportunity to opt out or object. *See* Fed. R. Civ. P. 23(c)(2).  The notice and its dissemination must be the "best notice practicable" under the circumstances. *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).

The Agreement adheres to that standard by calling for the notice to be implemented by e-mail and website publication. *See* Agreement, at ¶¶6.2.1-6.2.4 (describing notice plan); Decl. of

---

[4] The Court found a second named plaintiff, Andrea M. Williams, to be an inadequate class representative.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

Steven Weisbrot, at ¶¶12-20 (same and also detailing expected reach and effectiveness of notice plan).  Further, the content of the notice (both the Email Notice and the Website Notice) is unquestionably fair.  The Email Notice and the Website Notice, attached as Exhibits 1 and 4 to the Agreement, inform Subscriber Class Members about the existence and key terms of the proposed classwide Settlement and advise Subscriber Class Members as to their options to partake in the Settlement, opt out of the Subscriber Class, or object to the proposed Settlement. *See* Exs. 1 and 4 to AgreementAgreement (proposed Email Notice and Website Notice).  Such e-mail and website publication notice content comports with due process, Rule 23, and has been approved by this Court. *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) ("The Court approved the notice plan set forth in the Agreement, which primarily called for direct notice by e-mail to all members of the Subscriber Class to the addresses used in connection with their LinkedIn premium accounts, as well as the creation of a detailed settlement website."); *Evans v. Linden Research, Inc.*, 2013 WL 5781284, at *3 (N.D. Cal. Oct. 25, 2013) (granting preliminary approval of class settlement and approving notice by email and website publication); *see also Grace v. Apple, Inc.*, No. 17-cv-00551-LHK-NC, Order Granting Preliminary Approval of Class Action Settlement, ECF No. 426 (N.D. Cal. Sept. 10, 2020).  Exhibit 2 to the Katriel Declaration also shows a copy of the Settlement Website's landing page, which contains the same pertinent information as found in the Email Notice. *See* Ex. 2 to Katriel Decl.

As part of the Agreement, the Parties have agreed to have the Angeion Group, LLC, an experienced settlement administrator, take charge of disseminating the notice to Subscriber Class Members.  The accompanying Declaration of Steven Weisbrot from the Angeion Group, LLC details the nature, extent, and expected reach of the agreed upon e-mail and website publication notice plan. *See* Decl. of Steven Weisbrot, at ¶¶12-20.  It also documents the Angeion Group's vast experience and track record in being a court-approved administrator of prior class action settlements. *Id.*, at ¶¶3-11.

Based on the nature of the service at issue in this class litigation (iCloud), which is only provided online, a notice plan reliant on electronic and online publication is especially appropriate.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

Because the notice plan comports with due process, Rule 23, and represents the best notice practicable under the circumstances, it merits approval.

## C.  The Substantive Terms Of The Settlement Are Fair And Merit Preliminary Approval.

Preliminary approval should also be granted to the Settlement because its terms are fair and reasonable.  Ultimately, the decision whether to grant preliminary approval of a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal.  Jan. 9, 2007).  In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The general standard by which courts are guided when deciding whether to grant preliminary approval to a class action settlement is whether the proposed settlement falls within the range of what could be "fair, adequate, and reasonable," so that notice may be given to the proposed class, and a hearing for final approval may be scheduled.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the proposed settlement is "within the range of possible approval" and that notice should be given, "the next step is the fairness hearing.").  An evaluation of the benefits under any proposed settlement "must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties.  Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *16 (N.D. Cal. Mar. 18, 2009) (quoting *Officers for Justice*, 688 F.2d at 624).

