1  Roy A. Katriel (265463)
   **THE KATRIEL LAW FIRM**
2  2262 Carmel Valley Rd., Suite 201
   Del Mar, CA 92014
3  Tel:    (619) 363-3333
   Fax:    (866) 832-5852
4  E-mail: rak@katriellaw.com

5  Azra Z. Mehdi (220406)
   **THE MEHDI FIRM, P.C.**
6  201 Mission Street, Suite 1200
   San Francisco, CA 94105
7  Telephone: (415) 293-8039
   Facsimile: (415) 432-4301
8  E-mail: azram@themehdifirm.com

9  *Class Counsel*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                     **SAN FRANCISCO DIVISION**

14

15

16  **ANDREA M. WILLIAMS AND JAMES**        No. 3:19-cv-4700-LB
    **STEWART, On Behalf of Themselves And**
17  **All Others Similarly Situated,**

                                            **PLAINTIFF JAMES STEWART'S AND**
18          **Plaintiffs,**                 **CLASS COUNSEL'S MOTION FOR**
                                            **FINAL APPROVAL OF PROPOSED**
19      **v.**                              **CLASSWIDE SETTLEMENT**

20  **APPLE INC.,**                         **Judge: Hon. Laurel Beeler**
                                            **Courtroom B, 15th Floor**
21          **Defendant.**                  **Hearing Date: August 4, 2022**
                                            **Hearing Time: 9:30 am**
22

23

24

25

26

27

28

*Williams et al., v. Apple Inc.,*                    Motion For Final Approval Of
No. 5:19-cv-4700-LHK                                  Proposed Classwide Settlement

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION…………………..……………………….…….……1

3   STATEMENT OF RELIEF SOUGHT……………….…...……………………….…….…....1

4   STATEMENT OF ISSUES TO BE DECIDED…………….…...……………………....……1

5   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL…….....………….…….…1
6

7   I.    INTRODUCTION AND SUMMARY OF MOTION…………………...…….….………….1

8   II.   FINAL APPROVAL SHOULD BE GRANTED…………….....………….…….…………4

9         A.  The Previously Certified Class Should Remain Certified As A Settlement Class……..4

10        B.  The Court-Approved Notice Plan Was Fair And The Best Practicable
              Notice Under The Circumstances…………...……………………….…………………4
11
          C.  The Substantive Terms Of The Settlement Are Fair And Merit Approval…………..…6
12
              1.  The Vigorously Disputed Strength Of Plaintiff's Case Supports The
13                Reasonableness Of This Proposed Settlement…………...………………………9

14            2.  The Risk, Expense, Complexity, And Likely Duration Of
                  Further Litigation All Support Final Approval Of The Classwide Settlement…....10
15
              3.  The Risk Of Maintaining Class Action Status Throughout Trial And Appeal
16                Also Supports Final Approval………………………………………………..12
17
              4.  The Amount Offered In Settlement Is Reasonable And Supports Final
18                Approval…………………………………………………………………...13

19            5.  The Advanced Stage Of The Proceedings Supports Final Approval………..…….13

20            6.  The Experience And Views Of Counsel Favor Final Approval……………....…14

21            7.  The Reaction Of The Class Supports Final Approval………………………….14

22            8.  Because There Was No Government Participant In This Action, That
                  Factor Has No Bearing On Final Approval Of This Settlement……………..……16
23
24  CONCLUSION………………………………………………………………………16

25

26

27

28

# TABLE OF AUTHORITIES

**Cases:**

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007)………………………………………………………….9

*Castro v. Zenith Acquisition Corp.,*
2007 WL 81905 (N.D. Cal. Jan. 9, 2007)………………………………………………….6

*Evans v. Linden Research, Inc.,*
2013 WL 5781284 (N.D. Cal. Oct. 25, 2013)………………………………………………….5

*Ferrington v. McAfee, Inc.,*
2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012)………………………………..………7-8

*Forcellati v. Highland's, Inc.,*
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)………………………………..……………………7-8

*Franklin v. Wells Fargo Bank. N.A.,*
2016 WL 402249 (S.D. Cal. Jan. 29, 2016)………………………………..…..…………16

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)………………………………………………….6-7

*In re American Apparel, Inc. v. Shareholder Litig.,*
2014 WL 10212865 (C.D. Cal. July 28, 2014)……………………………..……………...14

*In re Apple iPod iTunes Antitrust Litig.,*
No. 05-cv-37-YGR (N.D. Cal.)………………………………………………….10

*In re LinkedIn User Privacy Litig.,*
309 F.R.D. 573 (N.D. Cal. 2015)………………………………………………….5

*In re Mercury Interactive Corp. Securities Litig.,*
618 F.3d 988 (9th Cir. 2010)………………………………………………….…..3

*In re NVIDIA Corp. Derivative Litig.,*
2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)…………………………………….7

