UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAMES STEWART, on behalf of himself and all others similarly situated, | Case No. 19-cv-04700-LB |
| Plaintiffs, | **FINAL APPROVAL ORDER** |
| v. | Re: ECF Nos. 160, 173 |
| APPLE INC., | |
| Defendant. | |

## INTRODUCTION

This is a class action against Apple Inc. The plaintiffs — current and former paid subscribers of Apple's "iCloud" cloud storage service — allege that Apple breached its iCloud agreement by storing their data on non-Apple facilities, resulting in overcharges. Their remaining claim is for breach of contract.[1] The parties settled their case and the court approved the settlement preliminarily.[2] The plaintiffs then moved for final approval and for attorney's fees, costs, and a

---

[1] First Am. Compl. (FAC) – ECF No. 38. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 1–18; Order – ECF No. 152.

service award.[3] The court grants the motions but awards only twenty-five percent of the settlement amount in attorney's fees, instead of the requested thirty-three percent.

## STATEMENT

### 1. The Lawsuit

The plaintiffs filed the lawsuit on August 12, 2019, claiming breach of contract, violations of California's False Advertising Law, and violations of California's Unfair Competition Law.[4] Apple filed a motion to dismiss, which was granted in part without prejudice.[5] The plaintiffs then filed a first amended complaint with the same three claims on April 27, 2020.[6] The court subsequently dismissed with prejudice the False Advertising Law and Unfair Competition Law claims.[7]

On May 28, 2021, the court denied certification of a Rule 23(b)(2) "injunctive class" but certified the following "damages class" under Rule 23(b)(3) after narrowing the plaintiffs' requested class period:

> All persons in the United States who paid for a subscription to iCloud at any time during the period September 16, 2015 to January 31, 2016. Excluded from this Class definition are all employees, officers, or agents of Defendant Apple Inc. Also excluded from this Class definition are all judicial officers assigned to this case as well as their staff and immediate families.

The court also found one named plaintiff to be an inadequate class representative, leaving James Stewart as the sole class representative.[8]

The parties engaged in extensive discovery, including "thousands of pages of written discovery," "numerous lay and expert depositions," and exchanges of both class certification and

---

[3] Mot. – ECF No. 173; Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160.

[4] Compl. – ECF No. 1.

[5] Order – ECF No. 34.

[6] First Am. Compl. – ECF No. 38.

[7] Order – ECF No. 65.

[8] Order – ECF No. 110 at 43–44.

United States District Court
Northern District of California

1    merits expert reports, for a total of twelve expert reports from five experts.[9] In addition, one of the

2    plaintiffs' expert economists prepared a damages assessment.[10]

3        The parties reached their settlement after two mediations with the Honorable Edward Infante

4    (Ret.), on February 17, 2021 and October 27, 2021.[11] The parties then executed the settlement

5    agreement on January 13, 2022.[12]

6        Prior to the settlement, the parties planned to file *Daubert* motions, motions for summary

7    judgment, and a motion to decertify the class.[13] Trial was scheduled to begin on May 2, 2022.[14]

8        On January 13, 2022, the plaintiffs moved for preliminary approval of the settlement.[15] The

9    court held a hearing and granted the motion on February 17, 2022.[16] The plaintiffs then moved for

10   final approval and for attorney's fees, costs, and a service award.[17] The court held the final fairness

11   hearing on August 4, 2022. The parties consented to magistrate-judge jurisdiction.[18]

12

13   **2.  The Proposed Settlement**

14       All defined terms in this Final Approval Order have the same meaning as in the Settlement

15   Agreement.

16

17

18

19

20   [9] Mot. – ECF No. 173 at 16 & n.6, 18; Katriel Decl. – ECF No. 173-1 at 3–4 (¶ 8).

21   [10] Katriel Decl. – ECF No. 173-1 at 2–3 (¶ 5).

22   [11] *Id.* at 2 (¶ 3); Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval –
     ECF No. 147-2 at 5–6.

23   [12] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-
     2 at 17–18.

24   [13] Mot. – ECF No. 173 at 16–17.

25   [14] Order – ECF No. 139.

26   [15] Mot. for Prelim. Approval – ECF No. 147.

     [16] Order – ECF No. 152.