This proposed Settlement assuredly satisfies the foregoing criteria. The terms of the Settlement provide Subscriber Class Members with meaningful relief that addresses the precise alleged legal injury (a claimed overcharge attributable to the alleged contractual breach) that was pled in the FAC. Unlike notorious class settlements that release class member claims for mere illusory relief, here the recovery offered is real and crafted in a manner to ensure that the Settlement consideration reaches its intended beneficiaries. Each member of the Subscriber Class will be provided a Class Payment from the $14.8 million Gross Settlement Amount that the Agreement obligates Apple to pay. *See* Agreement, at Definitions ¶M; *id.*, at ¶¶2.1-2.2. That Class Payment, moreover, will be disbursed to each Subscriber Class Member upon the Settlement being approved, without the need for any Subscriber Class Member to submit a claim or file any proof of purchase. At the Subscriber Class Member's sole discretion, payment will be provided by check or ACH transfer. *Id.*, at ¶2.3. If no election is made, payment will be provided by check for Subscriber Class Members who are no longer monthly iCloud subscribers or by payment to the account that pays for the Subscriber Class Members' subscriptions for Subscriber Class Members who are current monthly iCloud subscribers. *Id.*

This Agreement therefore envisions that the entirety of the $14.8 million Settlement consideration, after accounting for any award of fees and costs approved by the Court, will be disbursed to Subscriber Class Members. *Id.*, at ¶2.5. In such manner, this proposed Settlement is notable and distinct from many classwide settlements that purport to offer an inflated settlement consideration amount but make recovery by the actual class members dependent upon the submission of claim forms that, in reality, relatively few settlement class members submit. *See Forcellati v. Highland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The reality is the number of class members who actually file claims is relatively low. '[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'" (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)).

The Agreement's consideration is fair and reasonable. To be fair, a settlement need not reimburse class members for all their claimed damages or even a majority of that amount. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed

settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted); *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751- HSG, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) (noting that "the risks and costs associated with class litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal").   This is because the very nature of a compromise that takes into account the risks of continued litigation makes the offering of even vastly reduced consideration in compromise of the disputed claims perfectly proper.   Here, the $14.8 million in Settlement consideration amounts to over 40 percent of the contractual damages calculated by Plaintiffs' expert economist.   *See* Katriel Decl., at ¶5.   This falls well above the range of settlement consideration amounts approved by this and other courts, particularly in light of the contentious and uncertain outcome of this complex and protracted action. *See, e.g., Scott v. HSS Inc.*, 2017 WL 7049524, at *6 (C.D. Cal. Dec. 18, 2017) (approving as fair class action settlement that provided settlement consideration amounting to 3.9% of recoverable damages at trial); *McMahon v. Tuesday Morning, Inc.*, 14-cv-05547-EMC, ECF No. 82 at 2:2– 10 (N.D. Cal. Feb. 23, 2017) (approving settlement amount that was 4.75% of estimated potential liability); *In re Omnivision Techs., Inc.*, 559 F. Supp.2d  1036-1042 (N.D. Cal. 2008) (class settlement providing consideration of between 6% and 9% of potential recovery at trial was inherently fair and reasonable); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544, at *21–22 (S.D. Cal. Mar. 30, 2009) ("the result achieved, a 7% recovery of the estimated damages, falls within the range of typical recoveries in complex securities class actions."); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement that represented between 9.3% and 13.0% of claimed damages); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2:12-cv-03824, ECF No. 665 (E.D. Pa. Sept. 15, 2014) (approving settlement in complex antitrust pharmaceutical action where "[t]he Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion, [and] the risks of litigation that I have described").

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

In exchange for the $14.8 million in Settlement consideration, Subscriber Class Members will release their claims against Apple and the other defined Released Persons. *See* Agreement, at Definitions ¶¶V-W; *id.*, at ¶¶ 8.1-8.2.  The Agreement properly tailors this release of claims to cover those claims related to the factual allegations in the FAC. *See id.*, at Definitions ¶V.  The Settlement's bargained-for release of claims, therefore, is fair, reasonable, and supports preliminary approval because "a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

At bottom, the decision now before the Court is merely whether the proposed classwide Settlement should be presented to the Subscriber Class Members for their consideration. "At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, 'a full fairness analysis is unnecessary[.]'" *Munday v. Federal Navy Credit Union*, 2016 WL 7655807, at *7 (C.D. Cal. Sept. 15, 2016) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).  Instead, preliminary approval and notice of the Settlement terms to the Subscriber Class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (emphasis added) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out." (emphasis in original)).  The factors that courts look to in ascertaining whether to approve a settlement confirm that this Settlement readily falls within the range of settlements that merits preliminary approval.[5]