*In re Omnivision Techs., Inc.,*
559 F. Supp.2d 1036 (N.D. Cal. 2008)………………………………………………….8

*In re Tableware Antitrust Litig.,*
484 F. Supp. 2d 1078 (N.D. Cal. 2007)……………………………...…………………..………9-10

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)………………………..……......……………10, 13

*McMahon v. Tuesday Morning, Inc.*,
No. 14-cv-05547-EMC (N.D. Cal. Feb. 23, 2017)………………………………8

*McPhail v. First Command Fin. Planning, Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009)…………………………8

*Mullane v. Central Hanover Trust*,
339 U.S. 306 (1950)………………………………………………………………4

*Munday v. Federal Navy Credit Union*,
2016 WL 7655807 (C.D. Cal. Sept. 15, 2016)…………………….……….……...11

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 2:12-cv-03824 (E.D. Pa. Sept. 15, 2014)……………………………………8

*Nichols v. SmithKline Beecham Corp.*,
2005 WL 950616 (E.D. Pa. Apr. 22, 2005)………………………………………8

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982)…………………………………………......6, 7, 9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)………………………………………………………………9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)……………………………………………………9

*Scott v. HSS Inc.*,
2017 WL 7049524 (C.D. Cal. Dec. 18, 2017)……………………………………8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)……………………………………...……6, 9, 12

*Tawfilis v. Allergan, Inc.*,
2018 WL 4849716 (C.D. Cal. Aug. 27, 2018)………………………………..13

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993)………………………………………………………6

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………...…6

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)……………………………………...……………10

**Federal Rules:**

Fed. R. Civ. P. 23……………………………………………………………………..………passim

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**
**PLEASE TAKE NOTICE** that at 9:30 am, on August 4, 2022, or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, Plaintiff James Stewart ("Plaintiff") and his counsel ("Class Counsel") will and hereby move under Federal Rule of Civil Procedure 23(e) for final approval of the parties' proposed classwide settlement ("Settlement," "Agreement," or "Settlement Agreement"). This Motion, which is not opposed by Defendant Apple Inc. ("Apple"), is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the papers on file in this matter, the arguments of the Parties' counsel, the Declarations of Roy A. Katriel ("Katriel Decl.") and Steven Platt ("Platt Decl."), and other matters the Court wishes to consider.

## STATEMENT OF RELIEF SOUGHT

Plaintiff seeks a Final Approval Order[1] granting final approval under Federal Rule of Civil Procedure 23(e) of the Settlement. A proposed order accompanies this filing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Parties' proposed classwide settlement memorialized in their Settlement Agreement should be granted final approval under Federal Rule of Civil Procedure 23(e) because it is fair, reasonable, and adequate?

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL

### I. INTRODUCTION AND SUMMARY OF MOTION.

On February 17, 2022, the Court granted preliminary approval of the Settlement. *See* Dkt. No. 152; *see also* Dkt. No. 155. Following preliminary approval, Angeion Group LLC ("Angeion"), the Court-approved Settlement Administrator, disseminated notice to the over 16 million Subscriber Class Members, and each has had an opportunity to review the proposed Settlement terms. The response has been overwhelmingly positive and enthusiastic. While the Settlement provides for

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as defined in the Parties' Settlement Agreement.

payment to be made automatically to each Subscriber Class Member without the need for any claim form submission, thousands of Subscriber Class Members have taken the affirmative step of electing their preferred payment methodology (*i.e..,* paper check or electronic ACH deposit). *See* Platt Decl., at ¶ 19.  Only two Subscriber Class Members filed objections to the Settlement, and neither objection is well taken.  *See* Dkt. Nos. 156 and 169 (objections to Settlement filed by Dr. William A Tuccio and Edwin W. Orr).[2]  And, since the entry of the Preliminary Approval Order, the Honorable Edward A. Infante (Ret.) ("Judge Infante") who presided over two mediation sessions in this case filed a declaration attesting to his view that the "Settlement Agreement is an excellent outcome for the Class." *See* Dkt. No. 170 at ¶ 7.

Final approval should be granted.  The Settlement reached is unquestionably fair.  It provides Subscriber Class Members—the same Subscriber Class that the Court already certified—compensation for the alleged overcharge that they sustained in purchasing iCloud subscriptions from Apple.  To accomplish this, the Settlement Agreement directs Apple to pay $14,800,000.00 in non-reversionary settlement consideration.  *See* Settlement Agreement at ¶ 2.1.  Notably, if the Settlement becomes effective, compensation to all Subscriber Class Members will occur without the need for the filing of any claim forms.  Indeed, at the Subscriber Class Member's sole discretion, payment will be provided by check or ACH transfer.  *Id.* at ¶ 2.3.  If no election is made, payment will be provided by check for Subscriber Class Members who are no longer monthly iCloud subscribers or by payment to the Apple account that pays for the Subscriber Class Members' subscriptions for Subscriber Class Members who are current monthly iCloud subscribers.  *Id.*[3]

---

[2] A third objection was filed by professional objector and disbarred attorney Steven Franklyn Helfand.  *See* Dkt. No. 166.  He, however, objects only to Class Counsel's motion for attorneys' fees while supporting approval of the settlement.