27   [17] Mot. – ECF No. 173; Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160.

28   [18] Stipulation – ECF No. 142.

United States District Court
Northern District of California

### 2.1   Settlement Class

The class is termed the Subscriber Class and is defined as in the order granting class certification.[19] The parties initially estimated there to be 16,900,000 Subscriber Class Members.[20] After the settlement was preliminarily approved, Apple provided the final Class Member List — "comprised [of] 16,877,763 accounts" — to the Settlement Administrator.[21]

During the settlement administration process, twenty Subscriber Class Members requested exclusion, although the Settlement Administrator was only able to verify eligible Apple accounts for seven of them.[22]

### 2.2   Settlement Amount and Allocation

The Gross Settlement Amount is $14,800,000.[23] The Net Settlement Amount — the fund recovered by the Subscriber Class — will be determined after the following deductions: (1) Administrative and Notice Costs (of which $135,453.95 had been incurred as of May 31, 2022); (2) any Attorneys' Fees and Costs approved by the court; and (3) any Service Award for the Named Plaintiff approved by the court (not to exceed $5,000).[24]

There are further provisions for the Administrative and Notice Costs. The Settlement Agreement sets a cap of $2,400,000 that covers "all costs and expenses related to the settlement administration functions to be performed by the Settlement Administrator." But in the event of "unanticipated costs and expenses" exceeding that amount, the excess amount can be paid from the Subscriber Class Members' unclaimed funds, subject to the approval of the parties' counsel.[25]

---

[19] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 4–5 (¶ BB).

[20] Weisbrot Decl. – ECF No. 147-4 at 4 (¶ 13).

[21] Platt Decl. – ECF No. 173-2 at 2–3 (¶ 6).

[22] Id. at 5 (¶ 20); Exclusion List, Ex. C to id. – ECF No. 173-5.

[23] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 6 (¶ 2.1).

[24] Id. at 3 (¶ O), 12–13 (¶ 7); Platt Decl. – ECF No. 173-2 at 5–6 (¶ 22).

[25] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 11–12 (¶ 6.3).

The individual settlement payment amounts will be "based on the overall payments made by each Subscriber Class Member for his or her iCloud subscription during the Subscriber Class Period." "Such pro rata distribution shall not exceed the value of a Subscriber Class Member's total iCloud subscription payments during the Subscriber Class Period."[26]

Claim forms are not required.[27] The Settlement Administrator will issue settlement payments either by check or ACH transfer. Of the Subscriber Class Members who make no payment-method choice, those who are current iCloud subscribers will receive payment in their Apple accounts and those who are not will receive a check.[28] During the settlement administration process, the Settlement Administrator "received 79,336 Payment Election Form submissions," of which "24,339 elected to receive ACH direct deposit and 54,997 elected to be mailed a physical check."[29]

The Settlement is non-reversionary.[30] Uncashed checks will be distributed to the *cy pres* recipient Digitunity.[31] In addition, if the Attorneys' Fees and Costs are determined after payments are distributed and those fees and costs are less than the amount requested by Class Counsel's motion, the amount of the reduction will be distributed to the Subscriber Class to the extent "administratively and economically feasible" and otherwise to the *cy pres* recipient.[32]

### 2.3   Release

The Named Plaintiff and Subscriber Class Members agree to release all claims "that arise out of or relate to the allegations made . . . in the Action and that occurred during the Subscriber Class

---

[26] *Id.* at 6 (¶ 2.2).

[27] *Id.* at 7 (¶ 2.5).

[28] *Id.* (¶ 2.3).

[29] Platt Decl. – ECF No. 173-2 at 5 (¶ 19).

[30] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 3 (¶ M).

[31] Notice – ECF No. 150.

[32] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 7 (¶ 2.5).

Period."[33] They also waive their rights under "California Civil Code § 1542, or any other similar provision under federal or state law."[34]

### 2.4   Administration

The court appointed Angeion Group as the Settlement Administrator.[35] The administration procedures — including the notice program and procedures for exclusions and objections — were set forth in the Settlement Agreement.[36]

Angeion complied with these procedures. Angeion first received the Class Member List from Apple, which yielded 16,189,267 "unique valid email addresses" for the 16,877,763 class-member Apple accounts.[37] Between March 19, 2022 and April 4, 2022, Angeion disseminated the email notices to these email addresses, with a successful delivery rate of 94.47%.[38] Angeion also maintained a Settlement Website and toll-free hotline.[39]

Three objections to the settlement were filed.[40]

## ANALYSIS

### 1.   Jurisdiction

The court has diversity jurisdiction under the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d)(2).