---

[5] These factors generally are relied upon by courts in deciding whether to grant *final* approval to classwide settlements.  For completeness and transparency, Plaintiff addresses these factors in connection with this earlier preliminary approval motion.  Plaintiff also will discuss these factors

1

2

### 1.   The Vigorously Disputed Strength Of Plaintiff's Case Supports The Reasonableness Of This Proposed Settlement.

Basic to the process of deciding whether a proposed compromise is fair and equitable "is the need to compare the terms of the compromise with the likely rewards of litigation." *Acosta*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968)); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (citations omitted)). "In so doing, a court must 'apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.'" *Acosta*, 243 F.R.D. at 389 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Although Class Counsel believed fully in the merits of the case, it is undeniable that real obstacles were present that could have precluded any recovery.  This much is confirmed by reviewing the Court's rulings on the key question of contract interpretation.  In upholding the FAC's breach of contract claim, the Court stressed that the contractual language at issue in this case was ambiguous, thereby opening the door to extrinsic evidence to support each Party's asserted interpretation of the agreement's language.  *See* ECF No. 34, at 18:1-19:3.  Indeed, the Court ruled that various "widespread" Apple and third-party disclosures were common evidence that could be used to interpret the iCloud Terms and Conditions ("iCloud Terms"); Apple contends that such statements informed Subscriber Class Members that Apple used third-party servers to store iCloud user data. ECF No. 110, at 10-11 (citations omitted).  How the Court or, if necessary, a fact-finder would have received the Parties' dueling contract interpretation arguments and extrinsic evidence is yet to be decided.  Thus, Named Plaintiff and the Subscriber Class faced a real risk that the Court (on summary judgment) or a jury (at trial) would interpret the iCloud Terms in a manner from unfavorable to fatal to the Subscriber Class.

---

in connection with any motion for final approval after the Subscriber Class has had the opportunity to review the proposed Settlement.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

Even beyond summary judgment, there was a real risk to the Subscriber Class of an adverse outcome at trial.  That is all the more so when one considers Apple's track record in obtaining a jury trial victory in another certified class action tried before this Court.  *See In re Apple iPod iTunes Antitrust Litig.*, No. 05-cv-37-YGR (N.D. Cal.) (defense jury verdict in Apple's favor in trial of certified class action).  Given this context, procedural posture, and history, the proposed Settlement, which provides Subscriber Class Members with a multi-million dollar recovery, is unquestionably fair and worthy of preliminary approval.

> **2.  The Risk, Expense, Complexity, And Likely Duration Of Further Litigation All Support Preliminary Approval Of The Classwide Settlement.**

There exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney*, 151 F.3d at 1238.  Although both Apple and Class Counsel were and remain prepared to litigate the action to trial and through appeal, it is also the case that the Subscriber Class faced several hurdles—summary judgment motions, and the potential of appeals—before even reaching trial.  And, "[a]s in any case, there is a substantial risk of losing at trial." *Munday*, 2016 WL 7655807, at *8.

Here, the uncertainty and complexity of the litigation and the outcome of any appeal were ever-present.  Even at the pleadings stage, the Court acknowledged the uncertain interpretation of the iCloud Terms forming part of the Plaintiff's breach of contract claims. *See* ECF No. 34, at 18:1-19:3.  While the Court denied Apple's motion to dismiss the breach of contract claim forming part of the original and the First Amended Complaint, had the litigation proceeded, Apple would have vigorously challenged at trial and on appeal the Subscriber Class Members' urged interpretation of the iCloud Terms language.  Specifically, Apple interprets the iCloud Terms language to permit storage of user data on third-party servers and contends that extrinsic evidence, including statements presented to the Subscriber Class during the Subscriber Class Period detailing Apple's use of third-party servers, supported this conclusion.  Given the lack of an express ruling by the Court or Ninth Circuit on this central issue, the uncertainty of ongoing litigation was particularly acute.