[3] Even though the entirety of the $14.8 million Gross Settlement Amount net of awarded fees, costs, and any Service Award will be disbursed to Subscriber Class Members without the need for claim form submission, the Settlement Agreement provides for the contingency that some number of mailed settlement checks may remain uncashed following their expiration period. In this circumstance, the Settlement Agreement calls for any such uncashed funds to be distributed to *cy pres* recipients.  *See* Settlement Agreement at ¶ 2.5.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

The payment amount made to each Subscriber Class Member will depend on the total amount the member paid for iCloud subscriptions during the Subscriber Class Period. *Id.* at ¶ 2.2 (describing plan of allocation). In addition to the foregoing direct substantive relief, the Settlement Agreement provides that the Gross Settlement Fund be used to pay the Administrative and Notice Costs, as approved by the Court. *Id.* at Definitions ¶¶ B, M. Further, in keeping with the common benefit doctrine, the Settlement permits Class Counsel to seek an award of Attorneys' Fees and Costs to be paid from the $14.8 Gross Settlement Amount, though the outcome of that request will not affect the Settlement becoming effective. Apple reserved the right to oppose or otherwise respond to any such request, as no agreement was reached by the Parties as to any motion for Attorneys' Fees and Costs that Class Counsel could file. *Id.* at ¶7.1; Katriel Decl. at ¶4.[4] In fact, Apple did file an opposition to Class Counsel's motion for Attorneys' Fees and Costs (*see* Dkt. No. 165), thereby underscoring the completely arms' length nature of the settlement discussions that yielded adversarial briefing even *after* the Settlement had been reached.

By any objective standard, the Settlement warrants final approval. The $14.8 million Gross Settlement Amount strikes the appropriate balance between, on the one hand, fairly compensating Subscriber Class Members for their claims and, on the other hand, accounting for the real and uncertain risks of continued litigation that may leave Subscriber Class Members with no remedy. The particular litigation risks and uncertainties are detailed more fully below. Class Counsel, who litigated this action since its inception nearly three years ago, oversaw the review of thousands of pages of written discovery, and attended all lay and expert depositions, are of the considered view that this Settlement fairly and adequately advances Subscriber Class Members' interests. *See* Katriel Decl. at ¶¶ 9-10.

---

[4] Consistent with Ninth Circuit precedent, Class Counsel filed their motion for Attorneys' Fees and Costs before the deadline for filing any objections, and that motion was publicly posted on the Settlement Website. *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (interpreting Fed. R. Civ. P. 23(h) to require that class counsel's motion for attorneys' fees be publicly filed sufficiently in advance of any objection deadline); Settlement Agreement at ¶ 7.1 (setting deadline for filing of any motion for Attorneys' Fees and Costs and its posting on the Settlement Website).

For all the foregoing reasons, as detailed more fully below, Plaintiff's Unopposed Motion for Final Approval should be granted.

## II.    FINAL APPROVAL SHOULD BE GRANTED.

### A.  The Previously Certified Class Should Remain Certified As A Settlement Class.

On May 28, 2021, the Court entered its order granting in part Plaintiff's motion for class certification.  *See* Dkt. No. 110.  The Order certified a damages class defined as follows:

> All persons in the United States who paid for a subscription to iCloud at any time during the period September 16, 2015 to January 31, 2016.  Excluded from this Class definition are all employees, officers, or agents of Defendant Apple Inc.  Also excluded from this Class definition are all judicial officers assigned to this case as well as their staff and immediate families.

*Id.* at 43:24-27.

The Court denied Plaintiff's motion to certify a class with a broader class period and denied certification of an injunctive relief class.  In certifying the foregoing class, the Court found that Plaintiff James Stewart met the Rule 23(a) and 23(b)(3) criteria for class certification.  *See id.* at 8:6-41:22 (finding Rule 23(a) and 23(b)(3) requirements met).[5]  The Settlement Agreement adopts this definition of the Subscriber Class and seeks to resolve this matter on behalf of Subscriber Class Members.  *See* Settlement Agreement at p. 1; *id.* at Definitions ¶ BB.  Because no intervening event or circumstance has arisen since the Court's grant of class certification, the certified class should remain in effect as the settlement class for purposes of this motion for final approval of the Parties' Settlement.

### B.  The Court-Approved Notice Plan Was Fair And The Best Practicable Notice Under The Circumstances.

Rule 23 and due process require that notice be provided to absent class members in order to inform them of the proposed settlement and grant them the opportunity to opt out or object.  *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be the "best notice practicable" under the circumstances.  *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).