### 2.   Certification of Settlement Class

The court previously certified the Subscriber Class under Rule 23, as described above.

---

[33] *Id*. at 4 (¶ V), 13 (¶ 8.1).

[34] *Id.* at 13–14 (¶ 8.2).

[35] Order – ECF No. 152 at 8.

[36] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 8–11 (¶¶ 4–5, 6.1–6.2); Email Notice, Ex. 1 to *id.* – ECF No. 147-2 at 19–21; Website Notice, Ex. 4 to *id.* – ECF No. 147-2 at 33–43; Weisbrot Decl. – ECF No. 147-4 at 3–6 (¶¶ 12–22).

[37] Platt Decl. – ECF No. 173-2 at 2–3 (¶ 6).

[38] *Id.* at 3–4 (¶¶ 7–14).

[39] *Id.* at 4–5 (¶¶ 15–18).

[40] *Id.* at 5 (¶ 21); Mot. – ECF No. 173 at 7 & n.2.

United States District Court
Northern District of California

### 3.   Approval of Settlement

#### 3.1     Whether the Settlement is Fair, Reasonable, and Adequate

A court may approve a proposed class-action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "are substantially similar to those articulated" in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *2 n.2 (N.D. Cal. July 8, 2021).

In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. 150 F.3d at 1026.

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see, e.g.*, *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) ("[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.") (cleaned up); *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

United States District Court
Northern District of California

*Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

The court has evaluated the Settlement Agreement for overall fairness and concludes that it is free of collusion and approval is appropriate.

First, the settlement provides good value when contrasted with the maximum damages estimated by the plaintiffs. The "Gross Settlement Amount of $14.8 million represents approximately 40 percent of the contractual damages calculated by [the plaintiffs'] expert economist."[41]

Second, the value of the settlement is significant compared to the litigation risks and uncertainties. The maximum recovery assumes complete success for the plaintiffs, which was not a guaranteed outcome. Apple was vigorously contesting the case and planned several motions, including a *Daubert* motion (in this expert-rich case), a motion for summary judgment, and a motion to decertify the class. The outcome of a trial was uncertain, especially because the court previously "stressed that the contractual language at issue is ambiguous, thereby potentially opening the door to extrinsic evidence."[42] When viewed against the risk of no recovery, this settlement is fair. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to class members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Fourth, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator. Further underscoring the non-collusive nature of the negotiations is the fact that Apple has filed an opposition to Class Counsel's motion for attorney's fees.[43]

---

[41] Katriel Decl. – ECF No. 173-1 at 2 (¶ 5).

[42] Mot. – ECF No. 173 at 15.

[43] *Id.* at 8.

United States District Court
Northern District of California

1   Finally, with only three objections, the reaction of the class is favorable. A court "may

2   appropriately infer that a class action settlement is fair, adequate, and reasonable when few class

3   members object to it." *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *6

4   (N.D. Cal. June 27, 2014); *cf. Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (court

5   should consider "reaction of the class members to the proposed settlement").

6   In sum, the recoveries here are adequate to justify approval. Given other comparable

7   settlements and the litigation risks identified above, the settlement amount is fair. The court

8   approves the settlement.

9   **3.2    Resolution of Objections**

10   "Any class member may object" to a proposed class-action settlement. Fed. R. Civ. P.

11   23(e)(5)(A). The objection must (1) "state whether it applies only to the objector, to a specific

12   subset of the class, or to the entire class," and (2) "state with specificity the grounds for the

13   objection." *Id.*

14   Objectors must also have standing to object, and only "aggrieved" class members have

15   standing. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011). Thus, "[i]f

16   [effecting the objectors' requested change] would not actually benefit the objecting class member,

17   the class member lacks standing." *Id.* (cleaned up). Objectors must also "provide evidence to show

18   that [they are] a class member," at least where a prior court order requires them to do so. *In re*

19   *Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF (HRL), 2011 WL 1877988, at *3 n.4 (N.D. Cal. May

20   17, 2011).