The uncertainty and risk that would endure if adversarial litigation continued was not limited to legal issues or standards.  Both Parties retained numerous experts on such issues as consumer

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

behavior, survey evidence, and damages.[6]  Both Parties represented to the Court that they planned on filing *Daubert* motions to exclude the opposing experts' testimony, and Plaintiff did file such a motion.  Judge Koh took those representations to heart and scheduled a separate briefing and hearing on the Parties' *Daubert* motions, separate from the anticipated summary judgment briefing.  *See* ECF No. 136.  In this expert-rich case, any adverse outcome as to the admissibility of Plaintiff's proffered expert testimony would seriously undermine the strength of the Subscriber Class's case.  That risk also underscores the propriety of resolving this action by way of a compromise Settlement.

There is little doubt that continued litigation of this case up to and through trial would be costly and fraught with risk.  The trial itself would be expensive, complex, and of an uncertain outcome.  Further, it is likely that any trial outcome would be vigorously challenged on appeal.  The current Ninth Circuit docket entails a routine timeline in civil cases of two years or more from the time of filing a notice of appeal until the time a ruling is issued.  *See* Katriel Decl., at ¶7.  Thus, without a settlement, the Subscriber Class faced real and uncertain hurdles, as well as a significant and meaningful delay in obtaining any redress.  This factor, therefore, favors preliminary approval of the Agreement.

### 3. The Risk Of Maintaining Class Action Status Throughout Trial And Appeal Also Supports Preliminary Approval.

A closely related factor requires the Court to assess the likelihood that Plaintiff can maintain certification of the class through the duration of trial and any appellate review.  *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  Here, Plaintiff successfully obtained class certification.  His

---

[6] The Parties served 12 expert reports of five experts: Expert Report of Dr. Scott Swain In Support of Plaintiffs' Motion for Class Certification; Expert Report of Russell W. Mangum III, Ph.D. In Support of Plaintiffs' Motion For Class Certification; Apple's Expert Report of Dr. Carol Scott In Opposition To Plaintiffs' Motion For Class Certification; Apple's Expert Report of Dr. Lorin M. Hitt In Opposition to Plaintiffs' Motion For Class Certification; Expert Rebuttal Report of Dr. Scott Swain In Support of Plaintiffs' Motion For Class Certification; Expert Opening Merits Report of Dr. Scott Swain; Expert Opening Merits Report of Russell W. Mangum III, Ph.D.; Expert Opening Merits Report of Dr. Carol Scott; Expert Merits Rebuttal Report Of Dr. Scott Swain; Expert Merits Rebuttal Report of Dr. Carol Scott; Expert Merits Rebuttal Report of Ronald T. Wilcox, Ph.D.; and, Expert Merits Rebuttal Report of Dr. Lorin M. Hitt. Although the Parties served both class certification and merits expert reports, Apple's merits reports often incorporated and attached as exhibits the filed class certification reports.

motion and class certification position, however, were vigorously disputed by Apple, and Apple succeeded in defeating Plaintiff's attempt to certify a broader class period and an injunctive relief class.

Although Class Counsel continue to believe in the correctness of the Court's ruling in certifying this Subscriber Class, the vigorously disputed arguments underlying the class certification motion would be revisited in a Motion to Decertify and on appeal had litigation proceeded. *See* ECF No. 139 (setting deadline for Motion to Decertify). Indeed, Apple contends that the testimony and survey results of two of their experts demonstrate that Plaintiff's damages model is not common evidence and as such, the class cannot be maintained. Given the hotly contested class certification arguments, each of which were supported by dueling expert witnesses, the risk to Plaintiff and the Subscriber Class Members of having their favorable class certification order scrutinized anew or on appeal cannot be ignored. This factor, therefore, also supports preliminary approval of the class-wide Settlement.