The Settlement Agreement adhered to that standard by calling for the notice to be implemented by direct email delivery and website publication. *See* Settlement Agreement at ¶¶ 6.2.1-

---

[5] The Court found a second named plaintiff, Andrea M. Williams, to be an inadequate class representative.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

6.2.4 (describing notice plan); Decl. of Steven Platt at ¶¶ 6-18 (detailing notice dissemination undertaken by Angeion following preliminary approval).  Further, the content of the Email Notice and Website Notice is unquestionably fair.  The notice forms informed class members about the existence and key terms of the proposed classwide Settlement and advised Subscriber Class Members as to their options to partake in the Settlement, opt out of the Subscriber Class, or object to the proposed Settlement.  Such email and website publication notice content comports with due process, Rule 23, and has been approved by this Court.  *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) ("The Court approved the notice plan set forth in the Settlement Agreement, which primarily called for direct notice by e-mail to all members of the Settlement Class to the addresses used in connection with their LinkedIn premium accounts, as well as the creation of a detailed settlement website."); *Evans v. Linden Research, Inc.*, 2013 WL 5781284, at *3 (N.D. Cal. Oct. 25, 2013) (granting preliminary approval of class settlement and approving notice by email and website publication).

As part of the Settlement Agreement, the parties agreed to have Angeion, an experienced settlement administrator, take charge of disseminating the notice to Subscriber Class Members.  The Court approved Angeion's retention.  *See* Dkt. No. 152 at ¶ 6.  The accompanying Declaration of Steven Platt from Angeion details the nature, extent, and reach of Email Notice and Website Notice that Angeion undertook as part of the notice plan approved by the Court.  *See* Decl. of Steven Platt at ¶¶ 4-16.

The notice dissemination campaign was comprehensive.  Angeion received a class list containing 16,877,763 iCloud accounts and 16,189,267 unique valid email addresses of Subscriber Class Members.  *Id.*, at ¶ 6.  Of these, Angeion managed to provide direct e-mail of 15,294,422 notices (a total of 94.47% of the Subscriber Class Member list).  *See id.*, at ¶ 14.  In addition, Angeion hosted the www.StorageClassActionSettlement.com website which provided online publicly viewable copies of the settlement notice; that website received 1,088,459 page views as of the date of the Platt Declaration.  *See id.*, at ¶¶ 15-16.  Moreover, Angeion also set up a settlement toll-free hotline that provided important settlement information and responses to frequently asked questions.  *Id.*, at ¶ 17.  That hotline received 449 calls as of the date of the Platt Declaration.  *Id.*, at ¶ 18.

By any objective standard, the robust notice campaign implemented here was fair and reasonably calculated to inform Subscriber Class Members about the terms of the Settlement and their options. Based on the nature of the service at issue in this class litigation (iCloud), which is only provided online, a notice plan reliant on electronic and online publication was especially appropriate. Because the notice plan comported with due process, Rule 23, and represented the best notice practicable under the circumstances, it was fair and supports the final approval of this Settlement.

### C. The Substantive Terms Of The Settlement Are Fair And Merit Approval.

Final approval should also be granted to the Settlement because its terms are fair and reasonable. Ultimately, the decision whether to grant approval to a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). An evaluation of the benefits under any proposed settlement "must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties. Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an

1    abandoning of highest hopes.'" *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973,

2    at *16 (N.D. Cal. Mar. 18, 2009) (quoting *Officers for Justice*, 688 F.2d at 624).

3          This proposed Settlement assuredly satisfies the foregoing criteria.  The terms of the

4    Settlement provide Subscriber Class Members with meaningful relief that addresses the precise

5    alleged legal injury (a claimed overcharge attributable to the alleged contractual breach) that was

6    pled in the First Amended Complaint ("FAC").  Unlike class settlements that release class members'

7    claims for mere illusory relief, here the recovery offered is real and crafted in a manner to ensure

8    that the settlement consideration reaches its intended beneficiaries.  Each member of the Subscriber

9    Class will be provided payment from the $14.8 million Gross Settlement Amount that the agreement

10   obligates Apple to pay.  *See* Settlement Agreement at Definitions ¶ M; *id.* at ¶¶ 2.1-2.2.  That

11   payment, moreover, will be disbursed to each Subscriber Class Member after the Settlement is

12   approved, without the need for any class member to submit a claim or file any proof of purchase.  At

13   the Subscriber Class Member's election, payment will be provided by check or ACH transfer (and,

14   if no election is made, by check for Subscriber Class Members who are no longer monthly iCloud

15   subscribers or by payment to the Apple account that pays for the Subscriber Class Members'

16   subscriptions for Subscriber Class Members who are current monthly iCloud subscribers).  *Id.* at ¶¶

17   2.1-2.2.

18         This Settlement Agreement therefore envisions that the entirety of the $14.8 million

19   settlement consideration, after accounting for any award of fees and costs approved by the Court,

20   will be disbursed to Subscriber Class Members.  *Id.* at ¶ 2.5.  In such manner, this proposed

21   Settlement is notable and distinct from many classwide settlements that purport to offer an inflated

22   settlement consideration amount but make recovery by the actual class members dependent upon the

23   submission of claim forms that, in reality, relatively few settlement class members submit. *See*

24   *Forcellati v. Highland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The reality is the

25   number of class members who actually file claims is relatively low.  '[T]he prevailing rule of thumb

26   with respect to consumer class actions is [a claims rate of] 3–5 percent.'" (quoting *Ferrington v.*

27   *McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, at * 13 (N.D. Cal. Apr. 6, 2012)).

28

The Settlement Agreement's consideration is fair and reasonable. To be fair, a settlement need not reimburse class members for all their claimed damages or even a majority of that amount. This is because the very nature of a compromise that takes into account the risks of continued litigation makes the offering of even vastly reduced consideration in compromise of the disputed claims perfectly proper. Here, the $14.8 million in settlement consideration amounts to over 40% of the damages calculated by Plaintiffs' expert economist. *See* Katriel Decl., at ¶ 5. This falls well above the range of settlement consideration amounts approved by this and other courts, particularly in light of the contentious and uncertain outcome of this complex and protracted action. *See, e.g., Scott v. HSS Inc.*, 2017 WL 7049524, at *6 (C.D. Cal. Dec. 18, 2017) (approving as fair class action settlement that provided settlement consideration amounting to 3.9% of recoverable damages at trial); *McMahon v. Tuesday Morning, Inc.*, 14-cv-05547-EMC, ECF No. 82 at 2:2-10 (N.D. Cal. Feb. 23, 2017) (approving settlement amount that was 4.75% of estimated potential liability); *In re Omnivision Techs., Inc.*, 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008) (class settlement providing consideration of between 6-9% of potential recovery at trial was inherently fair and reasonable); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544, at *21–22 (S.D. Cal. Mar. 30, 2009) ("the result achieved, a 7% recovery of the estimated damages, falls within the range of typical recoveries in complex securities class actions"); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement that represented between 9.3% and 13.0% of claimed damages); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2:12-cv-03824, ECF No. 665 (E.D. Pa. Sept. 15, 2014) (approving settlement in complex antitrust pharmaceutical action where "[t]he Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion, [and] the risks of litigation that I have described").

In exchange for the $14.8 million in settlement consideration, Subscriber Class Members will release their claims against Apple and the other defined Released Persons. *See* Settlement Agreement at Definitions ¶¶ V-W; *id.* at ¶¶ 8.1-8.2. The Settlement Agreement properly tailors this release of claims to cover those claims related to the factual allegations in the FAC. *See id.* at Definitions ¶ V. The Settlement's bargained-for release of claims, therefore, is fair, reasonable, and

1    supports final approval because "a federal court may release not only those claims alleged in the

2    complaint, but also a claim based on the identical factual predicate as that underlying the claims in

3    the settled class action." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir.

4    2006).

5        There is no set formula to determine whether a proposed settlement meets fairness and

6    reasonableness criteria needed for judicial approval. Instead, "[t]o determine whether a settlement

7    agreement meets these standards, a district court must consider a number of factors, including: (1)

8    the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

9    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

10   in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

11   experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

12   of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (citation and internal

13   quotation marks omitted). "The relative degree of importance to be attached to any particular factor

14   will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought,

15   and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688

16   F.2d at 625. Here, analysis of these factors demonstrates that final approval should be granted.

17        **1.  The Vigorously Disputed Strength Of Plaintiff's Case Supports The
             Reasonableness Of This Proposed Settlement.**

18        Basic to the process of deciding whether a proposed compromise is fair and equitable "is the

19   need to compare the terms of the compromise with the likely rewards of litigation." *Acosta v. Trans*

20   *Union, LLC*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (quoting *Protective Comm. for Indep.*

21   *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *see also In re*

22   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ("To evaluate adequacy, courts

23   primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."

24   (citations omitted)). "In so doing, a court must 'apprise [itself] of all facts necessary for an intelligent

25   and objective opinion of the probabilities of ultimate success should the claim be litigated.'" *Acosta*,

26   243 F.R.D. at 389 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

27

28

Although Class Counsel believed fully in the merits of the case, it is undeniable that real obstacles were present that could have precluded any recovery. This much is confirmed by reviewing the Court's rulings on the key question of contract interpretation. In upholding the FAC's breach of contract claim, the Court stressed that the contractual language at issue is ambiguous, thereby potentially opening the door to extrinsic evidence to support each party's asserted interpretation of the iCloud Terms and Conditions' ("iCloud Terms") language. *See* Dkt. No. 34 [Order on Apple's Motion to Dismiss Class Action Complaint] at 18:1-19:3. Indeed, the Court referenced various Apple and third-party disclosures that Apple claimed could be used to interpret the iCloud Terms; Apple contends that such statements informed Subscriber Class Members that Apple used third-party servers to store iCloud user data. *See* Dkt. No. 110 at 10-11 (citations omitted). How the Court or, if necessary, a factfinder would have received the Parties' dueling contractual interpretation arguments was yet to be decided. Thus, Plaintiff and the Subscriber Class faced a real risk that the Court (on summary judgment) or a jury (at trial) would interpret the iCloud Terms in a manner unfavorable or fatal to the Subscriber Class.

Even beyond summary judgment, there was a real risk to the Subscriber Class of an adverse outcome at trial, especially in light of Apple's jury trial victory in another certified class action tried before this Court. *See In re Apple iPod iTunes Antitrust Litig.*, No. 05-cv-37-YGR (N.D. Cal.) (defense jury verdict in Apple's favor in trial of certified class action). Given this context, procedural posture, and history, the proposed Settlement, which provides Subscriber Class Members with a multi-million dollar recovery, is unquestionably fair and worthy of final approval.

### 2. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation All Support Final Approval Of The Classwide Settlement.

There exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Although both Apple and Class Counsel were and remain prepared to litigate the action to trial and through appeal, the Subscriber Class would have faced several hurdles—including summary judgment motions, motions to strike expert testimony, a motion for decertification, a motion for reconsideration of class certification, and possible appeals—before even reaching trial.

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

Further, "[a]s in any case, there is a substantial risk of losing at trial." *Munday v. Federal Navy Credit Union*, 2016 WL 7655807, at *8 (C.D. Cal. Sept. 15, 2016).

Here, the uncertainty and complexity of the litigation and the outcome of any appeal were ever-present. Even at the pleadings stage, the Court acknowledged the uncertain interpretation of the iCloud Terms, which formed the basis for Plaintiff's breach of contract claim. *See* Dkt. No. 34 [Order on Apple's Motion to Dismiss Class Action Complaint] at 18:1-19:3. While the Court denied Apple's motion to dismiss the breach of contract claim in the original complaint and the FAC, had the litigation proceeded, Apple would have vigorously challenged at trial and on appeal Plaintiff's urged interpretation of the iCloud Terms' language. Given the lack of an express ruling by the Court or Ninth Circuit on this central issue, the uncertainty of ongoing litigation was particularly acute.

The uncertainty and risk that would endure if adversarial litigation continued was not limited to legal issues or standards. Both sides retained numerous experts on such issues as consumer behavior or survey evidence and damages.[6] Both represented to the Court that they planned on filing motions to exclude the opposing experts' testimony. Judge Koh (who presided over this case before being nominated and confirmed as a federal judge in the United States Court of Appeals for the Ninth Circuit) took those representations to heart and scheduled a separate briefing and hearing on the Parties' *Daubert* motions, separate from the anticipated summary judgment briefing. *See* Dkt. No. 136 [Order setting briefing schedule on *Daubert* motions]. In this expert-rich case, any adverse outcome as to the admissibility of Plaintiff's proffered expert testimony would seriously undermine

---

[6] The parties served 12 expert reports prepared by five experts: Expert Report of Dr. Scott Swain in Support of Plaintiffs' Motion for Class Certification; Expert Report of Russell W. Mangum III, Ph.D. in Support of Plaintiffs' Motion for Class Certification; Apple's Expert Report of Dr. Carol Scott in Opposition to Plaintiffs' Motion for Class Certification; Apple's Expert Report of Dr. Lorin M. Hitt in Opposition to Plaintiffs' Motion for Class Certification; Expert Rebuttal Report of Dr. Scott Swain in Support of Plaintiffs' Motion for Class Certification; Expert Opening Merits Report of Dr. Scott Swain; Expert Opening Merits Report of Russell W. Mangum III, Ph.D.; Expert Opening Merits Report of Dr. Carol Scott; Expert Merits Rebuttal Report of Dr. Scott Swain; Expert Merits Rebuttal Report of Dr. Carol Scott; Expert Merits Rebuttal Report of Ronald T. Wilcox, Ph.D.; and Expert Merits Rebuttal Report of Dr. Lorin M. Hitt. Although the Parties served both class certification and merits expert reports, Apple's merits reports often incorporated and attached as exhibits the filed class certification reports.

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

the strength of the class case. That risk also underscores the propriety of resolving this action by way of a settlement.

There is little doubt that continued litigation of this case through summary judgment, *Daubert* motions, motions for decertification or reconsideration of certification, and trial would be costly and fraught with risk. The trial itself would be expensive, complex, and uncertain. Further, it is likely that any trial outcome would be vigorously challenged on appeal. The current Ninth Circuit docket indicates a routine timeline in civil cases of two years or more from the time of filing a notice of appeal until a ruling is issued. *See* Katriel Decl. at ¶ 7. Thus, without a settlement, the Subscriber Class faced real and uncertain hurdles as well as a significant and meaningful delay in obtaining any redress. This factor, therefore, favors approval of the Settlement Agreement.

### 3. The Risk Of Maintaining Class Action Status Throughout Trial And Appeal Also Supports Final Approval.

A closely related factor requires the Court to assess the likelihood that Plaintiff can maintain certification of the Subscriber Class through the duration of trial and any appellate review. *See Staton*, 327 F.3d at 959. Here, Plaintiff successfully obtained class certification. His motion for class certification, however, was vigorously disputed by Apple, and Apple succeeded in defeating Plaintiff's attempt to certify a broader class period and an injunctive relief class.

Although Class Counsel continue to believe in the correctness of the Court's ruling in certifying this Subscriber Class, the vigorously disputed arguments underlying the class certification motion likely would have been revisited in a motion to decertify had litigation proceeded. *See* Dkt. No. 139 (setting deadline for motion to decertify). Indeed, Apple contends that the testimony and survey results of two of their experts demonstrate that Plaintiff's damages model is not common evidence and as such, the Subscriber Class cannot be maintained. Given the hotly contested class certification arguments, each of which were supported by dueling expert witnesses, the risk to Plaintiff and the Subscriber Class Members of having their favorable class certification order scrutinized anew on a motion to decertify or on appeal cannot be ignored. This factor, therefore, also supports final approval of the Settlement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.  The Amount Offered In Settlement Is Reasonable And Supports Final Approval.

The amount offered as settlement consideration is reasonable, fair, and supports final approval.  The Settlement Agreement calls for Apple to pay $14.8 million in settlement consideration.  As already detailed at Section II.C. *supra* and the Katriel Declaration, this amount corresponds to over 40 percent of the contractual damages calculated by Plaintiff's expert economist, thereby placing it well above a reasonable range when measured against the damages sought by the Subscriber Class at trial and the risks faced by continued litigation.  That the Settlement amount is entirely non-reversionary and payable to all Subscriber Class Members without the need for any claim form submission further evidences the reasonableness and fairness of the settlement consideration.  *See Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018) (approving class settlement and opining that, "all Class Members in this action will receive their settlement checks without the need for filing a claim form.  This is unique . . . and thus is a notable factor that the Court considers in evaluating the results of Class Counsel's work.").  The reasonableness of the amount offered in Settlement supports final approval.

### 5.  The Advanced Stage Of The Proceedings Supports Final Approval.

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  Unquestionably, the Parties had an ample basis and record upon which to entertain settlement discussions.  By the time this Settlement was reached, the Parties had briefed two rounds of motions to dismiss the pleadings; served class certification expert reports and completed class certification expert discovery; fully briefed class certification (which resulted in the certification of the Subscriber Class now subject to the Settlement Agreement); completed fact discovery, including thousands of pages of written discovery and numerous lay and expert depositions; served their opening and rebuttal expert reports on the merits; filed or scheduled the filing of *Daubert* motions to strike experts; scheduled the filing of Apple's motion to decertify and Plaintiff's motion for reconsideration of class certification; and faced an imminent deadline for summary judgment motions (which both sides represented that they intended to file).  *See* Katriel Decl. at ¶ 8.  Each party had retained numerous expert witnesses who

---

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

submitted expert reports and opinions on all key aspects of the case, including conjoint surveys, consumer behavior, damages, and propriety of classwide treatment. *See* note 6 *supra*.

In addition to the extensive factual record, the Parties had the benefit of the Court's prior rulings and two separate mediations session before an experienced mediator, Judge Infante. *Id.* at ¶ 7. Armed with this wide array of information, counsel for the Parties were more than adequately equipped to entertain and properly weigh any settlement discussions and offers. This factor favors final approval of the Settlement Agreement.

### 6. The Experience And Views Of Counsel Favor Final Approval.

As courts in the Ninth Circuit have recognized, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re American Apparel, Inc. v. Shareholder Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014) (citation omitted). This presumption is justified because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (citation omitted). Class Counsel have a documented record and experience in litigating antitrust class actions, as the Court found in appointing them Class Counsel. It is Class Counsel's view, based on their experience and knowledge of this case, that this Settlement is fair, reasonable, and furthers the interests of the members of the Subscriber Class. *See* Katriel Decl. at ¶¶ 9-10. Thus, this factor favors final approval.

### 7. The Reaction Of The Class Supports Final Approval.

The Subscriber Class was provided notice of the proposed Settlement in accordance with the Court-approved Notice Plan. *See* Platt Decl. at ¶¶ 6-18. In response, the reaction of the Subscriber Class has been overwhelmingly positive and enthusiastic. Thousands of Subscriber Class Members made the effort to contact Angeion to elect a preferred method of receiving their Settlement payment, even though the Settlement calls for such payment to be disbursed without the requirement to submit any information or claim form. *See id.*, at ¶ 19.

More to the point, with nearly 16.9 million Subscriber Class Members, only two lone individuals filed objections to the Settlement.[7]  And neither of these objections has merit.  Class Counsel separately filed their response to these objections.  *See* Dkt. No. 172.  Class Counsel hereby incorporates by reference those responses.  For the reasons set forth in those responses, the objections should be overruled and should not delay final approval.

In sum, objector Edwin W. Orr filed a rambling, largely incoherent, 128-page objection that should be summarily rejected.  *See* Dkt. No. 169.  To the extent the meaning of his filing is discernable, Orr objects that the Settlement does not account for class members whose computers were "hacked" by an employee or contractor of ADT, a third party having no involvement in this case.  Orr claims to have suffered "multimillion-dollar losses" from that theft and vaguely relates it to Apple.  *See* Dkt. No. 169 at 3.  This narrative has nothing to do with this case or Settlement, which seeks redress for an alleged breach of contract.

So too, the only other filed objection to the Settlement—that of Dr. William A. Tuccio [Dkt. No. 156]—fares no better.  Tuccio takes issue with what he terms the "$2.4 million in fees for a $14.8 million payout."  Dkt. No. 156 at 1.  He urges that "[t]he agreement should be modified to put a cap on all administrative and attorney fees at 5% of the total settlement."  *Id*.  Objector Tuccio conflates fees with litigation costs.  The $2.4 million figure he objects to is not a fee component but the cap on Angeion's costs.  *See* Dkt. No. 147-7 [Decl. of Steven Weisbrot of Angeion Group in Support of Motion for Preliminary Approval] at ¶ 23; Platt Decl. at ¶22.

Because this proposed Settlement achieves the remarkable result of providing an automatic payment to every one of the nearly 16.9 million class members without the need for a claim form, the monumental task of processing this number of payments entails a significant cost.  In addition to the cost of mailing checks or processing electronic ACH payments to a class of this size, the cost cap allocated to Angeion also covers the costs of notice, processing payment elections, responding

---

[7] A third objection filed by professional objection and disbarred attorney Steven Franklyn Helfand objects only to Class Counsel's motion for attorneys' fees but supports approval of the settlement.  *See* Dkt. No. 166 at 1 ("I unenthusiastically endorse final approval of the proposed settlement.").

to the Subscriber Class Members as necessary, and reprocessing any returned checks or bounced ACH payments. *Id*. Tuccio makes no mention—much less provides any analysis—of the real costs incurred in undertaking this inordinately extensive administrative task that is integral and essential to the Settlement's execution. But the Administrative and Notice Costs here are fully justified, being lower than settlement administration costs approved in settlements involving much smaller class sizes and lower payouts. *See, e.g.*, *Franklin v. Wells Fargo Bank. N.A.*, 2016 WL 402249, at *7 (S.D. Cal. Jan. 29, 2016) (approving costs of approximately $2.7 million for claims administrator in case involving nearly $14 million settlement with approximately 4 million class members).

Also remarkable is the minute number of opt out requests received. Only seven verified Subscriber Class Members submitted requests for exclusion (another 13 opt out requests were received by Angeion by individuals who could not be verified to be Subscriber Class members). *See* Platt Decl., at ¶ 20. That the overwhelming majority (over 99%) of the Subscriber Class Members opted to remain in the Subscriber Class and be bound by the Settlement also speaks to these class members' perception of the fairness of the Settlement.

### 8. Because There Was No Government Participant In This Action, That Factor Has No Bearing On Final Approval Of This Settlement.

The seventh of the *Staton* settlement approval factors calls for a court to evaluate how the presence of a governmental participant impacts the decision whether to approve the settlement. That factor, however, does not apply to this case, as there is not and has never been a government participant in this action. The Settlement addresses claims asserted in the FAC in an entirely private, non-government filed action. This factor therefore has no effect on the final approval decision.

### <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff's motion for final approval of the Settlement should be GRANTED.

*Williams et al., v. Apple Inc.*,
No. 3:19-cv-4700-LB

1   Dated: June 30, 2022

Respectfully submitted,

2   /s/ Roy A. Katriel

3   Roy A. Katriel (265463)
    **THE KATRIEL LAW FIRM**
    2262 Carmel Valley Rd., Suite 201
4   Del Mar, CA 92014
    Tel:    (619) 363-3333
5   Fax:    (866) 832-5852
    E-mail: rak@katriellaw.com

6

7   Azra Z. Mehdi (220406)
    **THE MEHDI FIRM, P.C.**
    201 Mission Street, Suite 1200
8   San Francisco, CA 94105
    Telephone: (415) 293-8039
9   Facsimile: (415) 432-4301
    E-mail: azram@themehdifirm.com

10

11  *Class Counsel*