21   The three objections lack merit and are therefore overruled.

22   One objection is by William Tuccio, who contends that the Settlement Administrator's

23   administrative costs and Class Counsel's attorney's fees should together be capped at five percent

24   of the settlement amount. That, he says, would avoid a settlement "for the benefit of attorneys and

25   not for the benefit of the aggrieved."[44] As for the administrative costs, the task of administering a

26

27

---

[44] Tuccio Obj. – ECF No. 156.

United States District Court
Northern District of California

settlement with this many class members is expensive.[45] And the Ninth Circuit has established a benchmark of twenty-five percent for attorney's fees in cases like this. *See Hanlon*, 150 F.3d at 1029; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Mr. Tuccio does not provide reasoning relevant to departing from that benchmark.

Edwin Orr also objected to the settlement, to "advocat[e] for the handicapped and/or for other unfairly treated class members to receive proper relief, and to be treated equitably."[46] He argues that some class members incurred greater damages than the rest because they were victimized by "a later-convicted hacker," and that at least one such class member should be made a class representative.[47] He further argues that of those who were hacked, those who are (like him) physically handicapped incurred even greater damages because they are especially vulnerable to being hacked as a result of using special hardware and software to aid with their handicaps. He therefore proposes that larger settlement payments be provided to those who incurred these greater damages.[48]

Mr. Orr's argument is unavailing because the damages at issue in this case are overcharges resulting from Apple's alleged breach of contract, not damages resulting from any lack of security in Apple's cloud storage facilities.[49] As to the overcharge damages, the Settlement Agreement properly accounts for differences between class members by apportioning their settlement payments based on the total amounts they paid under their contracts with Apple.

Finally, Steven Helfand objected to the settlement, stating that he did not receive notice of the settlement despite being a class member, and that for various reasons, the attorney's fee award should not exceed the Ninth Circuit's benchmark.[50] To the extent Mr. Helfand challenges the notice program, the court finds the notice program to be sufficient, as explained below. (Mr.

---

[45] Pls.' Resps. to Objs. – ECF No. 172 at 2–3.

[46] Orr Obj. – ECF No. 169.

[47] *Id.* at 2–3; Documentation, Ex. A to *id.* – ECF No. 169 at 7–128.

[48] Orr Obj. – ECF No. 169 at 3–5.

[49] Pls.' Resps. to Objs. – ECF No. 172 at 2.

[50] Helfand Obj. – ECF No. 166.

United States District Court
Northern District of California

Helfand clarified at the hearing that he did not object to the notice program.) As for attorney's

fees, Mr. Helfand's objection is moot because this order awards the benchmark amount.

### 4.   Attorney's Fees and Costs

Class Counsel moved for $4,933,333 in fees (one third of the settlement amount) and

$397,971.92 in costs.[51] Apple filed an opposition to the attorney's fees request, arguing for

twenty-five percent of the settlement amount, or $3,700,000.[52] The court awards the requested

costs but only $3,700,000 in attorney's fees.

#### 4.1   Attorney's Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The court must ensure that the award is reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to

the amount of fees. *Id.* at 941–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys
> turns adversarial at the fee-setting stage, courts have stressed that when awarding
> attorneys' fees from a common fund, the district court must assume the role of
> fiduciary for the class plaintiffs. Accordingly, fee applications must be closely
> scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of

beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.

Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund

cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund"

method. *Id.*; *Hanlon*, 150 F.3d at 1029.

The "percentage of the fund" method is typically used. The Ninth Circuit has established a

"benchmark" that fees should equal twenty-five percent of the settlement, although courts diverge

---

[51] Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160; Reply – ECF No. 167.
[52] Opp'n – ECF No. 165.

from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming thirty-three-percent fee award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same).

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g., Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.; accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee[s] in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

In support of their request for an increase over the twenty-five percent benchmark for attorney's fees, Class Counsel argue that they have "undertaken significant risk, performed enormous amounts of work in a complex case that is in its fourth year, and achieved an excellent

result for the Class."[53] They point to various aspects of the case and settlement to bolster their request. For example, to help establish complexity, they point out that the case "involved 12 expert reports, 10 depositions, 7 adversarial motions, and thousands of pages of complex discovery produced by Apple."[54] And to show that the results were excellent, they point to the guarantee that all class members will receive payment even if they don't submit a claim form, and the fact that the settlement amount is forty percent of their best-case damages scenario.[55]

In opposition, Apple generally argues for "an ordinary fee award for an ordinary case."[56]

No upward departure from the twenty-five percent benchmark is warranted here. Although Class Counsel — who are two sole practitioners — skillfully litigated the case, it was not a sufficiently exceptional case to warrant more than the benchmark in attorney's fees.

First, the case was not especially complex or novel, because only one straightforward claim for breach of contract survived.[57] *See Tawfilis v. Allergan, Inc.*, No. 8:15-CV-00307-JLS-JCG, 2018 WL 4849716, at *4 (C.D. Cal. Aug. 27, 2018) (the case was complex because it "involved not only a complex, unsettled area of the law [antitrust] but also a relatively novel theory of unlawful market allocation through a pharmaceutical licensing agreement").

Second, the results achieved by Class Counsel were not exceptional. The fact that the settlement amount is about forty percent of the plaintiffs' best-case damages scenario must be understood in the broader context of the case. The court had already significantly narrowed the case — by dismissing two out of three claims and shortening the class period — and that narrowing factors into the results achieved by Class Counsel.[58] *See Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537 WHA, 2014 WL 1647652, at *4 (N.D. Cal. Apr. 24, 2014) (class counsel's "failed . . . efforts" to get a broader class certified "should not be compensated").

---

[53] Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160 at 7–8.

[54] *Id.* at 8.

[55] *Id.* at 24–25; Reply – ECF No. 167 at 8–9; Revised Infante Decl. – ECF No. 170 at 3 (¶ 7) (opining that Class Counsel achieved "an excellent outcome for the Class").

[56] Opp'n – ECF No. 165 at 5.

[57] *Id.* at 9 (collecting cases).

[58] *Id.* at 7–8.

United States District Court
Northern District of California

To support their argument that the results they achieved were exceptional, Class Counsel heavily emphasize the settlement's guarantee that all class members will be paid without the need to submit a claim form.[59] According to Class Counsel, this guarantee "directly and immediately enhances the real value to the class members by many orders of magnitude."[60] But the significance of that guarantee is negated by the fact that each class member will receive less than a dollar, whereas in the typical claims-made settlement, those class members who are actually interested in the payment receive a greater amount. *See Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) ("[I]ndividual class members will receive a relatively small award, which weighs against revising the [attorney's fees] award to 33% of the common fund."). And courts have declined to award an upward departure from the benchmark even where no claim form was required.[61] Moreover, a settlement's guarantee that all class members will be paid is more impressive when it is unique among similar types of cases. *Tawfilis*, 2018 WL 4849716, at *4. Here, class members have existing payment accounts with the tech-company defendant, making it a less impressive result that all class members will be paid.

Third, the risk undertaken by counsel was not exceptional enough to overcome the lack of case complexity and the unexceptional results. Class Counsel point out that they litigated the case extensively over four years, advancing well past the class-certification stage and incurring nearly $400,000 in costs, thus increasing the amount of risk they undertook.[62] But "it is not unusual to take years to litigate class actions." *Hawthorne*, 2015 WL 1927342, at *5 (collecting cases); *see also Vizcaino*, 290 F.3d at 1048–49 (case was "extremely risky for class counsel" where they "succeeded in reviving their case on appeal" twice). And "contingency-fee litigation is not a special consideration." *Hawthorne*, 2015 WL 1927342, at *5 (cleaned up). The $400,000 in costs is Class Counsel's best argument here, but it is not enough to warrant an upward departure.

[59] *See, e.g.*, Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160 at 24–25.
[60] *Id.* at 25.
[61] Opp'n – ECF No. 165 at 7 (collecting cases).
[62] Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160 at 19–24; Reply – ECF No. 167 at 9–11.

United States District Court
Northern District of California

Fourth, the cases cited by Class Counsel as similar and supporting an upward departure are distinguishable, for the reasons explained by Apple.[63]

Finally, the court rejects Class Counsel's argument that after the California Supreme Court's decision in *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), in which the court declined to adopt the Ninth Circuit's benchmark, the Ninth Circuit's benchmark is no longer an appropriate starting point in diversity cases.[64] Class Counsel's related argument is that the appropriate benchmark in a diversity case applying California law is thirty-three percent. The court follows Ninth Circuit authority holding that twenty-five percent is the benchmark in that situation. *See, e.g.*, *In re Hyundai and Kia*, 926 F.3d at 553, 570.

In sum, the court awards twenty-five percent of the common fund, or $3,700,000, in attorney's fees. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding thirty-three percent "given the extensive litigation in the case[,] [ ] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarding the same because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and [the] strong result for the Class").

As for the lodestar cross-check, the billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market. *Cuviello v. Feld Ent., Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel also submitted a sufficient breakdown of the attorneys'

---

[63] Opp'n – ECF No. 165 at 10–12.

[64] Reply – ECF No. 167 at 12–13.

hours to reach a conclusion about the lodestar and the positive multiplier.[65] That is, counsel's declarations are sufficient in lieu of detailed time records. *Bellinghausen*, 306 F.R.D. at 264. The modest multiplier (especially after the court's reduction of the award) falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (cleaned up).

### 4.2    Costs

Class Counsel are also entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The record sufficiently establishes the reasonableness of the requested costs.[66] The court approves the requested amount of $397,971.92.

### 5.   Appointment of Class Representative, Class Counsel, and Settlement Administrator

The court previously appointed James Stewart as Class Representative.[67]

The court confirms its appointment of Roy Katriel and Azra Mehdi as Class Counsel. Fed. R. Civ. P. 23(a) & (g)(1). They have sufficient qualifications, experience, and expertise in prosecuting class actions.[68]

The court also confirms its appointment of Angeion Group as the Settlement Administrator. Angeion "is an experienced class action notice and claims administration company formed by a team of executives" that, collectively, have "overseen more than 2,000 class action settlements and

---

[65] Katriel Decl. in Supp. of Mot. for Attorney's Fees – ECF No. 161 at 3–6 (¶ 5); Mehdi Decl. in Supp. of Mot. for Attorney's Fees – ECF No. 162 at 4–5 (¶¶ 16–17).

[66] Katriel Reply Decl. – ECF No. 168; Documentation, Exs. 1–8 to *id.* – ECF Nos. 168-1 to 168-7.

[67] Order – ECF No. 110.

[68] Firm Resumes, Exs. 10–11 to Katriel Decl. in Supp. of Mot. for Class Certification – ECF Nos. 77-11 & 77-12.

United States District Court
Northern District of California

distributed over $15 billion to class members."[69] Angeion also has "prior experience disseminating email notice to email addresses provided by Apple."[70]

There is a potential issue with the Administrative and Notice Costs to be paid to Angeion, though. Angeion now says that (1) the Settlement Agreement's $2,400,000 cap for Administrative and Notice Costs "exclud[es] postage costs over $1,345,334," (2) Angeion's estimated final costs will be $2,477,029.74, and (3) "should there be residual unclaimed funds, Angeion would like the Court and the Parties to consider reimbursing Angeion for any actual" costs incurred over the cap.[71] For their part, Class Counsel assert that "Angeion has committed that [its costs] will not exceed $2,400,000."[72] This issue will be resolved by the parties under paragraph 6.3 of the Settlement Agreement, which provides that any administrative costs incurred over the cap are subject to the approval of "Apple Counsel and Class Counsel, acting in good faith."[73]

The court approves $2,400,000 in administrative costs (given the size of the class), and alternatively approves a greater amount (given that any excess over $2,400,000 can only be paid from residual unclaimed funds) if Angeion's costs are greater and both Apple Counsel and Class Counsel, acting in good faith, approve the excess amount.

## 6.  Class Notice

As described above, the Settlement Administrator provided notice to the class in the form the court approved previously. The notice met all legal prerequisites: it was the best notice practicable, satisfied the requirements of Rule 23(c)(2), adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably provided class

---

[69] Weisbrot Decl. – ECF No. 147-4 at 3 (¶ 9).

[70] *Id.* at 5 (¶ 20).

[71] Platt Decl. – ECF No. 173-2 at 5–6 (¶ 22).

[72] Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160 at 15.

[73] Settlement Agreement, Ex. 1 to Katriel Decl. in Supp. of Mot. for Prelim. Approval – ECF No. 147-2 at 11–12 (¶ 6.3).

members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out and objection rights, a date by which they must opt out or object, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[74]

### 7. Service Award

The plaintiffs moved for a Service Award of $5,000 for the Class Representative.[75] The court grants the motion.

District courts must evaluate proposed service awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (cleaned up). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266 (collecting cases).

---

[74] Email Notice, Ex. 1 to Settlement Agreement – ECF No. 147-2 at 19–21; Website Notice, Ex. 4 to Settlement Agreement – ECF No. 147-2 at 33–43; Platt Decl. – ECF No. 173-2 at 3–4 (¶¶ 7–14).

[75] Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 160.

United States District Court
Northern District of California

The record establishes sufficiently the efforts of the Class Representative.[76] The court approves an award of $5,000.

### 8.  *Cy Pres* **Award**

As detailed above, any unclaimed amount of the Net Settlement Amount will be given to the *cy pres* beneficiary Digitunity. This distribution is approved because it accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

### 9.  **Compliance with CAFA**

On January 21, 2022, the Settlement Administrator provided the notices required by CAFA, 28 U.S.C. § 1715, to the appropriate officials.[77] The court's final approval hearing was more than ninety days after service as required by CAFA.

### 10. **Ancillary Items**

The parties are ordered to implement and consummate the Settlement Agreement according to its terms and provisions.[78]

The Settlement Agreement is not an admission by the defendant or by any other Released Person, nor is this order a finding of the validity of any allegations or of any wrongdoing by the defendant or any Released Person. This order, the Settlement Agreement, and any proceedings taken pursuant thereto are not and should not be offered or received as evidence, a presumption, a concession, or an admission of (i) liability, (ii) any misrepresentation or omission in any statement or written document approved or made by the defendant or any Released Person, or (iii) the

---

[76] *Id.* at 16; Katriel Decl. in Supp. of Mot. for Attorney's Fees – ECF No. 161 at 8 (¶ 8).

[77] Platt Decl. – ECF No. 173-2 at 2 (¶ 5); CAFA Notice, Ex. A to *id.* – ECF No. 173-3.

[78] Proposed Order – ECF No. 173-6 at 4 (¶ 10).

United States District Court
Northern District of California

1    suitability of these or similar claims to class treatment in active litigation and trial; provided,

2    however, that reference may be made to the Settlement Agreement and the settlement in such

3    proceedings as may be necessary to effectuate the Settlement Agreement.[79]

4        This Order expressly incorporates the Released Claims, makes the Released Claims effective

5    as of the Effective Date, and forever discharges and releases the Released Persons as set forth in

6    the Settlement Agreement. Every Subscriber Class Member except those who excluded

7    themselves from the Action are bound by the Settlement Agreement and are deemed to release and

8    forever discharge all Released Claims against the Released Persons.[80]

9        Without affecting the finality of the Final Judgment for purposes of appeal, the court retains

10   jurisdiction as to all matters relating to the administration, consummation, enforcement, and

11   interpretation of the Settlement Agreement and this Final Approval Order and for any other

12   necessary purpose.[81]

13       Apple is ordered, upon instruction provided pursuant to the Settlement Agreement and after

14   the Settlement becomes final as defined in the Settlement Agreement, to disburse the relevant

15   amounts awarded by this order (for administrative costs, attorney's fees and costs, and the service

16   award) to Angeion Group and The Katriel Law Firm, P.C.[82]

18                                           **CONCLUSION**

19       The court approves the class-action settlement, including attorney's fees and costs,

20   administrative costs, and the service award. But the court awards only twenty-five percent in

21   attorney's fees instead of the requested thirty-three percent.

United States District Court
Northern District of California

---

[79] *Id.* at 5–6 (¶ 13).

[80] *Id.* at 6 (¶ 14).

[81] *Id.* (¶ 16).

[82] Proposed Order Regarding Mot. for Attorney's Fees, Costs, and Service Awards – ECF No. 163 at 5 (¶¶ 13–15).

This disposes of ECF Nos. 160 and 173.

**IT IS SO ORDERED.**

Dated: August 4, 2022

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California