### 4. The Amount Offered In Settlement Is Reasonable And Supports Preliminary Approval.

The amount offered as Settlement consideration is reasonable, fair, and supports preliminary approval. The Agreement calls for Apple to pay $14.8 million in Settlement consideration. As already detailed at Section II.B. *supra*, this amount corresponds to over 40 percent of the contract damages calculated by Plaintiff's expert economist, thereby placing it well above a reasonable range when measured against the damages sought by the Subscriber Class Members at trial and the risks faced by continued litigation. *See* Katriel Decl., at ¶5. Apple also submitted extensive expert reports challenging the Plaintiff's expert reports; Apple's expert reports determined through survey data and evidence that there were no damages. That the Settlement amount is entirely non-reversionary and payable to Subscriber Class Members without the need for any claim form submission further evidences the reasonableness and fairness of the Settlement consideration. *See Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018) (approving class settlement and opining that, "all Class Members in this action will receive their settlement checks without the need for filing a claim form. This is unique . . . and thus is a notable factor that the Court considers in evaluating

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

the results of Class Counsel's work.").  The reasonableness of the amount offered in the Settlement supports preliminary approval.

### 5. The Advanced Stage Of The Proceedings Supports Preliminary Approval.

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  Unquestionably, the Parties had an ample basis and record upon which to entertain settlement discussions.  By the time this Settlement was reached, the Parties had: briefed two rounds of motions to dismiss the pleadings; served class certification expert reports and completed class certification expert discovery; fully briefed class certification (which resulted in certification of the Subscriber Class now subject to the Agreement); completed fact discovery, including thousands of pages of written discovery and numerous lay and expert depositions; served their opening and rebuttal expert reports on the merits; filed or scheduled the filing of *Daubert* motions to strike experts; and faced an imminent deadline for summary judgment motions (which both sides expressed an intent to file).  *See* Katriel Decl., at ¶8.  Each Party had retained numerous expert witnesses who submitted expert reports and opinions on all key aspects of the case, including conjoint survey, consumer behavior, damages, and propriety of classwide treatment. *See* note 6 *supra*.

In addition to the extensive factual record, the Parties had the benefit of the Court's prior rulings and two separate mediation sessions before an experienced mediator, retired Magistrate Judge Edward A. Infante of JAMS. *Id.*, at ¶ 7.  Armed with this wide array of information, counsel for the Parties were more than adequately equipped to entertain and properly weigh any settlement discussions and offers.  This factor favors preliminary approval of the Agreement.

### 6. The Experience And Views Of Counsel Favor Preliminary Approval.

As courts in the Ninth Circuit have recognized, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re American Apparel, Inc. v. Shareholder Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014) (citation omitted).  This presumption is justified because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (citation omitted).  Class Counsel have a documented record and experience in litigating consumer class

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

1  actions, as the Court found in appointing them Class Counsel.  It is Class Counsel's view, based on

2  their experience and knowledge of this case, that this Settlement is fair, reasonable, and furthers the

3  interests of the Subscriber Class. *See* Katriel Decl., at ¶¶9-10.  Thus, this factor favors preliminary

4  approval.[7]

5                                              **<u>CONCLUSION</u>**

6          For all the foregoing reasons, Plaintiff's unopposed motion for preliminary approval of the

7  classwide Settlement should be GRANTED.

8

9  Dated: January 13, 2022                          Respectfully submitted,

10

11                                                  /s/ Roy A. Katriel_____
                                                    Roy A. Katriel (SBN 265463)
12                                                  **THE KATRIEL LAW FIRM, P.C.**
                                                    2262 Carmel Valley Rd., Suite 200-D
13                                                  Del Mar, California 92014
                                                    Telephone: (619) 363-3333
14                                                  Facsimile: (866) 832-5852
                                                    e-mail: rak@katriellaw.com
15
                                                    Azra Mehdi (SBN 220406)
16                                                  **THE MEHDI FIRM, P.C.**
                                                    201 Mission Street, Suite 1200
17                                                  San Francisco, CA 94105
                                                    Telephone: (415) 293-8039
18                                                  Facsimile: (415) 432-4301
                                                    e-mail: azram@themehdifirm.com
19
                                                    *Plaintiffs' Class Counsel*
20

21

22

23

24

25  _____

26  [7] The other factor generally considered by courts in assessing whether to approve a proposed class-
    wide settlement is the reaction of the class members to the proposed settlement. *See Munday*, 2016
27  WL 7655807, at *9. Discussion of this factor, however, must wait until the Subscriber Class is
    informed of the proposed Settlement and, therefore, will be addressed as part of any motion for
28  final approval of the Settlement.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB